**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

JOSE EZEQUIEL MARTINEZ-MARTINEZ )

v. ) C.A.

 )

MARC MOORE, FIELD OFFICE DIRECTOR, and )

TOM RIDGE, SECRETARY, DEPARTMENT OF )

 HOMELAND SECURITY, and )

THE UNITED STATES OF AMERICA. )

——————————————————————— )

United States District Court
Southern District of Texas
FILED

JUN 2 4 2004

Michael N. Milby
Clerk of Court

**POINTS AND AUTHORITIES IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS**

Exhibit C:

Exhibit C consists of a copy of the Motion to Reopen and Exhibits
filed by Mr. Martinez' second attorney.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226
(956) 421-3423 (fax)
Fed. ID. 1178
Texas Bar 03052800

**CERTIFICATE OF SERVICE**

I, Lisa S. Brodyaga, hereby certify that a copy of the foregoing,
with exhibits, was personally delivered to the office of the
Assistant United States Attorney at Brownsville, Texas, this 24th
day of June, 2004.



UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BOARD OF IMMIGRATION APPEALS
FALLS CHURCH, VIRGINIA

*FILE COPY*

| | | |
|---|---|---|
| In the matter of: | ) | |
| | ) | FILE NO.: A41-272-217 |
| **JOSE EZEQUIEL MARTINEZ-MARTINEZ** | ) | IN REMOVAL PROCEEDINGS |
| | ) | |
| Respondent/Appellant. | ) | |
| | ) | |

## MOTION TO REOPEN AND EMERGENCY REQUEST FOR STAY OF REMOVAL

PURSUANT to 8 CFR §3.2(c), Respondent JOSE EZEQUIEL MARTINEZ-MARTINEZ, through his undersigned attorney requests that the Board of Immigration Appeals (BIA) reopen this above entitled matter and requests an emergency stay of deportation, as Respondent has been served with Notice to Obligor to Deliver Alien on April 9, 2004 at Harlingen Field Office, 1717 Zoy St, Harlingen, TX 78552, for deportation, a copy of which is attached **as EXHIBIT "1"** .

In support of this motion, the Respondent states as follows:

1.     He is a native and citizen of Mexico;

2.     He became a lawful permanent resident of the United States on April 23, 1987 at Hidalgo, Texas and has resided in the United States since that time.

3.     He is charged with being deportable under §237(a)(2)A(iii) of the *Immigration and Nationality Act* as an alien who has been convicted on November 22, 1995 in the United States District Court,

Southern District of Texas, for the offense of possession with intent to distribute approximately 238 kilograms of marijuana [21 U.S.C. 841(a) and (b)(1)B] for this offense, he was sentenced to 37 months imprisonment.

4.  He appeared before the Immigration Judge in Harlingen, Texas and applied for relief under 212(c) of the *Immigration and Nationality Act*. On November 4, 2002 the Immigration Judge denied the Respondent's application for 212(c) relief.

5.  An appeal was taken by the Respondent's former attorney, ALBERTO PULLAN, IBC Bank Building, Suite 205, 1623 Central Boulevard, Brownsville, Texas 78520.

6.  The record reflects that the only reason stated in the appeal notice filed by the Respondent's former attorney in support of the appeal was that "the decision of the Immigration Judge, attached, was not supported by the evidence presented at the merit hearing on this matter, and was abuse of discretion. A separate brief will be filed with points and authorities to support Respondent's position."

The record of Appeal Brief reflects that Respondents's former attorney merely argued as to whether there was sufficient evidence to warrant a favorable consideration as a matter of law, Respondent argued relating to hardship to Lawful Permanent spouse, three U.S. Citizen children, duration of family's residence in the U.S.A established through testimony of family members,

property ties and rehabilitation.

Respondent's attorney argued that the Immigration Judge  based his decision mostly upon absence of documentary evidence.

7.    Respondent's attorney, in his Appeal Brief, failed to argue that 212(c) relief under **Matter of Marin** 16 I&N Dec 581 (BIA1978 Supra) also entitles Respondent 212(c) relief on the basis of hardship to any U.S. Citizen who is intimately related to Respondent. This is also a relevant factor in establishing extreme hardship. A copy of Respondent's Appeal and Appeal Brief is attached hereto as **EXHIBIT "2"**.

8.    The record of the proceeding the Immigration court reflects that the former attorney did not properly lead evidence to establish factors of hardship as set for tin *Matter of Marin*, (Supra).  In his decision, the Immigration Judge stated the    regarding the Respondent's marriage to his wife as follows:

> "Regarding Respondent's equities in the United States, Mario de Jesus Martinez testified that she is the Respondent's wife and that she  married him in approximately December 1983 in Mission, Texas.  Maria De Jesus Martinez presented a residence alien card show that she is a Lawful Permanent Resident.  Respondent has not presented a marriage certificate with respect to his marriage to Mari De Jesus Martinez.  However, the record in this case does show that at least they would have a common law marriage under the laws of the State of Texas since they live together, they consider themselves husband and wife and they hold out themselves out to the public as husband and wife....."

Respondent's Children: respecting Respondent's children the immigration judge stated as follows:

"With respect to the Respondent's children, he testified that he has three children who are ages 21, 13, and 10 and that they are all United States citizens by birth in the United States. ..... The Court notes that the record does not contain copies of birth certificates for any of the three children respondent testified about.  They are generally accepted documents establishing the place and date of birth as well as the parents of the child who was born through the filing of birth certificates.  Respondent has not shown that the birth certificate for his three children are unavailable, however, he has not presented those birth certificates as proof of the fact that he has children who are United States Citizens.  Therefore, the Court find the Respondent has failed to prove that he has any children who are United States Citizens."

A copy of Immigration judges oral Decision is attached  hereto as

**EXHIBIT "3"**

9.    The record reflects that the Respondent's attorney neglected to file a Pre-Hearing statement.  It is a prudent requirement that in any Merit Hearing, a Pre-Hearing Statement be filed stating therein Respondent's grounds for relief, filing therewith Affidavits of Witnesses stating hardship to Respondent and his family, filing as exhibits Marriage certificates, Birth certificates, documents of medical evidence, children's school reports and other documents supporting Respondent's grounds of extreme hardship.  None of this was  done. Respondent's attorney failed to subpoena or even request Respondent's l probation officer to testify.  Attached hereto is a copy of the entire transcript of the merit Hearing proceedings before the Immigration judge as **EXHIBIT "4"**.

10.    Respondent's  former  attorney  had  conducted  only  half  hour perfunctory pre-trial interview one hour before the Merit Hearing

and therefore did not prepare his case adequately to present all the aspects of Respondent's grounds for 212(c) relief.

11.    No evidence was led with respect to Respondent's medical conditions and especially that Respondent had undergone cervical spine surgery and heart surgery and as the result of this Respondent will suffer health problems if he were deported to Mexico. Attached hereto is the Respondent's Medical Report marked as **EXHIBIT "5"**.

12.    No evidence was led with respect to Respondent's wife's medical condition especially relating the fact that she suffers from manic depression and severe migraine headache and the medical hardship she would suffer if her husband is deported. Attached hereto is the Medical Report of Respondent's wife as **EXHIBIT "6"**

13.    No evidence was led regarding the children's education and how their father's removal will adversely affect the education of Jose Ezequiel Martinez Jr. 15 years who is an A and B student and Manuel Martinez who is an A student.  Attached hereto are the school Reports of Jose Ezequiel Martinez Jr. and Manuel Martinez as **EXHIBIT "7"**.

14.    Had all the aspects of the evidence required to establish grounds for 212(c) relief  been presented, the court could have been more inclined to reach a favorable decision.

15.    The Immigration Judge found the Respondent and his children

credible witness . The appeal brief record also reflects that respondent's former attorney failed to argue the sufficiency of evidence at the Merit Hearing  by relating each aspect of hardship to the Respondent's family.

16.    A primary reason for this motion to re-open is the ineffective assistance of counsel rendered by respondent's former attorney Alberto Pullan ,through out the hearing and the appeal period as well.

17.    Respondent has resided in the United States for the past fifteen years ,after arriving here as a Permanent Resident on April 23,1987. He lives with his wife who is a lawful permanent resident and his three children , Jose Ezequiel Martinez Jr. 15 years born in Mission Texas, Manuel Martinez ,born on July 19,1991 (13 year old),born  in McAllen, Texas, Jose Martinez, 11 years old, born of respondent's previous marriage to Maria Elizabeth. Attached hereto are (1) Respondent's marriage certificate (2) birth certificate of Jose Ezequiel Martinez as **EXHIBIT"8".**

18.    In support of this motion ,the Respondent incorporates his affidavit and affidavit from his family members . These affidavits outline the hardship which respondent would suffer if he were removed to Mexico and the hardship that his family would suffer . Attached hereto are the Affidavits of the Respondent and his wife Maria De Jesus as **EXHIBIT "9"** .

19.   Since the time of the Respondent's last hearing ,the health of his wife has severely deteriorated . She suffers from frequent prolonged period  of depression triggered by the prospects of her husband's removal.

20.   The Respondent's wife is totally dependent on her husband for helping her around the house and helping her with her young children, and doing the errands such as shopping and banking. She would suffer emotionally if respondent is deported Respondent has no close relatives nor distant relatives in Mexico. Respondent's wife when she is undergoing depression, often displays suicidal tendencies.

21.   The two children  will be handicapped in their education if they are deprived of family support in their education.

22.   The Respondent had only one encounters with the law. He has no other encounters since his release. He has successfully completed his probation. He has filed his income tax returns and since his release, has been a law abiding citizen and has now fully integrated in the community. Attached hereto is a letter from the probation officer stating that the Respondent has successfully completed his probation and marked as **EXHIBIT "10A"** and a letter dated March 12, 2004 from the City of Palmview stating that there are no pending cases or citations against the Respondent in the City of Palmview. Attached as **EXHIBIT "10B"**

23.  At the original hearing before the Immigration judge the respondent's former attorney made serious errors in judgment .It appears from the transcript that he had not properly researched the law, failed to follow Immigration Court procedures in that he neglected to file a Pre-hearing statement. Further at no time during the respondent's hearing before immigration judge did former attorney call expert witness or his probation officer to testify or obtain proper report from his probation officer concerning his rehabilitation.

24.  **In _Matter of Marin_**, 16 I & N Dec. 581 (BIA 1979), the BIA set out the relevant factors in considering an application for 212(c) relief.  Among the factors that would be considered favorable are family ties in the United States, residence of long duration in the United States, evidence of the hardship to the Respondent and family if deportation occurs and rehabilitation.  The failure of the attorney to have all members of the Respondent's family or those individuals familiar with his reformation to testify on his behalf or at minimum, submit Affidavits in support of his application, seriously jeopardized the Respondent's case. Not submitting Respondent's certificate of marriage, children's birth certificate, falls short of the minimum standards of representation and constitute ineffective assistance of counsel.

25.  The failure to follow the applicable regulations further constitute

ineffective assistance of counsel and was prejudicial to the Respondent as the  former attorney not only failed to bring the strong positive equities of the Respondent's family situation to the attention of the Immigration judge. At a minimum, due process requires that effective counsel research  the relevant law and preparation and presentation of evidence relating his equities. **Magallanes-Damien v INS** 783 F2d 931 (9th Circuit 1986), **Paul v INS** 521 F2d 194 (5th Cir 1975) Failure to follow established procedural and evidentiary requirements regarding such strong equities cannot be considered anything other than egregious, violating due process through ineffective assistance of counsel. In light of the fact that so much is at stake (i.e., the permanent deportation of the Respondent), the Respondent's former counsel's had an ethical duty to conduct the Merit hearing with proper and adequate preparation. The Respondent's former counsel failure to present favorable equities and failure to follow the regulations and court procedures which resulted in the summary dismissal of his appeal is sufficient to demonstrate that the Respondent's rights to due process of law were violated because of the ineffective assistance of the Respondent's prior counsel.

In addition, the BIA states that in the ***Matter of Lozada***, *19 I &N  Dec 637 (BIA)*, *aff'd, 857 F. 2d 10 (1st Cir. 1998)* the motion should reflect whether a complaint has been filed with the Texas Bar which is the

appropriate disciplinary authorities.  A letter has been sent to the Texas Bar with a copy of this *Motion to Reopen*. A copy of complaint on behalf of Respondent sent to Texas Bar is attached as **EXHIBIT "11"**.

26. Due process requires either that the case be remanded to the Immigration Judge for a new hearing or the BIA vacate its prior decision and allow counsel to present relevant evidence to the Immigration Judge.

   The Respondent seeks a remand based upon the reasons of ineffective counsel in the hearing in chief as well as in representation of the appeal process.

27. For all of the above reasons, the Respondent requests that the stay of deportation be granted and the *Motion to Reopen* be granted.

WHEREFORE, the Respondent respectfully requests that his stay of deportation and Motion to Reopen be granted.

   DATED this _____ day of March, 2004.


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of Motion to Reopen and Request for Stay of Removal has been furnished to the following parties by Regular United State Mail/Personally Delivery, postage pre-paid, on this 16th day of March, 2004:

INS Trial Attorney
P.O. Box 1711
Harlingen, TX 78550


Alberto Pullan, Esquire
Law Offices of Alberto Pullen
IBC Bank, Suite 205
1623 Central Boulevard
Brownsville, Texas 78520


                          Prabodh C. Patel, Esquire
                          Florida Bar Number: 559296
                          **MOYER, STRAUS & PATEL, P.A.**
                          815 Orienta Avenue, Suite 1060
                          Post Office Box 151058
                          Altamonte Springs, Florida 32715
                          Telephone: 407.331.5505
                          Fax: 407.331.6308


By:        _____
                          Prabodh C. Patel, Esquire
                          Florida Bar Number: 559296

                          Attorney for Respondent
                          Jose   Ezequiel   Martinez-Martinez



**U.S. Department of Justice**
Immigration and Naturalization Service

**Notice to Obligor to Deliver Alien**

☒ **To Obligor**

☐ **To Alien (See Reverse of Form)**

**Date: March 9, 2004**

**File: A41 272 217**

Maria de Jesus Martinez
Rt 21 Box 413 2Mi N. GDWN
Mission, TX 78572

**Name (s) of Alien (s)**
Jose Ezequiel MARTINEZ-Martinez

**TO OBLIGOR:**

Under the terms of the bond you posted for release of the above alien(s), the Immigration and Naturalization Service is making demand upon you to surrender the above alien(s):

☐ For a hearing at:

Date: _____
Time: _____
Place: _____

☐ For an interview at:

Date: _____
Time: _____
Place: _____

☒ For deportation or exclusion at:

Date: April 9, 2004
Time: 10:00 a.m.
Place: Harlingen Field Office, 1717 Zoy Street, Harlingen, Tx 78552

**Warning:** *Failure to surrender the alien(s) in accordance with this demand will result in BREACHING THE BOND and its FORFEITURE TO THE GOVERNMENT.*

Very truly yours,

_Glenn L. Stewart_ SDDO

For **Marc J. Moore**
**Field Office Director**
**Detention & Removal**

| This order and notice was served by me at | | on |
|---|---|---|
| | (Location) | (Date) |
| at _____ am/pm in the following manner: | | |
| (Time) | | |
| (Signature of Officer/ Employee) | **Deportation Officer** (Title of Officer/ Employee) | |

Certified Mail 7160 3901 9844 4883 6760
Form I-340 (rev. 5-02-95) N

*4/9/04 - RTP- MTR w/ BIA pending. Bond Demand Canceled pending BIA Decision.*

*HLG/DO2*

U.S. Department of Justice
Executive Office for Immigration Review
*Board of Immigration Appeals*

**Notice of Appeal from a Decision of an Immigration Judge**



For Official Use Only

LAW OFFICES
OF ALBERTO PULLEN
956-646-3627
1623 CENTRAL BLVD. SUITE 205
BROWNSVILLE, TEXAS 78520

88-1158
1149
0103416201

2879

DATE 11/15/02

PAY TO THE ORDER OF *Board of Immigration Appeals* $ 110.00

*One hundred ten + 00/100* DOLLARS

IBC
International Bank of Commerce

A4L272217

MEMO *Jose Ezequiel Miz-Mz*

⑆114911580⑆ 10341620 ⑆ 2879

> **!** **WARNING:** Names and "A" Numbers of **everyone** appealing the Immigration Judge's decision must be written in item #1.

2. I am the ☒ Respondent/Applicant ☐ INS  *(Mark only one box.)*

3. I am     ☐ DETAINED    ☒ NOT DETAINED   *(Mark only one box.)*

4. My last hearing was at ___Harlingen , Texas_____ *(Location, City, State)*

5. **What decision are you appealing?**

   *Mark only one box below. If you want to appeal more than one decision, you must use more than one Notice of Appeal (Form EOIR-26).*

   ☒ I am filing an appeal from the Immigration Judge's decision *in merits proceedings* (example: removal, deportation, exclusion, asylum, etc.) dated _November 4, 2002_____ .

   ☐ I am filing an appeal from the Immigration Judge's decision *in bond proceedings* dated

   _____ .

   ☐ I am filing an appeal from the Immigration Judge's decision *denying a motion to reopen or a motion to reconsider* dated _____ .

   *(Please attach a copy of the Immigration Judge's decision you are appealing.)*

OMB# 1125-0002; Expires 12/31/02

Form EOIR-26
Revised Sept. 2002

**Page 1 of 3**

*Internet Version*

**U.S. Department of Justice**
Executive Office for Immigration Review
*Board of Immigration Appeals*

**Notice of Appeal from a Decision of an**
**Immigration Judge**

<table>
<tr>
<td>1.</td>
<td>
List Name(s) and "A" Number(s) of all Respondent(s)/Applicant(s):

JOSE EZEQUIEL MARTINEZ - MARTINEZ

A 41-272-217
</td>
<td>For Official Use Only</td>
</tr>
</table>

**!** **WARNING:** Names and "A" Numbers of everyone appealing the Immigration Judge's decision must be written in item #1.

*(Staple Check or Money Order Here. Include Name(s) and "A" number(s) on the face of the check or money order.)*

2.   I am the   ☒ Respondent/Applicant   ☐ INS   *(Mark only one box.)*

3.   I am      ☐ DETAINED   ☒ NOT DETAINED   *(Mark only one box.)*

4.   My last hearing was at ___Harlingen , Texas_____ *(Location, City, State)*

<table>
<tr>
<td>5.</td>
<td>

**What decision are you appealing?**

*Mark only one box below. If you want to appeal more than one decision, you must use more than one Notice of Appeal (Form EOIR-26).*

☒   I am filing an appeal from the Immigration Judge's decision *in merits proceedings* (example: removal, deportation, exclusion, asylum, etc.) dated _November 4, 2002_____ .

☐   I am filing an appeal from the Immigration Judge's decision *in bond proceedings* dated _____ .

☐   I am filing an appeal from the Immigration Judge's decision *denying a motion to reopen or a motion to reconsider* dated _____ .

*(Please attach a copy of the Immigration Judge's decision you are appealing.)*

</td>
</tr>
</table>

OMB# 1125-0002; Expires 12/31/02

Form EOIR-26
Revised Sept. 2002

**Page 1 of 3**

*Internet Version*

6. State in detail the reason(s) for this appeal. Please refer to the Instructions at part F for further guidance. You are not limited to the space provided below; use more sheets of paper if necessary. Write your name(s) and "A" number(s) on every sheet.

The decision of the Immigration Judge, attached, was not supported by the evidence presented at the marits hearing on this matter, and was an abuse of discretion.

A seperate brief will be filed with points and authorities to support respondents position.

*(Attach additional sheets if necessary)*

**!** **WARNING:** You must clearly explain the specific facts and law on which you base your appeal of the Immigration Judge's decision. The Board may summarily dismiss your appeal if it cannot tell from this Notice of Appeal, or any statements attached to this Notice of Appeal, why you are appealing.

7. Do you desire oral argument before the Board of Immigration Appeals?    ☐ Yes    ☒ No

8. Do you intend to file a separate written brief or statement after filing this Notice of Appeal?    ☒ Yes    ☐ No

**!** **WARNING:** If you mark "Yes" in item #8, you will be expected to file a written brief or statement after you receive a briefing schedule from the Board. The Board may summarily dismiss your appeal if you do not file a brief or statement within the time set in the briefing schedule.

9. [SIGN HERE →]    X _____    *11-15-02*
                          Signature of Person Appealing          Date
                          *(or attorney or representative)*

Form EOIR-26
Revised Sept. 2002

**Page 2 of 3**

*Internet Version*

| 10. | Mailing Address of Respondent(s)/Applicant(s) | 11. | Mailing Address of Attorney or Representative for the Respondent(s)/Applicant(s) |
|---|---|---|---|

**10.** Mailing Address of Respondent(s)/Applicant(s)

Jose Ezequiel MARTINEZ MARTINEZ
(Name)

Route 21 Box 413
(Street Address)

(Apartment or Room Number)

Mission, Texas 78572
(City, State, Zip Code)

(956) 519-6335
(Telephone Number)

**11.** Mailing Address of Attorney or Representative for the Respondent(s)/Applicant(s)

Alberto Pullen
(Name)

IBC Bank, 1623 Central Blvd
(Street Address)

Suite 205
(Suite or Room Number)

Brownsville, Texas 78520
(City, State, Zip Code)

(956) 546-3627
(Telephone Number)

**NOTE:** You must notify the Board within five (5) working days if you move to a new address. You must use an alien's Change of Address Form (Form EOIR-33/BIA).

**NOTE:** If an attorney or representative signs this appeal for you, he or she must file *with this appeal*, a Notice of Entry of Appearance as Attorney or Representative Before the Board of Immigration Appeals (Form EOIR-27).

**12.**

## PROOF OF SERVICE
### (You Must Complete This)

I ___Alberto Pullen___ mailed or delivered a copy of this Notice of Appeal
(Name)

on __11/15/2002__ to __INS District Counsel__
(Date)                              (Opposing Party)

at __P.O. Box 1711, Harlingen, Texas 78550__
(Address of Opposing Party)

SIGN HERE ➤   X _____
                              Signature

**NOTE:** If you are the Respondent or Applicant, the "Opposing Party" is the District Counsel for the INS.

**WARNING:** If you do not complete this section properly, your appeal will be rejected or dismissed.

**WARNING:** If you do not attach the fee or a completed Fee Waiver Request (Form EOIR-26A) to this appeal, your appeal will be rejected or dismissed.

❑ Read all of the General Instructions
❑ Provided all of the requested information
❑ Completed this form in English
❑ Provided a certified English translation for all non-English attachments

**HAVE YOU?**

❑ Signed the form
❑ Served a copy of this form and all attachments on the opposing party
❑ Completed and signed the Proof of Service
❑ Attached the required fee or Fee Waiver Request

**Page 3 of 3**

Form EOIR-26
Revised Sept. 2002

*Internet Version*

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**BOARD OF IMMIGRATION APPEALS**

| | | |
|---|---|---|
| Matter of | § | Case No. A 41-272-217 |
| JOSE EZEQUIEL MARTINEZ- | § | |
| MARTINEZ | § | |
| Respondent. | § | |

## RESPONDENT'S BRIEF

TO THE HONORABLE JUDGE OF THIS COURT:

### I. Proceedings Below

This matter was previously remanded to the court below to allow the respondent to apply for relief under Section 212(c) of the Immigration and Nationality Act pursuant to a determination by the Supreme Court that the restrictions on Section 212(c) relief do not apply retroactively to aliens who pled guilty prior to April, 24, 1996, which is the case in this matter.

The court below found that the favorable considerations, as set forth in Matter of Marin, 16 I&N Dec. 581 (BIA 1978), as they apply to the respondent, were not established in this case, and ordered the respondent removed.

### II. Points and Authorities

#### A. THERE WAS SUFFICIENT EVIDENCE TO WARRANT A FAVORABLE CONSIDERATION AS A MATTER OF LAW

Without going into painstaking detail, the gravamen of the respondents argument is that the court below erred in finding that there was insufficient evidence to warrant a favorable consideration as a matter of discretion and ordering the respondent removed from the U.S.

One look at the record will establish that the respondent provided ample evidence that the

1

following was established: family ties within the US included one spouse, and three children, all citizens of the US; duration of residency in the US includes time as far back as 1989; the hardship to the respondent and his family was likewise established through testimony of family members; property ties include his home, where the family lives; there was evidence of value and service to the community; and rehabilitation was unequivocally established through the fact that there were no other violations of law and that the respondent has been successfully on probation since 1995.

The judge below made his decision based mostly upon the absence of documentary evidence. For example, he stated that the respondent failed to establish that he had any citizen children because a birth certificate was not introduced, in spite of sworn testimony from the respondent, his wife and the child himself.

The respondent would submit that the evidence was insufficient as a matter of law and fact to support the findings of the court below.

WHEREFORE, Respondent, JOSE EZEQUIEL MARTINEZ-MARTINEZ, respectfully submits to the Board that he does warrant a favorable consideration and that the court below erred and that the decision of the immigration judge was an abuse of discretion as a matter of law, and should be reversed. The respondent prays that this Board reverse or remand this matter as set forth above.

Respectfully submitted,

*Law Offices of Alberto Pullen*
*IBC Bank, Suite 205*
*1623 Central Boulevard*
*Brownsville, Texas 78520*

*Telephone Number (956) 546-3627*
*Facsimile Number (956) 546-3626*

By: _____

*Alberto Pullen, Esq.*
*Texas State Bar Number 24004440*
*United States District Court,*
*Southern District of Texas*
*Admissions Number 16971*

## CERTIFICATE OF SERVICE

I hereby certify that on _____April 2_____, 2003, a copy of the foregoing was served on the INS District Counsel by US mail postage prepaid to:

INS District Counsel
P.O. Box 1711
Harlingen, TX 78550

_____

Alberto Pullen

3

```
         I N S
    DISTRICT OFFICE
    HARLINGEN, TX



   06/25/02

   **0040**
   MARTINEZ JOSE E #
   A41272212 #
   CK 3001 #
   I-191          195.00
   SUBTTL         195.00
   CHECK      195.00

        1  ITEMS

     8319 001    11:37
     THANK YOU
```



U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5201 Leesburg Pike, Suite 1300*
*Falls Church, Virginia 22041*

**Pullen, Alberto B., Esq.**
**1623 Central Blvd., Ste 205**
**Interntl Bank of Comm. Bldg**
**Brownsville, TX 78520**

**Office of the District Counsel/HL**
**P.O. Box 1711**
**Harlingen, TX 78551**

**Name: MARTINEZ-MARTINEZ, JOSE EZEQUIEL**          **A41-272-217**

**Type of Proceeding: Removal**                    Date of this notice: 11/22/2002

**Type of Appeal: Case Appeal**                    Filed by:   **Alien**

### FILING RECEIPT FOR APPEAL

The Board of Immigration Appeals acknowledges receipt of your appeal and fee or fee waiver request (where applicable) on 11/18/2002 in the above-referenced case.

**PLEASE NOTE:**

In all future correspondence or filings with the Board, please list the name and alien registration number ("A" number) of the case (as indicated above), as well as all of the names and "A" numbers for <u>each</u> family member who is included in this appeal.

If you have any questions about how to file something at the Board, you should review the Board's Practice Manual and Questions and Answers at www.usdoj.gov/eoir.

Proof of service on the opposing party at the address above is required for ALL submissions to the Board of Immigration Appeals -- including correspondence, forms, briefs, motions, and other documents.  If you are the Respondent or Applicant, the "Opposing Party" is the District Counsel for the INS at the address shown above.  Your certificate of service must clearly identify the document sent to the opposing party, the opposing party's name and address, and the date it was sent to them.  Any submission filed with the Board without a certificate of service on the opposing party will be rejected.

U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5201 Leesburg Pike, Suite 1300*
*Falls Church, Virginia 22041*

Pullen, Alberto B., Esq.
1623 Central Blvd., Ste 205
Interntl Bank of Comm. Bldg
Brownsville, TX 78520

Office of the District Counsel/HL
P.O. Box 1711
Harlingen, TX 78551

Name: MARTINEZ-MARTINEZ, JOSE EZEQUIEL          A41-272-217

Date of this notice: 01/08/2004

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Jeffrey Fratter
Chief Clerk

Enclosure

Panel Members:
    PAULEY, ROGER

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

**Falls Church, Virginia 22041**

File:    A41-272-217 - HARLINGEN

Date:

JAN  8 2004

In re:   MARTINEZ-MARTINEZ, JOSE EZEQUIEL

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:  Pullen, Alberto B., Esq.

ORDER:

PER CURIAM.  The Board affirms, without opinion, the results of the decision below.  The decision below is, therefore, the final agency determination.  *See* 8 C.F.R. § 1003.1(e)(4).

FOR THE BOARD

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
Harlingen, Texas

File A 41 272 217                          November 4, 2002

In the Matter of

JOSE EZEQUIEL MARTINEZ-MARTINEZ,)        IN REMOVAL PROCEEDINGS
                                )
            Respondent          )

CHARGE:        Section 237(a)(2)(A)(iii) Immigration and
               Nationality Act.

APPLICATION:   Waiver of removability, Section 212(c) Immigration
               and Nationality Act.

ON BEHALF OF RESPONDENT:       ON BEHALF OF SERVICE:

Alberto Pullen, Esquire        Flavio Escobar, Esquire
                               Assistant District Counsel

             ORAL DECISION OF THE IMMIGRATION JUDGE

Statement Of The Case.

        In a decision issued by this Court on December 8th,

1999, the Court that concluded that the record contains clear and

convincing evidence in this removal proceeding.  The respondent

is subject to removal as charged under Section 237(a)(2)(A)(iii)

of the Immigration and Nationality Act (The Act).  The Court

issued an order of removal at that time.  That order was appealed

to the Board of Immigration Appeals on December 17th, 2001.  The

Board of Immigration Appeals did not disturb in its decision the

finding of removability.  However, the Board of Immigration

Appeals remanded this case unto the Court to allow the respondent to apply for relief from removal under Section 212(c) of the Immigration and Nationality Act. And that decision of the Board stated that while the appeal was pending, the United States Supreme Court had determined that restrictions on 212(c) relief do not apply retroactively to aliens who pled guilty prior to April 24th, 1996.

Respondent then has filed this application for a waiver of removability under Section 212(c) of the Act, as well as supporting documents (group Exhibit 6). The hearing with respect to respondent's application for a waiver of removability under Section 212(c) of the Act was held on November 4th, 2002.

Statement Of The Facts And Conclusions Of Law.

In order to be eligible for a waiver of removability under Section 212(c) of the Act, respondent must show that he has had an unrelinquished domicile in the United States as a permanent legal resident for a period of at least seven years immediately prior to his application for relief under that Section. However, Section 212(c) of the Act does not provide a waiver for all who demonstrate statutory eligibility for such relief. Instead, the immigration judge is required to determine as a matter of discretion whether respondent merits the relief sought and respondent bears the burden of demonstrating that his application warrants favorable consideration. See Matter of Marin, 16 I&N Dec. 581 (BIA 1978).

A 41 272 217                    2            November 4, 2002

The exercise of discretion in a particular case necessarily requires consideration of all the facts and circumstances involved.  There must be balancing of the social and humane considerations presented in respondent's favor against the adverse factors evidencing his undesirability as a permanent resident.  The Board of Immigration Appeals has enunciated numerous factors to be considered in determining whether or not to grant Section 212(c) relief.  Favorable considerations have been found to include such factors as family ties within the United States, resident's of long duration in this country, particularly when the inception of resident's occurred at a young age, evidence of hardship to the respondent and family if removal occurs, service in this country armed forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of genuine rehabilitation if a criminal record exist and other evidence attesting to a respondent's good character.  Among the factors deemed adverse to an alien are the nature and underlying circumstances of the removal ground at issue, the presence of additional significant violations of this countries immigration laws, the existence of a criminal record, and if so, its nature, recency and seriousness and the presence of other evidence indicative of a respondent's bad character or undesirability as a permanent resident of this country.  Moreover, one or more of these adverse considerations may ultimately be determinative of

A 41 272 217                    3                    November 4, 2002

slh

whether Section 212(c) relief is in fact granted in an individual case. The Board of Immigration Appeals has also stated that as the negative factors grow more serious, it becomes incumbent upon the alien to introduce additional offsetting favorable evidence. Which in some cases may have to involve unusual or outstanding equities. Such a heightened showing is required when an alien has been convicted of a serious drug offense, particularly one relating to the trafficking or sale of drugs. An alien who demonstrates unusual or outstanding equities as required, does not compel a favorable exercise of discretion, rather absent such equities, relief will not be granted in the exercise of discretion.

In the present case, respondent testified in support of his application for a waiver of removability under Section 212(c) of the Act, also he presented the testimony of his wife, Maria De Jesus Martinez and his son, Jose Ezequiel Martinez, Jr. With respect to the testimony of respondent, the Court though concludes that respondent was a credible witness in this removal proceeding except for his testimony where he denied a responsibility for engaging in the crime for which he was convicted in 1995. The record contains a judgement from the United States District Court for the Sutton (phonetic sp.) District of Texas, showing that the respondent pled guilty on July 28th, 1995 to count two in the indictment. That indictment at count two states that "on or about June 7th, 1995 in the

A 41 272 217                    4                    November 4, 2002

Sutton District of Texas and within the jurisdiction of the court, defendant Jose Ezequiel Martinez, did knowingly and intentionally possess with intent to distribute more than 100 kilograms, that is approximately 238 kilograms (525 pounds of marijuana) a schedule one controlled substance." In light of respondent's plea of guilty to that offense and his conviction based upon that plea of guilty, his testimony that he did not knowingly and intentionally possess with intent to distribute any marijuana is not credible. Further, the Court is not permitted to go behind the record of conviction to make any independent determination of guilt or innocence. The Court is bound by the judgement of conviction (Exhibit 4 and Exhibit 5). In this case the respondent testified that he had no knowledge that the person that he was with at the time was involved with marijuana. The respondent testified that he plead guilty because he was with that person and that he had no knowledge of any marijuana being in the area. As discussed above, that testimony is contradicted by respondent's plea of guilty in the criminal proceeding.

With respect to the testimony of the respondent's wife and son, the Court concludes that they were both credible witnesses in this removal proceeding. Their testimony was forthright, internally consistent and appeared to be sincere.

The Court concludes the respondent is eligible to be considered for a discretionary waiver under Section 212(c) of the Act. The record shows the respondent was admitted to the United

A 41 272 217                    5                    November 4, 2002

States as a permanent legal resident on April 23rd, 1987. Respondent testified that he currently resides in Mission, Texas at Route 21 Box 413 and that he has resided there for about 13 years other than the times that he was in prison in the United States, based upon the conviction. This demonstrates the respondent has had an unrelinquished domicile in the United States as a permanent legal resident for more than seven years immediately prior to this application for relief under Section 212(c).

With respect to the adverse discretionary factors of record, the Court concludes that respondent's conviction for possession with intent to distribute 525 pounds of marijuana is an extremely serious adverse discretionary factor. That offense involved a very large amount of the controlled substance, marijuana and it involved trafficking in that controlled substance. Based upon that conviction, respondent was sentenced to be imprisoned for 37 months and he was imprisoned for that period of time. Respondent was ordered to surrender to the United States Marshall on December 27th, 1995 for imprisonment. Therefore, it appears the respondent was released from prison in approximately, sometime in 1998 or early 1999. There is a letter from the United States Probation Officer saying that respondent completed his three year term of supervised release as of August 18th, 2001, therefore it may have been the respondent was released from prison in approximately August of 1998, the record

A 41 272 217                    6                    November 4, 2002

is not clear.

      Regarding respondent's equities in the United States,
Maria De Jesus Martinez testified that she is respondent's wife
and that she married him in approximately December 1983 in
Mission, Texas. Maria De Jesus Martinez presented a resident
alien card showing that she is a permanent legal resident of the
United States. Respondent has not presented a marriage
certificate with respect to his marriage to Maria De Jesus
Martinez. However, the record in this case does show that at
least they would have a common law marriage under the law of the
State of Texas since they live together, they consider themselves
as husband and wife and they hold themselves out to the public as
husband and wife. Respondent has presented a 2001 United States
Individual Income Tax Return showing that he and Maria De Jesus
Martinez filed an income tax return as, under the category
"married filing joint return".

      With respect to respondent's children, he testified
that he has three children who are ages 21, 13, and 10 and that
they are all United States citizens, by birth, in the United
States. He testified that he takes care of his two minor
children. Respondent's wife, Maria De Jesus Martinez, testified
that her two children live with her and respondent and those
children are Jose Ezequiel Martinez, Jr. and Manuel Martinez.
Jose Ezequiel Martinez, Jr., testified that he is respondent's
son. The Court notes that the record does not contain copies of

birth certificates for any of the three children respondent testified about.  They are generally accepted documents establishing the place and date of birth as well as the parents of the child who was born through the filing of birth certificates.  Respondent has not shown that the birth certificates for his three children are unavailable, however, he has not presented those birth certificates as proof of the fact that he has children who are United States citizens.  Therefore, the Court finds the respondent has failed to prove that he has any children who are United States citizens.

Respondent's length of residence in the United States is also an equity to be considered.  Respondent has been a permanent legal resident of the United States for 15 years. However, it is noted that respondent became a permanent legal resident at age 33.  The record also shows, through documentary evidence, the respondent and his wife own real property in the United States.

With respect to other favorable discretionary factors, the Court must consider whether respondent has demonstrated rehabilitation.  The failure to show rehabilitation is not an adverse discretionary factor, however, if rehabilitation is demonstrated that is a favorable discretionary factor.  There is no evidence the respondent has been convicted of any criminal offense either before or after the 1995 conviction discussed above.  Respondent has testified that he has never committed any

A 41 272 217                    8                 November 4, 2002

slh

other offense.  Respondent testified that he regrets what
happened, however, as discussed above, he has denied any
knowledge of the marijuana that he possessed on June 7th, 1995.
As discussed above, respondent apparently has been outside of
prison since the middle of 1998 or shortly thereafter.  He has
not had any other problems with the law since that time.  He has
presented a letter from his United States Probation Officer dated
August 17th, 2001 which shows that as of August 18th, 2001 he
completed his three year term of supervised release and is no
longer under the supervision of the United States Probation
Department.  The Court concludes that respondent has made some
showing of rehabilitation.  In light of the seriousness of
respondent's criminal offense, the Court concludes a greater
amount of time would be necessary to determine the respondent has
achieved genuine rehabilitation.  However, there has been a
showing of some progress towards rehabilitation.

     With respect to the question of hardship to respondent
and his family if he is removed from the United States, the only
testimony regarding hardship was the testimony of respondent's
son, Jose Ezequiel Martinez, Jr., that he would feel badly if his
father is deported from the United States because he does not go
to Mexico and therefore he would not see his father.  There was
no other evidence presented with respect to whether respondent
and his family members would suffer hardship if respondent is
removed to Mexico.  The record does not show whether or not

A 41 272 217                      9               November 4, 2002

respondent's wife and children would go to live in Mexico with him if he is removed or if they would remain in the United States.

The Court concludes, based upon a review of the entire record, that the adverse discretionary factors outweigh on balance the sum total of respondent's equities in the United States the favorable discretionary factor of a showing of some progress towards rehabilitation and the hardship demonstrated through his son's testimony. Accordingly, the Court concludes that as a matter of discretion, respondent's application for a waiver of removability under Section 212(c) of the Act should be denied.

<u>ORDER</u>

THEREFORE IT IS HEREBY ORDERED the respondent's application for a waiver of removability under Section 212(c) of the Act be denied.

IT IS FURTHER ORDERED that respondent be removed from the United States to Mexico pursuant to the charge of removability stated in the Notice to Appear.

Dated this Fourth day of November, 2002.

HOWARD E. ACHTSAM
Immigration Judge

A 41 272 217                    10                    November 4, 2002

## CERTIFICATE PAGE

I hereby certify that the attached proceeding before

HOWARD E. ACHTSAM, in the matter of:

JOSE EZEQUIEL MARTINEZ-MARTINEZ

A 41 272 217

Harlingen, Texas

was held as herein appears, and that this is the original

transcript thereof for the file of the Executive Office for

Immigration Review.


Sharon Hopkins (Transcriber)

Deposition Services, Inc.
6245 Executive Boulevard
Rockville, Maryland   20852
(301) 881-3344


December 16, 2002
(Completion Date)

U.S. Department of Justice
Executive Office for Immigration Review
Immigration Court


Matter of                                    File A 41 272 217


JOSE EZEQUIEL MARTINEZ-MARTINEZ,)            IN REMOVAL PROCEEDINGS
                                )
           Respondent           )            Transcript of Hearing


Before HOWARD E. ACHTSAM, Immigration Judge


Date: May 8, 2002                    Place:  Harlingen, Texas


Transcribed by DEPOSITION SERVICES, INC. at Rockville, Maryland


Official Interpreter:  Yolanda Martinez-Rios


Language:  Spanish


Appearances:

        For the Immigration and      For the Respondent:
        Naturalization Service:

        Cheri L. Jones, Esquire       Alberto Pullen, Esquire

1    JUDGE FOR THE RECORD

2              This is Immigration Court in Harlingen, Texas.  The

3    date is May 8, 2002.  This is Immigration Judge Howard Achtsam.

4    This is a removal proceeding in case of Jose Ezequiel Martinez-

5    Martinez, case A 41 272 217.  The respondent is present, he is

6    appearing today with legal counsel, Alberto Pullen.  The

7    Immigration Service is represented today by its Assistant

8    District Counsel, Cheri Jones.  The interpreter today in the

9    Spanish language is Yolanda Martinez who is an employee of the

10   EOIR.  This case was remanded unto the Court by the Board of

11   Immigration Appeals to allow the respondent to apply for 212(c)

12   relief in this removal proceeding.  The Court is scheduling the

13   case for a hearing on the merits of that relief.

14   JUDGE TO MR. PULLEN

15             Q.   Mr. Pullen, before I do that, do you believe

16   there's any other relief the respondent is eligible to apply for?

17             A.   No, Your Honor.

18             Q.   So the only relief he's applying for is under

19   Section 212(c), correct?

20             A.   That's correct, Your Honor.

21             Q.   And does respondent want to select a country for

22   removal if removal is ordered?

23             A.   Yes, Your Honor.  We would select Mexico.

24   JUDGE FOR THE RECORD

25             The Court is rescheduling the case for a hearing on the

A 41 272 217                    1                    May 8, 2002

1    merits of the 212(c) application for November 4th, 2002 at 1

2    o'clock in the afternoon in this court.

3    JUDGE TO MR. PULLEN

4              Q.    Mr. Pullen, is that agreeable?

5              A.    Yes, Your Honor.   It is.

6    JUDGE TO MS. JONES

7              Q.

8              Ms. Jones, is that agreeable?

9              A.    Yes, Your Honor.

10   JUDGE FOR THE RECORD

11             Also the 212(c) application would be due to be filed

12   with the court and served upon the opposing party no later than

13   June 24th 2002.   That would not be for a hearing in court, just

14   to file it with the office of the clerk and also any documents

15   that the parties want to offer at the merits hearing, except for

16   rebuttle documentation, must be filed with the court and served

17   upon the opposing party on or before October 21st, 2002.

18   JUDGE TO MR. PULLEN

19             Q.    Mr. Pullen, is all of that agreeable with the

20   respondent?

21             A.    Yes, Your Honor.

22   JUDGE TO MS. JONES

23             Q.    Ms. Jones, is all that agreeable to the Service?

24             A.    It is, Your Honor.

25   JUDGE FOR THE RECORD

A 41 272 217                    2                    May 8, 2002

1          We'll go off the record to check to the tape recorder.

2                              (OFF THE RECORD)

3                              (ON THE RECORD)

4     JUDGE FOR THE RECORD

5          We're back on the record.

6     JUDGE TO MR. PULLEN

7          Q.   Mr. Pullen, what is the language that respondent

8     speaks and understands best?

9          A.   Spanish, Your Honor.

10    JUDGE TO MR. MARTINEZ-MARTINEZ

11         Q.   To the respondent.  Please state your name.

12         A.   Jose Ezequiel Martinez-Martinez.

13         Q.   I have rescheduled your case for a hearing in this

14    court on November 4th 2002 at 1 o'clock in the afternoon and that

15    will be the hearing on the merits of your application for a

16    waiver of removability under Section 212(c) of the Immigration

17    and Nationality Act.

18         The only valid reason for your non-appearance at that

19    hearing would be exceptional circumstances beyond your control,

20    such as a serious illness that you may have or the serious

21    illness or death of your spouse, child or parent.  But not

22    including less compelling circumstances.  If you fail to appear

23    at the hearing for any other reason, I will proceed with the

24    hearing in your absence, an order of removal will be entered

25    against you at that time and you would become ineligible for

A 41 272 217                    3                    May 8, 2002

1    voluntary departure, cancellation of removal, adjustment of

2    status and change of status under the Immigration and Nationality

3    Act for 10 years after the date of entry of the final order of

4    removal.

5    JUDGE FOR THE RECORD

6              We are adjourned.

7                    <u>HEARING CONTINUED</u>

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

A 41 272 217                    4                    May 8, 2002

U.S. Department of Justice
Executive Office for Immigration Review
Immigration Court


Matter of                                    File A 41 272 217


JOSE EZEQUIEL MARTINEZ-MARTINEZ,)          IN REMOVAL PROCEEDINGS
                                )
        Respondent          .   )          Transcript of Hearing


Before HOWARD E. ACHTSAM, Immigration Judge


Date: November 4, 2002                 Place:  Harlingen, Texas


Transcribed by DEPOSITION SERVICES, INC. at Rockville, Maryland


Official Interpreter:  Alfredo Vargas


Language:  Spanish


Appearances:

        For the Immigration and          For the Respondent:
        Naturalization Service:

        Flavio Escobar, Jr., Esquire     Alberto Pullen, Esquire

```
 1    JUDGE FOR THE RECORD

 2              This is Immigration Court in Harlingen, Texas.  The

 3    date is November 4th, 2002.  This is Immigration Judge Howard

 4    Achtsam.  This is a removal proceeding in the case of Jose

 5    Ezequiel Martinez-Martinez, case A 41 272 217.  The respondent is

 6    present, he's appearing today with legal counsel, Alberto Pullen.

 7    The Immigration Service is represented today by its Assistant

 8    District Counsel, Flavio Escobar.  The interpreter today in the

 9    Spanish language is Alfredo Vargas (phonetic sp.) who has been

10    sworn in and is the interpreter for the entire day.  This case is

11    scheduled for a hearing today with respect to the merits of

12    respondent's application for a waiver of removability under

13    Section 212(c) of the Immigration and Nationality Act.  The Court

14    is ready to proceed with the case today.

15    JUDGE TO MR. PULLEN

16              Q.   Mr. Pullen, is respondent prepared to proceed?

17              A.   Yes, Your Honor.  He is.

18    JUDGE TO MR. ESCOBAR

19              Q.   Mr. Escobar, is the Service prepared to proceed?

20              A.   Yes, Your Honor.

21    JUDGE FOR THE RECORD

22              We'll go off the record to check the tape recorder.

23                        (OFF THE RECORD)

24                        (ON THE RECORD)

25    JUDGE FOR THE RECORD
```

A 41 272 217                         5                    November 4, 2002

1          We're back on the record.  Previously there were five

2     exhibits admitted in this case.  Respondent has filed with the

3     court his application for a waiver of removability under Section

4     212(c) of the Immigration and Nationality Act.

5     JUDGE TO MR. ESCOBAR

6          Q.    Mr. Escobar, does the Service have a copy of that?

7          A.    Yes, Your Honor.

8          Q.    That document has attached to it some documents

9     that respondent has offered.  Mr. Escobar, the Service also has

10    those attachments?

11         A.    Yes, sir.

12         Q.    And does the Service have any objection to any of

13    those documents of being admitted?

14         A.    No, Your Honor.

15    JUDGE FOR THE RECORD

16          They'll be admitted together with the application as

17    group Exhibit 6.  That was filed originally without the fee

18    receipt.  Mr. Pullen does explain in the letter why that occurred

19    and submitted the fee receipt to the court.  There is a fee

20    receipt on copies of the application but not on the original.

21    JUDGE TO MR. ESCOBAR

22         Q.    Mr. Escobar, any objection to the Court attaching

23    that fee receipt to the original application?

24         A.    No, Your Honor.

25         Q.    The Court will do that?

A 41 272 217                    6              November 4, 2002

1    JUDGE TO MR. PULLEN

2

3            Q.    Mr. Pullen, you then submitted a copy of the

4    application with the fee receipt and this attachment.    It's also

5    the same attachments as to the original application that have

6    just been admitted, correct?

7            A.    That is correct, Your Honor.

8            Q.    So there's no reason to admit those again?

9            A.    No.

10           Q.    And then there's another copy of the application

11   that was submitted with that letter showing why it was filed with

12   out the fee receipt when it was first filed.

13   JUDGE TO MR. ESCOBAR

14           Q.    Mr. Escobar, the Service is not, is the Service

15   making an argument that the application was filed late?

16           A.    No, Your Honor.

17           Q.    Therefore, the letter written by Mr. Pullen,

18   although will remain in the record of proceeding, does not have

19   to be admitted as an exhibit.

20   JUDGE TO MR. PULLEN

21           Q.    Is that agreeable, Mr. Pullen?

22           A.    Yes, Your Honor.

23           Q.    Mr. Pullen, does the respondent have any further

24   documentation's offered at this time?

25           A.    No, Your Honor.

A 41 272 217                        7                    November 4, 2002

```
1    JUDGE TO MR. ESCOBAR

2              Q.   Mr. Escobar, does the Service have an

3    documentation to offer at this time?

4              A.   No, Your Honor.

5              Q.   Does the Service expect to have any witness to

6    testify today?

7              A.   No, sir.

8    JUDGE TO MR. PULLEN

9              Q.   Mr. Pullen, the respondent then will testify,

10   correct?

11             A.   Yes, Your Honor.  Respondent and also his wife and

12   maybe, if time permitting, his son for -- maybe, maybe not.

13             Q.   Okay.  Who's going to be the first witness?

14             A.   I'll have the respondent be the first witness,

15   Your Honor.

16             Q.   And what language will he testify in?

17             A.   In Spanish.

18             Q.   And then, what is his wife's name?  She'll be the

19   second witness, correct?

20             A.   That is correct, Your Honor.

21             Q.   What is her name?

22             A.   Maria De Jesus Martinez.

23             Q.   Can you spell it for the record, please?

24             A.   Maria De, M-A-R-I-A  D-E, Jesus, J-E-S-U-S, last

25   name, Martinez, M-A-R-T-I-N-E-Z.
```

A 41 272 217                          8                     November 4, 2002

1          Q.    And what language will she testify in?

2          A.    Spanish as well.

3          Q.    And then the third possible witness?

4          A.    Jose Manuel Martinez, J-O-S-E, M-A-N-U-E-L,

5    Martinez, M-A-R-T-I-N-E-Z.

6          Q.    And what language will he testify in if he

7    testifies?

8          A.    English, Your Honor.

9    JUDGE TO WITNESSES

10         Q.    The Court will swear in all the witnesses at this

11   time.  To the respondent, Jose Ezequiel Martinez-Martinez, Maria

12   De Jesus Martinez and Jose Manuel Martinez, please all stand up

13   and raise your right hand.  Do each of you swear that any

14   testimony that you give in this proceeding will be the truth, the

15   whole truth and nothing but the truth, so help you God?

16         A.    Yes.

17   JUDGE TO INTERPRETER

18         Q.    By all?  By all the witnesses?

19         A.    Yes.

20         Q.    Thank you.

21   JUDGE TO WITNESSES

22         Q.    Please be seated.

23   JUDGE TO MR. PULLEN

24         Q.    Mr. Pullen, are you prepared to present the

25   respondent as the first witness?

A 41 272 217                    9              November 4, 2002

1          A.   Yes, Your Honor.

2   JUDGE TO MR. MARTINEZ-MARTINEZ

3          Q.   To the respondent, please come up to the witness

4   chair which is that red chair and be seated.

5   JUDGE TO MR. PULLEN

6          Q.   Mr. Pullen, now please proceed.

7          A.   Thank you, Judge.

8   MR. PULLEN TO MR. MARTINEZ-MARTINEZ

9          Q.   Would you please state your full name for the

10  record and spell the last name.

11         A.   Jose Ezequiel Martinez-Martinez.

12         Q.   And are you the respondent in this proceedings?

13         A.   Yes.

14  JUDGE FOR THE RECORD

15         We'll go off the record to check the tape recorder.

16                          (OFF THE RECORD)

17                          (ON THE RECORD)

18  JUDGE FOR THE RECORD

19         We're back on the record.

20  JUDGE TO MR. PULLEN

21         Q.   And, Mr. Pullen, please proceed.

22         A.   Thank you, Your Honor.

23  MR. PULLEN TO MR. MARTINEZ-MARTINEZ

24         Q.   Mr. Martinez, when did you first become a resident

25  alien of the United States?

A 41 272 217                    10              November 4, 2002

1    JUDGE TO MR. PULLEN

2         Q.   Tell your witness you can't look at anybody else

3    for the answers.  You just have to answer the best you can.

4    MR. MARTINEZ-MARTINEZ TO MR. PULLEN

5         Q.   It's that I don't recall the date, that's the

6    reason why.

7         A.   The approximate year, please?

8         Q.   It was about '93.

9    JUDGE TO MR. PULLEN

10        Q.   Mr. Pullen, I think we've, that is stated in the

11   Notice to Appear and I understand you're probably just asking

12   that as a predicate kind of question.

13        A.   I'll move on, Your Honor.

14        Q.   Well, anyway, we may want to establish that for

15   him just so he can answer other questions.

16   JUDGE TO MR. MARTINEZ-MARTINEZ

17        Q.   To the respondent.  The Notice to Appear on your

18   case alleges that you entered the United States, actually there

19   is an immigrant visa document that shows that you were admitted

20   to the United States as a permanent resident on April 23rd, 1987.

21   Does that sound correct?

22        A.   Yes.

23   MR. PULLEN TO JUDGE

24        Q.   Judge, the translator said '97, I believe it's

25   '87.

A 41 272 217                    11              November 4, 2002

```
 1          A.    Okay.  Then we'll repeat it then.

 2   JUDGE TO MR. MARTINEZ-MARTINEZ

 3          Q.    To the respondent.  There's a visa document

 4   stating that you entered the United States, you were admitted to

 5   the United States as a permanent legal resident on April 23rd,

 6   1987.  Does that sound, correct?

 7          A.    Yes.

 8   JUDGE TO MR. PULLEN

 9          Q.    Proceed, Mr. Pullen.

10          A.    Thank you, Your Honor.

11   MR. PULLEN TO MR. MARTINEZ=MARTINEZ

12          Q.    Are you a citizen of Mexico, sir?

13          A.    Mexican.

14          Q.    And what is your birth date, please?

15          A.    May 15, '53.

16          Q.    And where were you born?

17          A.    Enrancho Los Norleous (phonetic sp.), Moroleon.

18          Q.    Is that in the country of Mexico?

19          A.    Yes, sir.

20          Q.    And what is your address right now, please?

21          A.    It is in Mission, Texas.

22          Q.    Do you recall the address?

23          A.    Route 21, Box 413.

24          Q.    And approximately how long have you lived there?

25          A.    About 13 years.
```

A 41 272 217                    12              November 4, 2002

```
 1            Q.   But that's not counting the time you were in
 2    prison, correct?
 3            A.   Without including that, because I've been longer
 4    there.
 5            Q.   Okay.  And are you working right now?
 6            A.   Right now, no.  I'm disabled.
 7            Q.   How long have you been disabled?
 8            A.   Approximately seven years.
 9            Q.   In fact you've had, within the few years, heart
10    surgery, did you not, sir?
11            A.   Heart surgery and here in my neck.
12            Q.   Are you presently married?
_3            A.   Yes.
14            Q.   What is the name of your wife?
15            A.   Maria De Jesus Martinez.
16          · Q.   And how many children do you have?
17            A.   Three.
18            Q.   Okay.  And where are they from?  Are they citizens
19    of the United States?
20            A.   American citizens.
21            Q.   Were they born here?
22            A.   Yes.
23            Q.   And what are their ages?
24            A.   One is 10, other one 13, and then another one 21.
?5            Q.   Do you take care of the two minor children?
```

A 41 272 217                          13                    November 4, 2002

```
 1        A.    Yes.

 2        Q.    Okay.  Regarding the (indiscernible) which you

 3   were convicted, did you, was that the first offense you ever

 4   committed?

 5        A.    The only one.

 6        Q.    And you were sentenced to prison, is that correct?

 7        A.    Yes.

 8        Q.    You were also, were you also sentenced to a term

 9   of supervised release?

10        A.    Yes.

11        Q.    For how long?

12        A.    Three and a half years.

 3        Q.    And did you comply with all the terms of your

14   supervised release?

15        A.    Yes.

16       ·Q.    I'm going to show you what's, what's already been

17   admitted.  It's a letter from the United States District Court

18   probation office.

19   JUDGE TO MR. PULLEN

20        Q.    Mr. Pullen, that's been admitted.  What's the

21   purpose for showing it to respondent.

22        A.    Let me ask him, Judge, another way.

23   MR. PULLEN TO MR. MARTINEZ-MARTINEZ

24        Q.    Were there any problems with your supervised

25   release terms at all?
```

A 41 272 217                    14                    November 4, 2002

```
1          A.   No.

2          Q.   Have you ever had trouble with the law since?

3          A.   No.

4          Q.   Why do you think you deserve to stay in the United

5     States as a resident alien?

6          A.   Because I regret what happened and actually asking

7     for a pardon because of that.

8          Q.   Have you been also paying taxes to this country

9     since then?

10          A.   Yes.

11          Q.   And I'll ask you again, have you ever, have you

12     been a law abiding citizen ever since?

13          A.   Yes.  I haven't had any problems.

14          Q.   Will you continue to be a law abiding citizen if

15     you are granted a waiver to stay here?

16          A.   Yes.

17     MR. PULLEN TO JUDGE

18          Q.   Pass the witness, Your Honor.

19     JUDGE TO MR. ESCOBAR

20          Q.   Mr. Escobar, do you have questions on cross-

21     examination?

22          A.   Yes, sir.

23          Q.   Proceed.

24          A.   Thank you.

25     MR. ESCOBAR TO MR. MARTINEZ-MARTINEZ
```

A 41 272 217                    15                    November 4, 2002

1         Q.    How much marijuana were you convicted of

2    possessing?

3         A.    Five hundred and forty-eight.

4         Q.    Five hundred and forty-eight pounds?

5         A.    Yes.

6         Q.    And were you going to sell this marijuana?

7         A.    No.

8    JUDGE TO MR. MARTINEZ-MARTINEZ

9         Q.    To the respondent.   Please speak up loudly and

10   clearly for the record.

11   JUDGE TO MR. ESCOBAR

12        Q.    Proceed, Mr. Escobar.

13        A.    Yes, sir.

14   MR. ESCOBAR TO MR. MARTINEZ-MARTINEZ

15        Q.    Where did you obtain this marijuana?

16        A.    A friend of mine was the one bringing it in.

17        Q.    What friend?

18        A.    Martine Getarez (phonetic sp.).

19        Q.    And where is Martine Getarez, or where does he

20   live?

21        A.    I don't know where he is right now.

22        Q.    Well, where did you meet Martine Getarez?

23        A.    He was from Mexico, from there, also from

24   Enrancho.

25        Q.    And you said that he, that he had the marijuana?

A 41 272 217                    16                    November 4, 2002

1      A.   Yes, he was the one having it.  I just was riding

2   along with him.

3      Q.   And where were you coming from?

4      A.   I was coming from the house.  I was riding along

5   because he had to pick up some trailer and I was riding along

6   with him.

7      Q.   But you knew about the marijuana?

8      A.   I wasn't aware about that.  The only thing that I

9   knew was that I was going to pick up a trailer for some race

10   horses.  Racing horses.

11      Q.   But, so are you telling the Court that you're not

12   guilty of what you were convicted of?

13      A.   I am guilty because I was riding along with him.

14      Q.   And where, where were you going to at the time

15   with Martine?

16      A.   To the ranch in order to pick up a trailer for

17   some horses.

18      Q.   And where is the ranch located?

19      A.   It is located between two and three around Miberry

20   (phonetic sp.).

21      Q.   Is this in the Mission, Texas area?

22      A.   Yes.

23      Q.   Okay.  And, and after going to the ranch, where

24   else were you going?

25      A.   Back home.

A 41 272 217                    17              November 4, 2002

```
 1          Q.    Did it belong to Martine?

 2          A.    He said that he had bought that and he was going

 3   to pick it up.

 4          Q.    Let me clarify, the horse trailer was located at

 5   your ranch?

 6          A.    In the ranch.

 7          Q.    In your ranch?

 8          A.    No.  It's not my ranch, I only know the owner.

 9          Q.    Who's the owner.

10          A.    I don't know.

11          Q.    So Martine Getarez picked you up to go to that

12   ranch to get a horse trailer?

13          A.    Exactly.  So it is.

14          Q.    Okay.  And while you were at the ranch you were

15   arrested?

16          A.    Yes.

17          Q.    Okay.  And the marijuana, you testified, was

18   located inside the horse trailer?

19          A.    Yes.  Inside the trailer it was.

20          Q.    Okay.  Did you get to see it when you were

21   arrested?

22          A.    When I was arrested, that was the time when I saw

23   it, otherwise I didn't see it.

24          Q.    Okay.  And you went to court on those charges and

25   you plead guilty?
```

A 41 272 217                      19                 November 4, 2002

1          A.   Yes, sir.

2          Q.   Because you were guilty?

3          A.   Yes, because I was with him.

4          Q.   So you're telling the Court here today that you

5    were convicted of just being there?

6          A.   Yes, of course.  But I'm guilty because I was with

7    him.

8          Q.   Okay.  But not because you possessed the

9    marijuana?

10         A.   I wasn't the owner and I wasn't even aware there

11   was any there.

12         Q.   And you had an attorney at the you entered your

13   plea of guilty in Federal court?

14         A.   The Government assigned me a public defender.

15         Q.   Okay.  And you went to prison for 37 months?

16         A.   Yes.

17         Q.   And then you were on probation for about three

18   years, three and a half years?

19         A.   Yes.

20   MR. PULLEN TO JUDGE

21         Q.   Your Honor, I don't mean to interrupt.  For the

22   record it's called a supervised release term.  It's different

23   than probation.  It's just for the record, clarification.

24         A.   You object to the question, though?

5          Q.   No, Your Honor.

A 41 272 217                    20              November 4, 2002

```
 1    JUDGE TO MR. ESCOBAR

 2            Q.    Proceed, Mr. Escobar.

 3            A.    Thank you.

 4    MR. ESCOBAR TO MR. MARTINEZ-MARTINEZ

 5            Q.    Have you ever been convicted of any other offense

 6    in the United States?

 7            A.    None.

 8    MR. ESCOBAR TO JUDGE

 9            Q.    May I go off the record momentarily to review my

10    notes?

11            A.    We'll go off the record for that purpose.

12            Q.    Thank you.

13                            (OFF THE RECORD)

14                            (ON THE RECORD)

15    JUDGE FOR THE RECORD

16            ·    We're back on the record.

17    JUDGE TO MR. ESCOBAR

18            Q.    Mr. Escobar, are you ready to proceed?

19            A.    Yes, sir.

20    MR. ESCOBAR TO MR. MARTINEZ-MARTINEZ

21            Q.    Do you know how much the marijuana was going to be

22    sold for?

23            A.    No.

24            Q.    Did you know that, that that marijuana was

25    intending to be distributed?
```

A 41 272 217                         21                 November 4, 2002

slh

1          A.   I didn't know.

2     MR. ESCOBAR TO JUDGE

3          Q.   Pass the witness, Your Honor.

4     JUDGE TO MR. PULLEN

5          Q.   Mr. Pullen, do you have any further questions for

6     him?

7          A.   No, Your Honor.

8     JUDGE TO MR. MARTINEZ-MARTINEZ

9          Q.   To the respondent.  There are no further questions

10    for you.  You may sit next to your attorney.

11    JUDGE TO MR. PULLEN

12         Q.   Mr. Pullen, your next witness is going to be Maria

3     De Jesus Martinez, correct?

14         A.   Correct, Your Honor.

15    JUDGE TO MS. MARTINEZ

16         Q.   To Maria De Jesus Martinez, please come up to the

17    witness chair.

18    JUDGE TO MR. PULLEN

19         Q.   Proceed, Mr. Pullen.

20         A.   Thank you, Your Honor.

21    MR. PULLEN TO MS. MARTINEZ

22         Q.   Could you please state your name for the record,

23    please?

24         A.   Maria De Jesus Martinez.

25         Q.   And are you the wife of Jose Ezequiel Martinez-

A 41 272 217                    22              November 4, 2002

1    Martinez?  The respondent in this --

2              A.    Yes.

3              Q.    The respondent in these proceedings?

4              A.    Yes.

5              Q.    Ms. Martinez, you have heard the testimony of your

6    husband here and today.

7              A.    Yes.

8              Q.    As far as you know, is everything that he said

9    true?

10             A.    So it is.

11             Q.    Is Mr. Jose Ezequiel Martinez, is he a good

12   husband?

13             A.    Yes.

14             Q.    Has he ever given you reason to doubt his

15   fidelity?

16             A.    No.

17             Q.    Has he ever beaten you in any way?

18             A.    No, neither.

19             Q.    Is he a good father?

20             A.    Yes.

21             Q.    Is there anything else you would like to say in

22   his behalf?

23             A.    No.  Only that he is a good husband and a good

24   father.

25             Q.    Is he a hard working person when he can work?

A 41 272 217                    23              November 4, 2002

1         A.    When he was able, yes.  But now that he's

2    disabled --

3         Q.    Would you consider your husband a person of good

4    moral character?

5         A.    It's good.

6    MR. PULLEN TO JUDGE

7         Q.    I pass the witness, Your Honor.

8    JUDGE TO MR. ESCOBAR

9         Q.    Mr. Escobar, do you have any questions on cross-

10   examination?

11        A.    Yes, sir.

12        Q.    Proceed.

13        A.    Thank you.

14   MR. ESCOBAR TO MS. MARTINEZ

15        Q.    What kind of work did your husband do before he

16   got disabled?

17        A.    He was working in that kind of, like you would

18   describe like cleaning oil wells.  Yes.

19        Q.    Okay.  And where, where was he employed?

20        A.    Well, he was, he was beginning, at the beginning

21   with Cole (phonetic sp.) and then later I hardly recall.  I don't

22   recall where he use to work afterwards.

23        Q.    And, ma'am, you say your husband is disabled,

24   what's the extent of his disability?

25        A.    That he gets tired, he cannot walk too long

A 41 272 217                    24              November 4, 2002

1    because he gets tired quickly.  When he's sitting long time, then

2    he has pain in his waste.  He must be little while sitting down

3    and a little while walking a little bit and so on.

4            Q.   Did he suffer some kind of an accident in 1992?

5            A.   Well, when he had the, an accident on his place of

6    work.

7            Q.   Okay, what, what happened to him in his place of

8    work?

9            A.   He was injured by lifting a very heavy piece of

10   metal.  That's why he was, he had surgery here in the neck

11   because two of his bones disconnected.

12   JUDGE FOR THE RECORD

.3           Let the record reflect that the witness pointed to the

14   back of her neck.

15   JUDGE TO MR. ESCOBAR

16           · Q.   Proceed, Mr. Escobar.

17           A.   Yes, sir.

18   MR. ESCOBAR TO MS. MARTINEZ

19           Q.   And did he also have some kind of heart surgery?

20           A.   Yes, because they found out that three of his

21   heart veins were clogged.

22           Q.   I see.  And you know, do you know that he was

23   convicted of possession with intent to distribute marijuana,

24   correct?

25           A.   Well, when he talked to me after he had been

A 41 272 217                        25                November 4, 2002

1    arrested, that's when I became aware of that.

2            Q.    But you're aware he went to prison, right?

3            A.    Yes, I knew.  And I knew that he was also there

4    because I've been living with him so many years.

5            Q.    Okay.  And he was disabled at the time that he

6    went to prison?

7    MR. ESCOBAR TO JUDGE

8            Q.    I'm going to object to that translation, Your

9    Honor.  My question was that, he was disabled at the time that he

10   went to prison.

11   JUDGE TO INTERPRETER

12           Q.    To the interpreter.  Do you believe that there

13   should be a modification?

14           A.    Yes, I do, sir.

15           Q.    Proceed.

16   MS. MARTINEZ TO MR. ESCOBAR

17           Q.    Yes.

18           A.    Okay.  So he wasn't employed at the time he was

19   convicted and sent to prison, correct?

20           Q.    Well, well, he became disabled after, I don't

21   recall.

22           A.    But was he employed at the time that he was

23   arrested and went to prison?

24           Q.    He was, no, I don't think so.

25           A.    Okay.  So he wasn't, he wasn't working at the

A 41 272 217                        26                    November 4, 2002

```
1   time?

2           Q.   No, I don't think so.

3           A.   Well, what did he tell you about being, when you

4   first found out he had been arrested, what did he tell you?

5           Q.   Well, well, he only told me that he had been

6   arrested because he had been with this friend, well, that's the

7   only thing he told me.

8           A.   Did you know his friend?

9           Q.   No.

10           A.   Well, what's your status here in the United

11  States, ma'am?

12           Q.   What do you mean by status?

13           A.   Yes.  What immigration status do you have?

14           Q.   I am a legal resident.

15  JUDGE TO MS. MARTINEZ

16           Q.   Do you have your card?

17           A.   If you'll allow me?

18           Q.   Yes.

19  JUDGE FOR THE RECORD

20           We'll go off the record.

21                           (OFF THE RECORD)

22                           (ON THE RECORD)

23  JUDGE FOR THE RECORD

24           We're back on the record.  Let the record reflect that

25  the witness has handed up to the Court a resident alien card in
```

A 41 272 217                        27                    November 4, 2002

s¹h

1    the name of Maria De Jesus Espinosa (phonetic sp.), and there's
2    just, the last name is G-O-N-Z-A-L- and it's cut off at that
3    point.  Date of birth, June 28th, 1957.
4    JUDGE TO MR. ESCOBAR
5            Q.   Mr. Escobar, do you want to review that?
6            A.   Yes, Your Honor.
7    JUDGE TO MS. MARTINEZ
8            Q.   To the witness.  What was your name before you
9    were married?
10           A.   Maria De Jesus Espinosa Gonzales (phonetic sp.).
11   JUDGE TO MR. PULLEN
12           Q.   Mr. Pullen, do you want to review it?
3            A.   No, Your Honor.
14           Q.   Okay.  You can give it back to the witness then.
15   JUDGE FOR THE RECORD
16            .Let the record reflect that Mr. Pullen is giving it
17   back to the witness.
18   JUDGE TO MR. ESCOBAR
19           Q.   Mr. Escobar, proceed.  Mr. Escobar, do you, based
20   upon her testimony of what her name was before she was married,
21   the Service would agree that that's her permanent resident card?
22           A.   Yes, sir.
23   JUDGE TO MR. PULLEN
24           Q.   Mr. Pullen, you would agree?
25           A.   I concur, yes, Your Honor.

A 41 272 217                    28              November 4, 2002

slh

```
 1   JUDGE TO MR. ESCOBAR

 2          Q.   Mr. Escobar, proceed.

 3          A.   Thank you.

 4   MR. ESCOBAR TO MS. MARTINEZ

 5          Q.   When did you marry Jose Ezequiel Martinez?

 6          A.

 7

 8          I got married December '83, I think.  I forgot.

 9          Q.   And where did you marry him?

10          A.   I got married in Mission.

11   JUDGE TO MS. MARTINEZ

12          Q.   Is that Mission, Texas?

13          A.   Yes, yes.

14   MR. ESCOBAR TO MS. MARTINEZ

15          Q.   And are you presently working, ma'am?

16          A.   Yes, I'm working.

17          Q.   Please tell us where you're working?

18          A.   I am working with Texa Visiting Nurse.

19   JUDGE TO MS. MARTINEZ

20          Q.   Visiting nurse, is that right?

21          A.   Visiting nurse.  I'm working on a charity program

22   in (indiscernible).  That's all.

23   MR. ESCOBAR TO MS. MARTINEZ

24          Q.   And how long have you been working there?

25          A.   With Texa Visiting Nurse, it's been already seven
```

A 41 272 217                           29                    November 4, 2002

1    or eight years.

2            Q.    Okay.  And who else lives with you and your

3    husband at home?

4            A.    Only my two children.

5            Q.    Okay.  And is that Jose E. and Manuel Martinez?

6            A.    Yes.  Yes, Jose Ezequiel Martinez, Jr. and Manuel

7    Martinez.

8            Q.    Okay.  Are you presently on any public assistance?

9            A.    No.  Only Medicaid because of the children.

10           Q.    Okay.  And did your husband tell you he was guilty

11   of what he was convicted of, ma'am?

12           A.    Well, he told me that he hadn't, he had nothing to

13   do with that, but that he was guilty from the moment that he was

14   with this guy.

15   MR. ESCOBAR TO JUDGE

16           Q.    Pass the witness, Your Honor.

17   JUDGE TO MR. PULLEN

18           Q.    Mr. Pullen, do you have any further questions?

19           A.    No, Judge.

20   JUDGE TO MS. MARTINEZ

21           Q.    To the witness.  There are no further questions

22   for you.  Thank you for your testimony, you're excused.

23   JUDGE FOR THE RECORD

24           We'll go off the record to change tapes.

25                           (OFF THE RECORD)

A 41 272 217                    30                    November 4, 2002

1                          (ON THE RECORD)

2    JUDGE FOR THE RECORD

3               We're back on the record.

4    JUDGE TO MR. PULLEN

5               Q.   Mr. Pullen, are you going to present the third

6    witness?

7               A.   Yes, Your Honor.  I call Jose Ezequiel Martinez,

8    Jr.

9    JUDGE TO MR. MARTINEZ

10              Q.   Please come up to the witness chair and be seated.

11   JUDGE FOR THE RECORD

12              We'll go off the record while he comes up.

13                          (OFF THE RECORD)

14                          (ON THE RECORD)

15   JUDGE FOR THE RECORD

16              We're back on the record.  The next witness is seated

17   in the witness chair.

18   JUDGE TO MR. PULLEN

19              Q.   Proceed, Mr. Pullen.

20              A.   Thank you, Judge.

21   MR. PULLEN TO MR. MARTINEZ

22              Q.   Can you please state your full name for the

23   record?

24              A.   Jose Ezequiel Martinez, Jr.

25              Q.   And are you the son of Jose Ezequiel Martinez, the

A 41 272 217                     31              November 4, 2002

s.l h

1    respondent in these proceedings?

2            A.    Yes.

3            Q.    Okay.  You've sat here and listened to the

4    testimony given by your father and your mother.  Is, as far as

5    you know, everything that they've said, is that true?

6            A.    Yes.

7            Q.    Do you look up to your father?

8            A.    Yes.

9            Q.    Is he a good person?

10           A.    Yes.

11           Q.    How would you feel if he was to be deported to

12   Mexico?

13           A.    Like bad because I don't get to go to Mexico.  I

14   wouldn't see him.

15           Q.    Are you, are you presently in school?

16           A.    Yes.

17           Q.    What grade?

18           A.    Ninth.

19           Q.    Where?

20           A.    La Hoya (phonetic sp.).

21           Q.    Is that in La Hoya, Texas?

22           A.    Yes, sir.

23           Q.    Do you make good grades?

24           A.    Yes.

25           Q.    Are you asking the Court to help you keep your

A 41 272 217                     32                     November 4, 2002

1   father here with you?

2          A.   Yes.

3   MR. PULLEN TO JUDGE

4          Q.   That's all I have, Your Honor.   Pass the witness.

5   JUDGE TO MR. ESCOBAR

6          Q.   Mr. Escobar, any questions?

7          A.   No, Your Honor.

8   JUDGE TO MR. MARTINEZ

9          Q.   To the witness.   There are no further questions

10  for you.   I thank you for your testimony.   You are excused.

11  JUDGE TO MR. PULLEN

12         Q.   Mr. Pullen, does respondent have any further

13  evidence to present?

14         A.   No, Your Honor.

15  JUDGE TO MR. ESCOBAR

16         Q.   Mr. Escobar, does the Immigration Service have any

17  further evidence to present?

18         A.   No, Your Honor.

19         Q.   Mr. Escobar, what's the position of the Service?

20         A.   Your Honor, my position is that this respondent

21  has failed to establish evidence or show evidence of outstanding

22  equities in this country.   He has also shown that he, he denies

23  being convicted of the offense for which --

24         Q.   Mr. Escobar, he doesn't deny being convicted.   .

25         A.   He doesn't deny being convicted or denies being

A 41 272 217                    33              November 4, 2002

1   convicted of possession with intent to distribute.  He admits

2   being convicted for being with another person.  He has not shown,

3   other than his family members, I don't think there's enough

4   evidence to, to overcome the seriousness of the offense in the,

5   in this case, Your Honor.  He has not accepted responsibility for

6   the conviction.

7   JUDGE TO MR. PULLEN

8         Q.   Mr. Pullen, any response?

9         A.   Yes, Your Honor.  I have a legal response to that.

10   As a criminal defense attorney of Federal court, I have with me a

11   small book.  It's basically a condensed version of the sentencing

12   guidelines.  And I notice that when somebody gets convicted of

3   possession with intent to distribute marijuana at over 100

14   pounds, there is a five year statutory minimum unless that person

15   would fall under what you call the safety vow (phonetic sp.),

16   which is Section 5(c)1.1 of the sentencing guidelines.  In order

17   to qualify for what they call the safety vow, he's got to be a

18   first offender.  He's got to debrief truthfully with the

19   Government, accept responsibility and have no criminal record.

20   Because of the months, as we can see, he was convicted to 37

21   months which falls way below the 60 month statutory minimum.  He,

22   that shows, that tells the Court that he did debrief with the

23   Government, he did truthfully accept responsibility for his

24   conduct and he was given every possible, he was sentenced at the

25   bottom of the guidelines.  Which in this case would be a level

A 41 272 217                    34                November 4, 2002

1    21, which is 37 to 46 months.  He was sentenced to 37 months.  So

2    clearly the Federal judge, taking that pre-sentence investigation

3    report into consideration, thought that this particular defendant

4    at the time deserved some type of mercy or some type of break in

5    this particular case.  Therefore, I would submit to this Court

6    that that being the case, he having paid his debt to society and

7    being eligible for some type of relief, he's shown to be, to be

8    law abiding ever since, he complied with his supervised release

9    term, he's been a good father and basically person ever since.

10   All we're asking, Judge, is for one chance.  One bite of the

11   apple.

12   JUDGE TO MR. ESCOBAR

3                Q.   Mr. Escobar, you reply?

14               A.   No, Your Honor.

15   JUDGE FOR THE RECORD

16          · The Court is going to adjourn for 20 minutes and then I

17   will issue a decision in this case.

18   JUDGE TO MR. PULLEN

19               Q.   Mr. Pullen, is that agreeable?

20               A.   Yes, Your Honor.

21   JUDGE TO MR. ESCOBAR

22               Q.   Mr. Escobar?

23               A.   Yes, sir.

24   JUDGE FOR THE RECORD

25               We'll go off the record.

A 41 272 217                          35                  November 4, 2002

1                        (OFF THE RECORD)

2                        (ON THE RECORD)

3   JUDGE FOR THE RECORD

4        We're back on the record after about a 45 minute

5   adjournment.  The Court is ready to issue it's decision at this

6   time.  The respondent is again present with his attorney.

7   Counsel for the Immigration Service is also present and the

8   interpreter is present.

9                JUDGE RENDERS ORAL DECISION

10  JUDGE TO COUNSEL

11       Q.   To the parties, you've heard the decision and the

12  order of the Court.

13  JUDGE TO MR. PULLEN

14       Q.   Mr. Pullen, on behalf of the respondent, do you

15  waive appeal or reserve appeal?

16       A.   We'll reserve, Your Honor.

17  JUDGE TO MR. ESCOBAR

18       Q.   Mr. Escobar, on behalf of the Service, do you

19  waive appeal or reserve appeal?

20       A.   Waive appeal, Your Honor.

21  JUDGE TO MR. MARTINEZ-MARTINEZ

22       Q.   For the respondent, I've issued my decision in

23  your case.  Your attorney will explain it to you in great detail.

24  I have denied your application for a wavier of removability under

25  Section 212(c) and I've ordered that you be removed from the

A 41 272 217                36              November 4, 2002

s l h

1    United States to Mexico.  Your attorney has reserved your right

2    to appeal my decision and you will have that opportunity.  If the

3    removal order does ultimately become a final order of removal and

4    if you fail to depart the United States as required pursuant to

5    the final order of removal, you would be fined under Title 18,

6    United States Code or imprisoned for not more than 10 years or

7    both.  And you would also be subject to having to pay a civil

8    penalty of not more than $500 for each day that you are in

9    violation of the requirement to depart the United States pursuant

10   to the final order of removal.

11   JUDGE FOR THE RECORD

12            We are adjourned.

                        <u>HEARING CLOSED</u>

14

15

16

17

18

19

20

21

22

23

24

25

A 41 272 217                    37              November 4, 2002

**Mission
Internal
Medicine
Clinic**

HAROLD J. PEAN, M.D.
*Diplomate of the American Board
of Internal Medicine*

MIHAELA SHUAIB, M.D.
*Diplomate of the American Board
of Internal Medicine*

MICHAEL MAX PIERRE-LOUIS, M.D.
*Diplomate of the American Board
of Family Practice*

2-25-04

To Whom it may concern.

. This letter is to certify that Jose E. Martinez
DOB: 5-15-53 is a patient at my clinic.
His diagnosis are as follow:

CAD                              Vertigo
HTN                              Cardiac arrythmia
Carotid stenosis                 Cardiomyopathy
hyperlipidemia
herniated disc
hx of MI

Therefore patient is considered totally
disabled, any questions call my office
(956) 519-0770.

Sincerely,

Harold J. Pean, M.D.

FROM :HEB 226                    FAX NO. :9565813707              ar. 08 2004 04:42PM  P2



**DR. HOMERO SAENZ RAMIREZ**
Médico Cirujano y Partero
U. A. T.
Ced. Prof. 44026S  Reg. S.S.A. 56597

DRA. HILDA MA. G. DE SA...

CONSULTORIO
B. Domínguez
Pasaje Com.
Local #5

HORARIO
Lunes a Sábado
8 a 1 y 2 a 9
Domingos
en la mahana

Nombre: Marcia Martínez          de Enero    del 2005

una caja sydolil tab Jaqueca
tocar = c/6 hrs o c/8 hrs

DOMICILIO
PARTICULAR
Victoria 816
Cd. Camargo,
Tam.
Tel. 974-03-78

FARMACIA
Tel. 974-04-29

una caja Naucuical tab
Tocar 1/2 mañana
1/2 noche

Surtase en "ɧ ARMACIA DEL CENTRO"



FROM :HEB 226                    FAX NO. :9565813707              ar. 08 2004 04:43PM  P3

Diagnostico — *Jaqueca Migraña*
*Hipertecarca arterial*
*Necrosia De prueba*



03/11/2004

**Richard's Pharmacy #2**
909 BUSINESS PARK DR# 2
MISSION, TX 78572
(956) 519-6776

03:48pm

NABP:4500749  Fed.Id: 74-2880245

MARTINEZ,JOSE E          From:01/01/2002 to 03/11/2004
RT 21 BOX 413
MISSION, TX 78572

| Fill Date | Rx Number | Quantity | Doctor | Patient Pay |
|-----------|-----------|----------|--------|-------------|

Drug : YOHIMBINE 5.4MG TABLET
Drug : VIOXX 25MG *Dolor y Inflamacion*
Drug : ULTRAM 50MG TABLET
Drug : ULTRACET TAB *Dolor*
Drug : TRICOR 160MG *Colostero*
Drug : SU-TUSS DM ELIXIR *toz catarro y composicion*
Drug : SKELAXIN 800MG *calambres*
Drug : SKELAXIN 400MG *calambres*
Drug : PROPOXY-N/APAP 100-650 TAB *Dolor*
Drug : PRAVACHOL 40MG *Colesterol*
Drug : ORPHENADRINE 100MG TAB SA *Calambres y dolor de musculos*
Drug : ORPHENADRINE 100 MG *Calambres y dolor de musculos*
Drug : NITROSTAT 0.4MG SL TAB 25S *corazon*
Drug : MOBISYL CREAM *Crema para dolor de musculos*
Drug : LEVAQUIN 500 MG *infeccion*
Drug : ECOTRIN 325MG *Aspirina*
Drug : AUGMENTIN XR 1000MG *infeccion*
Drug : ATENOLOL 50MG TABLET *alta prescion*
Drug : ATENOLOL 50MG *alta prescion*
Drug : ALTACE 2.5MG CAP 100 *alta prescion*

Pharmacist _____

**ARIANA MEDICAL PLAZA**

Carlos R. Villalta, M.D.
Teresa Orozco, P.A.

204 N PALMVIEW Dr. SUITE A • PALMVIEW, TX 78572
PHONE (956) 584-3231 FAX (956) 584-2380

FOR: _Maria Martinez_ DATE _3/11/04_

ADDRESS ___

To whom it may concern.
My Martinez has
Hypertension and
any depression — inparing
any keep on time prescribed
Zocorta prescription approved

LABEL ☐
REFILL _____ TIMES ☐ PRODUCT SELECTION PERMITTED _____ M.D. _____ M.D. ☐ DISPENSE AS WRITTEN

---

**ARIANA MEDICAL PLAZA**

Carlos R. Villalta, M.D.
Teresa Orozco, P.A.

204 N PALMVIEW Dr. SUITE A • PALMVIEW, TX 78572
PHONE (956) 584-3231 FAX (956) 584-2380

FOR: _Maria Martinez_ DATE _3-11-04_

ADDRESS ___

HCTZ 25 mg #15
Sig 1 tablet q.d.
Zocor 50 mg #30
Sig 1 tab po qd

LABEL _2_
REFILL _2_ TIMES ☐ PRODUCT SELECTION PERMITTED _____ M.D.

---

**ARIANA MEDICAL PLAZA**

Carlos R. Villalta, M.D.
Teresa Orozco, P.A.

204 N PALMVIEW Dr. SUITE A • PALMVIEW, TX 78572
PHONE (956) 584-3231 FAX (956) 584-2380

FOR: _Maria Martinez_ DATE _3-11-04_

ADDRESS ___

Vistaril 25 mg #30
Sig i po q hs.

LABEL _____
REFILL _____ TIMES _Crow_ M.D. _____ M.D.
☐ PRODUCT SELECTION PERMITTED    ☐ DISPENSE AS WRITTEN

PAGE 16

**Full Legal Name:** MARTINEZ JR. JOSE ESEQUIEL
**Student ID Number:** 6930J7    **SSN/State ID Number:** 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
**Date of Birth:** 05/19/1988    **Sex:** M    **Ethnicity:** HISPANIC
**Parent or Guardian Name:** MARTINEZ, JOSE E
**Current Address:** N GOODWIN COUNTRY HILL MISSION, TX 78574

**College Board Campus Code Number:** _____
**Graduation Program Type:** _____
**Date Printed:** 03/12/2004

**District Name:** LA JOYA ISD
**Name of School:** Juarez-Lincoln High School    **Phone No:** (956) 580-5900
**School Address:** 801 NORTH COYOTE DRIVE LA JOYA, TX 78560
**Rank** ___ **No in Class** ___ **Quartile** 0 **GPA**
**Date Graduated** _____
**Date of Certificate of Coursework Completion** _____

TAAS Mastery  Reading ___ Mathematics ___ Writing ___

Signature and Title of School Official: _(signature)_ Registrar

| COURSE CATEGORY | Abbreviated Course Name | Academic Year: 0203-'04 *1x Gr CDC 108912004 | | | | | | Academic Year: 0304-'10 *1x Gr CDC 108912004 | | | | | | Academic Year: *1x Gr | | | | | | Academic Year: *1x Gr | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 1st | 2nd | Elig. | | | | Abbreviated Course Name | 1st | 2nd | Elig. | | | Abbreviated Course Name | 1st | 2nd | Elig. | | | Abbreviated Course Name | 1st | 2nd | Elig. | | |
| | | Trm | Trm | Fnl | Cred | MoYr | | | Trm | Trm | Fnl | Cred | MoYr | | Trm | Trm | Fnl | Cred | | | Trm | Trm | Fnl | Cred |
| Language Arts | ENG 1 | 78 | 70 | 74 | 1.00 | | | ENG 2 | 78 | | | 0.50 | | | | | | | | | | | | | |
| Speech | | | | | | | | | | | | | | | | | | | | | | | | | |
| Mathematics | ALG 1 | 73 | 71 | 72 | 1.00 | | | GEOM | 70 | 70 | | 0.50 | | | | | | | | | | | | | |
| | | | | | | | | COMAPP | 70 | 70 | | 0.50 | | | | | | | | | | | | | |
| Science | IPC | 78 | 55 | 67 | 0.50 | BIO | | | 72 | | | 0.50 | | | | | | | | | | | | | |
| Social Studies | W GEO | 64 | 62 | 63 | 0.00 | W HIST | | | 57 | | | 0.00 | | | | | | | | | | | | | |
| | W GEO-NM R | 70 | | | 0.50 | | | | | | | | | | | | | | | | | | | | |
| Economics/Free Enterps | | | | | | | | | | | | | | | | | | | | | | | | | |
| Health | | | | | | | | | | | | | | | | | | | | | | | | | |
| P.E./Equivalent | PE 1A | 80 | | | 0.50 | | | | | | | | | | | | | | | | | | | | |
| | PE 1S | | 70 | | 0.50 | | | | | | | | | | | | | | | | | | | | |
| Other Languages | | | | | | | | | | | | | | | | | | | | | | | | | |
| Fine Arts | ART 1 | 70 | 87 | 79 | 1.00 | | | ART2DRAW | | 77 | | 0.50 | | | | | | | | | | | | | |
| Tech Appl | | | | | | | | | | | | | | | | | | | | | | | | | |
| Career/Tech Education | | | | | | | | | AIMS | L | 76 | | 0.00 | | | | | | | | | | | | |
| Other Electives | | | | | | | | | | | | | | | | | | | | | | | | | |
| Local Credit | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | Credits: Yr 5.00 Tot 5.00 | | | | | | | Credits: Yr 2.50 Tot 7.50 | | | | | | Credits: Yr 0.00 Tot 0.00 | | | | | | Credits: Yr 0.00 Tot 0.00 | | | | | |
| | | GPA: Yr 71.3846 Cum 71.3846 | | | | | | | GPA: Yr 71.4286 Cum 71.4286 | | | | | | GPA: Yr 0.0000 Cum 0.0000 | | | | | | GPA: Yr 0.0000 Cum 0.0000 | | | | | |
| Absences | | Sem 1 | Sem 2 | Total | | | | Absences | Sem 1 | Sem 2 | Total | | | Absences | Sem 1 | Sem 2 | Total | | | Absences | Sem 1 | Sem 2 | Total | | |
| | | 1 | 3 | 4 | | | | | 0 | 0 | 0 | | | | 0 | 0 | 0 | | | | 0 | 0 | 0 | | |

**Definition of Grades**

* No credit given due to excessive absences

Note in Abbreviated Course Name column, the space at right indicates: A (Tech Prep), C (Correspondence), D (Dual Credit, approved High School & College), E (Credit by Accel Exam), G (Gifted/Talented), H (Honors), I (International Baccalaureate), J (High School Course completed prior to Grade 9), K (Pre-international Baccalaureate), L (Local Credit), M (Magnet School), N (Night or Evening School), P (Advanced Placement), Q (Pre-Advanced Placement), R (Summer School), S (Modified Content), T (Credit by Exam), X (Innovative), Z (Course Taken by Distance Learning, including TV Instruction). Refer to Rules for appropriate use.

# CITY OF PALMVIEW

"Moving in the Right Direction"                    MAYOR

---

03/12/2004  09:06:00
DISTRICT ID: LJ

STUDENT PROFILE REPORT     496010

PROGRAM:  PAGE 1
STU-001-728
VERSION: A.02.023

SORTED BY: Name

**STUDENT: MARTINEZ, MANUEL**

## DEMOGRAPHIC

| Grade | Sex | Ethnic | Birthdate | Home Phone | Homeroom | Team ID | Advisor | Counselor | Dean | School | Field Trip |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 06 | M | H | 07/19/1991 | (956) 519-6335 F109 | | 22 | IBARRA, M. | | | 045 | RICHARDS |

## HOUSEHOLD

| Address Guardian Name | City/State/Zip Code | Relation Phone | Phone Cellular | Pager | Employer Code/Name |
|---|---|---|---|---|---|
| RR 21 BOX 413 | MISSION, TX 78574 | | | | |
| JOSE MARTINEZ | | HOH | (956) 519-6335 | | |
| MA.DE JESUS ESPINOZA | | SPOUSE | | | |

## ENROLLMENT

| Enrollment | Type | Begin Date/Reason | End Date/Reason | Teacher ID/Name |
|---|---|---|---|---|
| EN   Enroll | IN | 08/19/02 EO | 05/29/03 | |
| LS   LS FREE | LS | 08/19/02 EO | 05/29/03 | |
| TI 6   TI 6 | TI | 08/19/02 EO | 05/29/03 | |

## SCHEDULE

| Course/Subject ID | Tm | Pd | Days | Teacher Name | Beg Date | End Date | 01 | 02 | 03 | E1 | S1 | 04 | 05 | 06 | H2 | S2 | F |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| M260500 :04 MATH 6 M260500 | F | 01 | 12345 | IBARRA, M. | 08/19/02 | | 95 | 94 | 98 | | 96 | 81 | 92 | 94 | | 89 | 93 |
| M360500 :04 SCIENCE 6 M360500 | F | 02 | 12345 | IBARRA, M. | 08/19/02 | | 78 | 68 | 90 | | 79 | 67 | 71 | 80 | | 73 | 76 |
| M160500 :08 ELA 6 M160500 | F | 03 | 12345 | ESTRADA, C. | 08/19/02 | | 83 | 70 | 97 | | 83 | 86 | 85 | 87 | | 86 | 85 |
| M560500 :06 SOC.STU. 6 M560500 | F | 04 | 12345 | ESTRADA, C. | 08/19/02 | | 90 | 90 | 97 | | 92 | 83 | 83 | 93 | | 86 | 89 |
| M961100 :04 PE/HLTH 6 M961100 | F | 05 | 12345 | ROBLES, S. | 08/19/02 | | 100 | 93 | 100 | | 98 | 100 | 100 | 90 | | 97 | 98 |
| M964000 :03 ART 6 M664000 | S1 | 06 | 12345 | SALAS, V. | 08/19/02 | | 95 | 88 | 90 | | 91 | | | | | | |
| M664500 :04 DANCE 6 M664500 | S2 | 06 | 12345 | ROMO, A. | 01/09/03 | | | | | | | 80 | 80 | 80 | | 80 | |

## ATTENDANCE

| Absence Date | Absence Code | | Course | Period | Teacher |
|---|---|---|---|---|---|
| 10/21/02 | I | ILL | | 1 | |
| 10/21/02 | I | ILL | | 2 | |



```
                                                                    PAGE       3
                                                                    PROGRAM: STU-001-728
                                                                    VERSION: A.02.023
```

# STUDENT PROFILE REPORT

```
03/12/2004   09:05:00
DISTRICT ID: LJ   LA JOYA
```

| Date | Code | Description | Period |
|------|------|-------------|--------|
| 12/04/03 | EX | EXCUSED | 1 |
| 12/04/03 | EX | EXCUSED | 2 |
| 12/04/03 | EX | EXCUSED | 3 |
| 12/04/03 | EX | EXCUSED | 4 |
| 12/04/03 | EX | EXCUSED | 5 |
| 12/18/03 | EX | EXCUSED | 6 |
| 03/01/04 | T | TARDY | 6 |
| 03/02/04 | T | TARDY | 6 |
| 03/02/04 | T | TARDY | 4 |
| 03/10/04 | EX | EXCUSED | 1 |
| 03/10/04 | EX | EXCUSED | 2 |
| 03/10/04 | EX | EXCUSED | 3 |
| 03/10/04 | EX | EXCUSED | 4 |
| 03/11/04 | EX | EXCUSED | 5 |
| 03/11/04 | EX | EXCUSED | 6 |
| 03/11/04 | EX | EXCUSED | 1 |
| 03/11/04 | EX | EXCUSED | 2 |
| 03/11/04 | EX | EXCUSED | 3 |
| 03/12/04 | EX | EXCUSED | 4 |
| 03/12/04 | EX | EXCUSED | 5 |
| 03/12/04 | EX | EXCUSED | 1 |
| 03/12/04 | EX | EXCUSED | 2 |
| 03/12/04 | EX | EXCUSED | 3 |
| 03/12/04 | EX | EXCUSED | 6 |

```
Absence Type:   EX   T
Period Total:   16   12
```

## DISCIPLINE

| Referral ID / Comments | Ref Date | Inf Date | Actn Date | Inf/Loctn | Act/Loctn | Schd/Acti | Incd | Ream | Originator | Administrator |
|---|---|---|---|---|---|---|---|---|---|---|
| 0000000957685 DISRUPTIVE BEHAVIOR IN THE CAFETERIA, | 01/28/04 | 01/28/04 | / / | LO CAFE | L06 1089 | 2 | | | GARZA | GARZA |
| 000000011313 FIGHTING IN THE BUS. | 03/09/04 | 03/09/04 | / / | 21 BUS | 05 HOME | 3 | | | BUS-DRIVER | FLORES |

## HISTORICAL GRADES

| State ID / Subject Name | Type Year | Grade | 01 | 02 | 03 | 04 | S1 | B1 | 05 | 06 | E2 | S2 | V | Credit |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MATH 6 | 02/03 | 06 | 95 | 94 | 98 | 81 | 96 | | 92 | 94 | | 89 | 93 | 0.000 |
| SCI 6 | 02/03 | 06 | 78 | 68 | 90 | 67 | 79 | | 71 | 80 | | 73 | 76 | 0.000 |
| ELA 6 | 02/03 | 06 | 83 | 70 | 97 | 86 | 83 | | 85 | 87 | | 86 | 85 | 0.000 |
| SOC.ST.6 | 02/03 | 06 | 90 | 90 | 97 | 83 | 92 | | 83 | 93 | | 86 | 89 | 0.000 |
| PE/HLTH 6 | 02/03 | 06 | 100 | 93 | 100 | 100 | 98 | | 100 | 90 | | 97 | 98 | 0.000 |
| ART 6 | 02/03 | 06 | 95 | 88 | 90 | 91 | 91 | | 90 | | | | | 0.000 |
| DANCE 6 | 02/03 | 06 | | | | 80 | | | 80 | 80 | | 80 | | 0.000 |

```
                                                    Total Credits:   0.000
```

```
03/12/2004  09:05:00
DISTRICT ID: LJ
```

## STUDENT PROFILE REPORT

```
PAGE    1
PROGRAM: STU-001-728
VERSION: A.02.023

SORTED BY: Name
```

STUDENT: MARTINEZ, MANUEL                    496010

### DEMOGRAPHIC

| Grade | Sex | Ethnic | Birthdate | Home Phone | Homeroom | Team ID | Advisor | Counselor | Dean | School | Field Trip |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 07 | M | H | 07/19/1991 | (956) 519-6335 E110 | | 73 | SAENZ, M. | | | 045 RICHARDS | |

### Address

| Guardian Name | City/State/Zip Code | Relation Phone | Phone Cellular | Pager | Employer Code/Name |
|---|---|---|---|---|---|
| RR 21 BOX 413 | | | | | |
| JOSE MARTINEZ | MISSION, TX 78574 | HOH | | | |
| MA.DE JESUS ESPINOZA | | SPOUSE | | | |

#### HOUSEHOLD .

Phone Cellular (956) 519-6335   Pager

### ENROLLMENT

| Enrollment | Type | Begin Date/Reason | End Date/Reason | Teacher ID/Name |
|---|---|---|---|---|
| CTV0 | VO | 08/18/03 | 11/07/03 | |
| EN | Enroll | 08/18/03 BO | | |
| LS P | LS FREE | 08/18/03 BO | | |
| TI 6 | TI 6 | 08/18/03 BO | | |

### SCHEDULE

| Course/Subject ID | Tm | Pd | Days | Teacher Name | Beg Date | End Date | 01 | 02 | 03 | E1 | S1 | 04 | 05 | 06 | E2 | S2 | F |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| M270500 :05 MATH 7 M270500 | F | 01 | 12345 | SAENZ, M. | 08/18/03 | 01/08/04 | 87 | 83 | 83 | | 84 | 79 | | | | | |
| M370500 :04 SCIENCE 7 M370500 | F | 01 | 12345 | GARZA, G. | 01/09/04 | | 87 | 60 | 83 | | 77 | 77 | | | | | |
| M370500 :09 SCIENCE 7 M370500 | F | 02 | 12345 | GARZA, G. | 08/18/03 | 01/08/04 | 87 | 60 | 83 | | 77 | 77 | | | | | |
| M170500 :07 ELA 7 M170500 | F | 02 | 12345 | RODRIGUEZ, G. | 01/09/04 | | 74 | 70 | 74 | | 73 | 76 | | | | | |
| M971500 :04 ATH.BOYS 7 M971500 | F | 03 | 12345 | RODRIGUEZ, V. | 08/18/03 | 08/19/03 | | | 100 | | | 100 | | | | | |
| M971500 :04 ATH.BOYS 7 M971500 | F | 03 S1 | 12345 | RODRIGUEZ, V. | 11/10/03 | | | | 100 | | | 100 | | | | | |
| M872000 :03 CAR.INV. 7 M872000 | | S1 03 | 12345 | DAVILA, M. | 08/20/03 | 11/09/03 | 82 | 87 | | | | | | | | | |
| M971100 :01 PE/HLTH 7 M971100 | F | 04 | 12345 | TREVINO, D. | 08/20/03 | 01/09/04 | 98 | 98 | 95 | | 97 | | | | | | |
| M072000 :08 EMT 7 M072000 | F | 04 | 12345 | SAENZ, M. | 01/12/04 | | | | | | | 89 | | | | | |
| M872000 :01 CAR.INV. 7 M872000 | F | S1 04 | 12345 | DAVILA, M. | 08/18/03 | 08/19/03 | 82 | 87 | | | | | | | | | |

```
03/12/2004  09:06:00                          STUDENT PROFILE REPORT                          PAGE      2
DISTRICT ID: LJ  LA JOYA                                                          PROGRAM: STU-001-72B
                                                                                  VERSION: A.02.023

10/21/02  I  ILL            3
10/21/02  I  ILL            4
10/21/02  I  ILL            5
10/21/02  I  ILL            6
01/20/03  U  UNEXCUS AB     3
01/20/03  U  UNEXCUS AB     4
01/21/03  U  UNEXCUS AB     3
01/21/03  U  UNEXCUS AB     4
02/27/03  U  UNEXCUS AB     1
02/27/03  U  UNEXCUS AB     2
04/08/03  EX EXCUSED        1
04/08/03  EX EXCUSED        2
04/08/03  EX EXCUSED        3
04/08/03  EX EXCUSED        4
04/08/03  EX EXCUSED        5
04/08/03  EX EXCUSED        6

Absence Type:    I   EX  U
Period Total:    6   6   6
```

```
                                      DISCIPLINE

Referral ID   Ref Date   Infr Date   Actn Date   Inf/Loctn   Act/Loctn   Schd/Acti  Incd  Reasn  Originator   Administrator
Comments

0000000076067  02/21/03  02/21/03   02/21/03    LO  ONCAMP  LC  1089             1                MORALES      MORALES
  INSUBORDITATION.
0000000080122  04/04/03  04/04/03   04/04/03    LP  HALLWA  L05  HOME            1                GARZA        GARZA
  HITTING OTHERS ON THE BEHIND.
```

```
                                      HISTORICAL GRADES

State ID   Subject Name  Type  Year   Grade   01   02   03   S1   B1   04   05   06   B2   S2   F   Credit

           SCI. 7              03/04  07      87   60   83   77        77                            0.000
           ELA. 7              03/04  07      74   70   74   73        76                            0.000
           ATH.BOYS 7          03/04  07               100       100                                0.000
           CAR.INV. 7          03/04  07                                                            0.000
           PE/HLTH 7           03/04  07      82   87   95   97                                     0.000
           ELE.MAST.7          03/04  07      98   98        89   89                                0.000
           MATH 7              03/04  07      87   83   83   84        79                            0.000
           TX. HIST-7          03/04  07      84   70   83   79        78                            0.000

                                                                            Total Credits:          0.000
```

```
03/12/2004  09:05:00                        STUDENT PROFILE REPORT                              PAGE   2
DISTRICT ID, LJ  LA JOYA                                                                        PROGRAM: STU-001-728
                                                                                                VERSION: A.02.023
```

```
M571000 :07 TX HIST 7   F  05 12345 VILLARREAL, M.   08/18/03 01/08/04  84 70 83   79 78
M571000
M270500 :07 MATH 7      F  05 12345 SAENZ, M.        01/09/04           87 83 83   84 79
M270500
M170500 :12 ELA 7       F  06 12345 RODRIGUEZ, G.    08/18/03 01/08/04  74 70 74   73 76
M170500
M571000 :08 TX HIST 7   F  06 12345 VILLARREAL, M.   01/09/04           84 70 83   79 78
M571000
```

## COURSE REQUEST

| Request ID | Description | Subject ID | Schedule Status | Schedule Category | Priority |
|---|---|---|---|---|---|
| M072000 08 | EMT 7 | M072000 | S | | |
| M170500 07 | ELA 7 | M170500 | S | | |
| M170500 12 | ELA 7 | M170500 | S | | |
| M270500 05 | MATH 7 | M270500 | S | | |
| M270500 07 | MATH 7 | M270500 | S | | |
| M370500 04 | SCIENCE 7 | M370500 | S | | |
| M370500 09 | SCIENCE 7 | M370500 | S | | |
| M571000 07 | TX HIST 7 | M571000 | S | | |
| M571000 08 | TX HIST 7 | M571000 | S | | |
| M872000 01 | CAR.INV. 7 | M872000 | S | | |
| M872000 03 | CAR.INV. 7 | M872000 | S | | |
| M873000 04 | KEYBRDG 7 | M873000 | S | | |
| M971100 01 | PE/HLTH 7 | M971100 | S | | |
| M971500 04 | ATH.BOYS 7 | M971500 | S | | |
| M971500 04 | ATH.BOYS 7 | M971500 | S | | |

## ATTENDANCE

| Absence Date | Absence Code | Course | Period | Teacher |
|---|---|---|---|---|
| 09/16/03 | T  TARDY | | 6 | |
| 09/23/03 | EX EXCUSED | | 1 | |
| 09/23/03 | EX EXCUSED | | 2 | |
| 09/23/03 | EX EXCUSED | | 3 | |
| 09/23/03 | EX EXCUSED | | 4 | |
| 09/23/03 | EX EXCUSED | | 5 | |
| 09/23/03 | EX EXCUSED | | 6 | |
| 09/23/03 | EX EXCUSED | | 1 | |
| 09/30/03 | EX EXCUSED | | 2 | |
| 09/30/03 | EX EXCUSED | | 3 | |
| 09/30/03 | EX EXCUSED | | 4 | |
| 09/30/03 | EX EXCUSED | | 5 | |
| 09/30/03 | EX EXCUSED | | 6 | |
| 10/06/03 | T  TARDY | | 3 | |
| 10/06/03 | T  TARDY | | 6 | |
| 10/21/03 | T  TARDY | | 3 | |
| 10/22/03 | T  TARDY | | 3 | |
| 10/23/03 | T  TARDY | | 2 | |
| 10/28/03 | T  TARDY | | 5 | |
| 10/28/03 | T  TARDY | | 3 | |
| 11/03/03 | T  TARDY | | 6 | |

This is to certify that this is a true and correct copy of the Birth certificate of JOSE MANUEL MARTINEZ as appears in the Vital Statistics records of the City of McAllen, Hidalgo County, Texas. Given under my hand and seal of office this date SEP 4 1975

JANIE MADERO LOCAL REGISTRAR

By: _Janie Madero_ Deputy

TEXAS DEPARTMENT OF HEALTH — BUREAU OF VITAL STATISTICS

CERTIFICATE OF BIRTH

STATE OF TEXAS

1. PLACE OF BIRTH — COUNTY: Hidalgo
CITY OR TOWN: McAllen
PLACE OF BIRTH: McAllen Maternity Clinic

2. USUAL RESIDENCE OF MOTHER — STATE: Tamaulipas COUNTY: Mexico Country: Mexico
CITY OR TOWN: Diaz Ordaz
STREET ADDRESS: Calle Luis Cortines S/n.

CHILD: Jose Manuel Martinez
DATE OF BIRTH: 8/19/75
SEX: Male

COLOR OR RACE: White

FATHER: ...Martinez
MOTHER: ...
OCCUPATION: Agriculture — laborer

REGISTRAR'S FILE NO. 5125P
DATE REC'D BY LOCAL REGISTRAR: AUG 27 1975

REGISTRAR: JANIE MADERO McAllen, Texas

DATE SIGNED: 8/20/75



**CITY OF McALLEN**
McALLEN TEXAS

BUREAU OF VITAL STATISTICS

CERT. NO. 3342 Vol. 12H

NAME   Manuel Martinez
DATE OF BIRTH  7/19/91          SEX   Male
PLACE OF BIRTH  McAllen, Texas
DATE FILED   8/28/91          DATE ISSUED   5/16/92

This is a true certification of name and birth facts as recorded in this office

65790                    LOCAL REGISTRAR/DEPUTY

CERTIFICATION OF BIRTH



BIRTH REGISTRATION CARD

BUREAU OF VITAL STATISTICS

NAME   JOSE
DATE OF BIRTH
PLACE OF BIRTH
DATE FILED   7-1-88          DATE ISSUED   7-5-88
THIS IS A TRUE CERTIFICATION OF THE NAME AND BIRTH FACTS AS

REGISTRAR  CITY OF MISSION, Ramona G. Martinez
BY                                            DEPUTY

| Parents Name | Birth Place |
|---|---|
| Jose Esequiel Martinez | * Mexico |
| Maria De Jesus Espinoza | * Mexico |





The STATE OF TEXAS    № 11253

# Marriage License

## COUNTY OF HIDALGO

To any Regularly Licensed or Ordained Minister of the Gospel, Jewish Rabbi, Judge of the District or County Court or any Justice of Peace in the State of Texas, Greeting:

### YOU ARE HEREBY AUTHORIZED TO SOLEMNIZE THE

### RITES OF MATRIMONY

Between Mr. JOSE EZEQUIEL MARTINEZ

and Miss. MARIA DE JESUS ESPINOZA GONZALEZ

and make due return to the Clerk of the County Court of said county within sixty days thereafter, certifying your action under this license

Witness my official signature and seal of office at

Edinburg, Texas the 3rd day of December 19__

J. EDGAR RUIZ    Clerk County Court

By Rosie Villarreal    Deputy
  Rosie Villarreal

Hidalgo County, Texas

I, Judge Juan Rosel hereby certify that

on the 3rd day of December 198_

I united in Marriage the parties above named

Witness my hand this 3 day of December 19__

Justice of the Peace

Returned and filed for record the 10th. day of January 19 86

and recorded the 10th. day of Jan. 19 86 in Book 117 Page 166

By Rosie Mendoza  Deputy    J. EDGAR RUIZ
  Rosie Mendoza    County Clerk

# Marriage License

11253

MISS. MARIA DE JESUS ESPINOZA GONZALEZ
AND
MR. JOSE EZEQUIEL MARTINEZ

Issued the 3rd day of December 19 85

EDGAR RUIZ - Civil County Court
By Rosie Villarreal Deputy

RETURNED AND FILED FOR

day of 10th January 19 86

J. Edgar Ruiz - Civil County Court
By Rosie Mendoza Deputy

10th day of Jan. 19 86

Marriage Record Book 117 Page 760

" In accordance with SECTION 1, Subsection (a), Section 1.81 Family Code, effective April 11, 1985 This marriage license will expire at the end of the 30th day following the date of issuance."

## PERSONS AUTHORIZED TO CONDUCT CEREMONY

Section 1.83, Family Code  The following persons are authorized to conduct marriage ceremonies.

1. Licensed or ordained Christian Ministers and Priests;
2. Jewish Rabbis
3. Persons who are Officers of Religious Organizations and who are duly authorized by the organization to conduct marriage ceremonies, and
4. Justices of the Supreme Court, Judges of the Court of Criminal Appeals, Justices of the Courts of Appeals, Judges of the District, County, and Probate Courts, Judges of the County Courts at Law, Courts of Domestic Relations and Juvenile Courts, Retired Justices and Judges of such Courts, Justices of the Peace, Retired Justices of the Peace, and Judges and Magistrates of the Federal Courts of this state;

MR. & MRS. JOSE EZEQUIEL MARTINEZ
Rt. 3, Box 291
Mission, Tx.          78572

Form No. CC-B-03-31-02-B (R-8-29-83)

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BOARD OF IMMIGRATION APPEALS
FALLS CHURCH, VIRGINIA

| | |
|---|---|
| In the matter of: ) | **FILE NO.:  41-272-217** |
| ) | **In Removal Proceedings** |
| **JOSE  MARTINEZ-MARTINEZ**    ) | |
| ) | |
| Respondent.    ) | |
| ——————————————— ) | |

## **AFFIDAVIT**

I,Jose Ezequiel Martinez-Martinez hereby, under oath, state as follows:

1.     My full name is Jose Ezequiel Martinz-Martinez.  I was born on May 15, 1953 at Enrancho Los Norias, Nuevo Leon, Mexico.

2.     I entered the United States as a Lawful Permanent Resident on April 23rd , 1987 at Hidalgo, Texas and have resided there ever since.

3.     Presently I reside at Route 21, Box 413, Lot 42, Country Hill, Mission, Texas, which is my homestead. I reside there with my wife and two children. Initially, my wife and I bought this home for $14,000.00 in 1987. We have made substantial improvements to my home. Its present market value will be $60, 000.00. My monthly mortgage payment on the home is $346.00.

1

4.  I am married to Maria De Jesus Espinoza Martinez on December 3, 1985.

5.  There are two children of the marriage:

    1).  Jose Ezequiel Martinez Jr. born on May 19th, 1988 at Mission, Texas.

    2).  Manue Martinez born on July 19, 1991 at McAllen, Texas.

6.  There is one child of my former marriage, his name is

    Jose Manuel, aged 22 years old.

7.  My mother, Felicitas Martinez lived in Mexico. She passed away in 1958 due to cancer.

8.  My father, Serafin Martinez passed away in 1989 as a result of automobile accident.

9.  Since my parents death, I have not been in touch with my one brother and two-half brothers. I have not communicated with them. I do not know presently where they live.

10.  I have no other close or distant relatives in Mexico.

11.  Regarding my conviction on June 7th 1995 in the United States District Court of Southern District of Texas for the offense of possession with intent to distribute approximately 250 kilograms of marijuana, the circumstances leading to this offense all as follows:

2

In May 1995 Martin Gutierrez who was confidant informer, a good friend of mine, asked me if I would help to transport marihuana from 5-Mmile Line in Mission Texas. I agreed to help and I would receive $2000.00. We went to Molinas Grocery store, located on 5- Mile line in Mission...confidant informer drove the vehicle to a ranch located on Mayberry Road in Mission. I was arrested there. I was fully aware of this. I am ashamed of what I did. I apologize to U.S. government and people I brought misery to my wife, my sons and relative. I ask for forgiveness.

12. I worked as a heavy equipment operator, in 1991 I was injured while operating heavy equipment. I had to undergo neck surgery as a resulted of a dislocated disc. In 1994, my orthopaedic surgeon advised me that another disc was pinching a nerve, which resulted in my limb going numb.

13. Two years back I had to undergo heart surgery and now I have to live on a regimen of a strict diet.

14. My monthly expenses for prescription medicine is $250.00.

15. My wife Maria De Jesus suffers from migraine headache and manic depression since her childhood. Her depression triggers periodically with no regularity. When she is undergoing

3

depression, she becomes very distraught, cries for a prolonged period and does not do any household work. Many times she has attempted suicide and because of this  someone always has to be present with her. My wife spends about $250.00 for her prescription drugs.

16.    I receive the following incomes:

Social Security Income :        $747.00

Disability benefits:              $366.00

                    Total:        $1113.00

17.    My two boys also work part time to supplement our income. They only work weekends to buy their school supplies and pocket expenses.

18.    My wife works as a nurses's aid, her net monthly salary is $750.00.

19.    My son Jose Manuel is in Grade 10 and attends Juarez Lincoln School, La Hoya, Texas. He is an A and B student. He wants to become first a paramedic and then a registered nurse.

20.    My son Mannel Martinez attends Richard School, La Hoya, Texas. He is in 7th grade, he is an A student.

DATED this 16th day of _____March_____, 2004.

_____
Jose Esequiel Martinez-Martinez

4

In the State of Texas
County of : Hidalgo
Sworn and subscribed before me this 17th Day of March of 2004 in Mission, Texas by Maria De Jesus Martinez, who produced a Texas Drivers License. I further give faith of that because Maria De Jesus Martinez does not read or write English, I have personally read the document to her in Spanish and she is completely knowledgeable of all of its contents.

_Maria G. Alanis_

Notary public Signature

Sworn and subscribed before this 17th day of March, 2004, by _Jose Martinez_, who produced TX Driver License as identification.

_Maria G. Alanis_
Notary Public Signature

_Maria G. Alanis_
Printed Notary Public Name
My Commission Expires: 5-10-05

(Notary Seal)

MARIA G. ALANIS
MY COMMISSION EXPIRES
May 10, 2005

5

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BOARD OF IMMIGRATION APPEALS
FALLS CHURCH, VIRGINIA

In The Matter of :                                )
                                                  )    **FILE No.: A41-272-217**
**JOSE  MARTINEZ-MARTINEZ**                        )    <u>**In Removal Proceedings**</u>
                                                  )
    Respondent.                  )
_____           )

## <u>AFFIDAVIT</u>

I, Maria De Jesus Espinoza, hereby state under oath as follows :

1.  My full name is MARIA DE JESUS MARTINEZ. I am the wife of the Respondent Jose Ezequiel Martinez-Martinez. I am 63 years old.

2.  I married my husband on December 3,1985 in Mexico.

3.  There are two children of the marriage, to wit:

    (A) Jose Ezequiel Martinez born on May 19,1988 at Mission, Texas.

    (B) Manuel Martinez born on July 19,1991 at McAllen, Texas.

4.  My son, Jose Ezequiel Martinez, is in grade 10.  He attends Juarez Lincoln School in La Hoya ,Texas. He is an A and B student.  He initially wants to become a paramedic and then a registered nurse.

    My other son, Manuel Martinez attends Richard school in La Hoya ,Texas, and he is a straight A student.

5.  My husband and I own a home located at route 21,Box 413,Lot 42, Country Hill.  We bought this home in 1987 for $14,000 and we have spent $40,000 improving the home. The present value of our home is $60,000. Our monthly mortgage payment is $346.00.

6.    I work as a nurse's aid.  My net monthly salary is $750.00. I suffer from acute migraine headaches and manic depression and because of this problem, I cannot work through out the year.

7.    My husband suffers from back problems and had a surgery to remedy his cervical displacement He has also had heart surgery. He spends almost $250.00 a month in prescription drugs.

8.    I also spend approximately $250.00 a month for prescription medicine for my migraine headache and depression problems.

9.    If my husband is deported, his income will not be available to maintain our household, as he will not be able to get government assistance in Mexico.

10.    My husband has been a good husband and a good father. He has been a law abiding citizen. He has always been employed and has supported me and the children.

11.    Unfortunately he got involved in the incident involving the 250 kilograms of marijuana. He acknowledges that he has made this terrible mistake and for this, he is ashamed of what he did.

12.    If my husband is deported, our family will break up. I will not be able to make payments on my home mortgage and it will go in foreclosure.

13.    Our two sons' education will suffer seriously. They are now teenagers and they need both parents for their proper upbringing.

14.    The children love their father.  He has always been there when they needed him.

15.    My migraine headaches and  depression have become worse when I suffer from severe anxiety. My husband's deportation would cause great suffering to me physically and mentally.

AFFIANT:    Maria De Jesus Martinez

STATE OF TEXAS )
COUNTY HIDALGO )

Sworn and subscribed before this 17th day of March_____, 2004___,
by

    **MARIA DE JESUS MARTINEZ** who is known to me as follows:
    ☐ personally known
    ☑ or who produced _TX Driver License_____ as identification.

                     *Maria G. Alanis*_____
                     Notary Public Signature

(Notary Seal)

                     *Maria G. Alanis*_____
                     Printed Notary Public Name
                     My Commission Expires: 5-10-05

> MARIA G. ALANIS
> MY COMMISSION EXPIRES
> May 10, 2005

In the State of Texas

County of : Hidalgo

Sworn and subscribed before me this 17th Day of March_____ of 2004 in
Mission, Texas by Maria De Jesus Martinez, who produced a Texas Drivers
License. I further give faith of that because Maria De Jesus Martinez does not
read or write English, I have personally read the document to her in Spanish
and she is completely knowledgeable of all of its contents.

                     *Maria G. Alanis*

                     Notary public Signature



# CITY OF PALMVIEW

*"Moving in the Right Direction"*

MAYOR
Jorge G. Garcia

ALDERMEN
Graciela S. Flores
Sara Garcia
Noe Ruben Muñoz
Gerardo Perez
Fernando Esquivel

**Date: MARCH 12, 2004**

**To Whom It May Concern:**

**MARTINEZ, JOSE EZEQUIEL**
**DOB: 05-15-1983**
**D.L.# 01338072**

A records check was conducted for the person indicated above. The above person shows no pending cases or citations with the City of Palmview. This does not include any other cities or counties. If you have any question you can call me at (956) 581-7411.

Bertha De La O, Municipal Court Clerk

---

Route 11 Box 1000  -  Palmview, Texas 78572  -  (956) 581-7411  -  Fax (956) 581-7494

IN THE UNITED STATES DISTRICT
FOR THE SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| vs. | § PRESENTENCE INVESTIGATION REPORT |
| | § |
| JOSE ESEQUIEL MARTINEZ | §    Docket No. M-95-102-01 |

---

**Prepared For:**     Honorable Ricardo H. Hinojosa
                      U.S. District Judge

RECEIVED

JAN 1 9 199...

**Prepared By:**      Minerva A. Munoz
                      U.S. Probation Officer
                      McAllen, Texas
                      (210) 682-4302, ext. 254

**Assistant U.S. Attorney**            **Defense Counsel**
Terry L. Leonard                       Thomas G. Lindenmuth, AFPD
Texas Commerce Center #305             Texas Commerce Center #405
McAllen, Texas  78501                  McAllen, Texas  78501
(210) 630-3173                         (210) 630-2995

**Sentence Date:**     September 27, 1995, @ 9:30 A.M.

**Offense:**    Count 2:    Possession, with intent to distribute, more than 100 kilograms, that is, approximately 238 kilograms (525 pounds) of marihuana. [21 U.S.C. § 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2] - 40 yrs. w/5-yr. mandatory minimum and/or a $2,000,000 fine, at least 4 yrs. TSR, and a $50 mandatory special assessment fee.

**Release Status:**    Detained from 06/07/95 to 06/20/95 (approximately 14 days in custody); rel'd on $100,000 unsecured bond.

**Detainers:**    None

**Codefendants:**    None

**Related Cases:**    None

**Date Report Prepared:** August 23, 1995          **Date Report Revised:**

## Identifying Data:

| | |
|---|---|
| Date of Birth: | 05/15/53 |
| Age: | 42 |
| Race: | White/Hispanic |
| Sex: | Male |
| | |
| SS No: | 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 |
| FBI No: | Pending |
| USM No: | 68323-079 |
| U.S. INS No: | A41 272 217 |
| | |
| Education: | None |
| Dependents: | 3 |
| Citizenship: | Mexico (resident alien) |
| | |
| Legal Address: | Route 21, Box 413 |
| | Mission, Texas  78572 |
| | |
| Aliases: | Jose Martinez |
| | FNU Canales |

## PART A.  THE OFFENSE

### Charges and Conviction(s)

1.   On June 20, 1995, a two-count Indictment was filed in the Southern District of Texas, McAllen Division, charging Jose Esequiel Martinez (herein referred to as Jose Martinez) as follows:

2.   **Count 1:**  Conspiracy to possess, with intent to distribute, more than 100 kilograms of marihuana, in violation of 21 U.S.C. § 846, 841(a)(1), and 841(b)(1)(B).

3.   **Count 2:**  Possession, with intent to distribute, more than 100 kilograms, that is, approximately 238 kilograms (525 pounds) of marihuana, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2.

4.   On July 28, 1995, Mr. Martinez, with counsel, appeared before the Honorable Ricardo H. Hinojosa, U.S. District Judge, McAllen, Texas, and entered a plea of guilty to Count 2 of the two-count Indictment.  Said plea was entered pursuant to a written Rule 11(e)(1)(A) and (B) plea agreement, which stipulates that in exchange for the defendant's plea of guilty to Count 2, the Government will ask the Court to dismiss Count 1 of the Indictment at time of sentencing, and recommends that the defendant be sentenced at the low end of the guideline imprisonment range to which he may fall.  Upon acceptance of the plea, the Court ordered the preparation of a presentence investigation report and scheduled sentencing for September 27, 1995, at 9:30 A.M.

5.   According to U.S. Pretrial Services Officer Rudy Villarreal, Mr. Martinez' overall adjustment while under pretrial supervision has been satisfactory.

### The Offense Conduct

6.   According to the Mission, Texas, Police Department and the Drug Enforcement Administration (DEA), on June 4, 1995, Investigator Larry Lopez of the Mission Police Department received a telephone call from a confidential informant (CI) regarding two individuals who needed a tractor/trailer to transport 2,000 pounds of marihuana to Chicago, Illinois.  The CI identified the two individuals as Juan LNU and Pepe LNU (later identified as Jose Martinez).

7.   That same morning, the CI contacted Investigator Lopez and advised him that Juan LNU and Jose Martinez wanted to meet with Investigator Lopez (posing in an undercover capacity) to discuss the location where the marihuana and tractor/trailer were to be dropped off.

3

8. That afternoon, the CI made contact with Investigator Lopez and advised him that Juan LNU and Mr. Martinez had told the CI that he (CI) was in charge of getting everything ready. At that time, Investigator Lopez and Sergeant Jose A. Garcia took the CI to a ranch north of Mission where the tractor/trailer was to be loaded.

9. On June 7, 1995, after a couple of telephone calls, it was determined that Mr. Martinez was enroute to pick up the CI at his (CI's) residence in order to proceed to the ranch located north of Mission to deliver the marihuana. Surveillance units observed a pickup truck arrive at the CI's residence and then proceed to the ranch. Shortly thereafter, Investigator Lopez arrived at the ranch, and at that time Mr. Martinez asked Investigator Lopez where the tractor/trailer was located. Investigator Lopez answered that it was parked near a store and that he was on his way to go pick it up. Mr. Martinez asked Investigator Lopez where he (defendant) could off-load the marihuana because he had to return the pickup truck. At that time, the CI and Mr. Martinez began to unsnap the black tarp off the pickup truck, and Investigator Lopez observed that the bed of the pickup truck was full of bundles of marihuana. Shortly thereafter, Investigator Lopez proceeded to pick up the tractor/trailer. Investigator Lopez gave the pre-determined arrest signal, and Mr. Martinez was placed under arrest. Approximately 56 bundles of marihuana, wrapped in plastic cellophane, were seized from the pickup truck. This resulted in a total gross weight of 525.5 pounds (238 kilograms).

10. According to DEA Special Agent (SA) Denise Stone, Mr. Martinez advised her that the remainder of the marihuana was at another location and that he was willing to cooperate with the law-enforcement authorities in an effort to seize the additional marihuana. However, SA Stone believes that the defendant lied as to the location where the remainder of the marihuana was located, and that the defendant, in fact, directed her to the wrong location so that the other individuals involved in this conspiracy would not be apprehended. SA Stone believes that the defendant could have possibly produced an additional amount of marihuana, but she does not believe that he could have actually produced the 2,000 pounds of marihuana which were originally negotiated for.

Victim Impact

11. There are no identifiable victims of the offense.

Adjustment for Obstruction of Justice

12. There is no indication that the defendant impeded or obstructed the administration of justice.

4

Adjustment for Acceptance of Responsibility

13.    On August 1, 1995, Mr. Martinez was interviewed at the U.S. Probation Office, McAllen, Texas. During that interview, Mr. Martinez advised this officer that in or about the latter part of May 1995, the defendant was approached by Martin Gutierrez (later identified as the CI), a good friend of his, who asked him if he would help transport marihuana from 5-Mile Line to 2½-Mile Line in Mission, Texas. Mr. Martinez agreed to help his friend, and at that time, Mr. Martinez was advised that he would receive $2,000 for his efforts.

14.    On June 7, 1995, Mr. Gutierrez telephonically contacted Mr. Martinez and asked him to pick him (Gutierrez) up in order to go get the marihuana. Mr. Martinez claims he picked up Mr. Gutierrez at his residence and then traveled to Molina's Grocery Store, located on 5-Mile Line in Mission. Upon their arrival at the store, an unidentified individual handed Mr. Gutierrez a set of keys to the load vehicle. The load vehicle was identified as a pickup truck with Mexican license plates. Mr. Gutierrez drove the pickup truck to his residence and then subsequently drove the vehicle to a ranch located on Mayberry Road in Mission. Upon their arrival at the ranch, a black Mustang arrived, and Mr. Gutierrez spoke to the individual driving said vehicle. The defendant indicates that shortly thereafter, he was placed under arrest. Mr. Martinez claims he was fully aware that he was committing a crime and that he did it out of necessity due to his medical condition.

Offense Level Computations

15.    The 1994 edition of the Guideline Manual has been used in this case.

Count 2 - Possession, with intent to distribute, more than 100 kilograms, that is, approximately 238 kilograms (525 pounds) of marihuana.

16.    Base Offense Level: The guideline for 21 U.S.C. § 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2 is found in U.S.S.G. § 2D1.1(a)(3), which is governed by the Drug Quantity Table. In this case, it was initially negotiated that the undercover officer would be transporting 2,000 pounds of marihuana to Chicago, Illinois. However, the defendant actually delivered 525 pounds (238 kilograms) of marihuana. According to DEA SA Denise Stone, she does not believe that Mr. Martinez could have produced all 2,000 pounds of marihuana. She believes that he possibly could have produced an additional amount of marihuana, which he attempted to have delivered, however, to no avail. Pursuant to U.S.S.G. § 1B1.3, Relevant Conduct, Mr. Martinez will be held accountable for 525.5 pounds (238 kilograms) of marihuana, which he actually delivered. According to the Drug

5

Quantity Table, at least 100 kilograms, but less than 400 kilograms of marihuana result in a base offense level of 26.    <u>26</u>

17.    **Specific Offense Characteristics:**  None.    <u>0</u>

18.    **Victim Related Adjustments:**  None.    <u>0</u>

19.    **Adjustment for Role in the Offense:**  In view of the fact that this is a single defendant case, no role adjustment is made pursuant to U.S.S.G. § 3B1.4.    <u>0</u>

20.    **Adjustment for Obstruction of Justice:**  None.    <u>0</u>

21.    **Adjusted Offense Level (Subtotal):**    <u>26</u>

22.    **Chapter Four Enhancements:**  None.    <u>0</u>

23.    **Adjustment for Acceptance of Responsibility:**  Mr. Martinez readily accepts responsibility for his involvement and participation in the instant offense; however, he does attempt to minimize his role.  Pursuant to U.S.S.G. § 3E1.1(a), a two-level reduction appears warranted.    <u>-2</u>

24.    In addition, pursuant to U.S.S.G. § 3E1.1(b)(2), if the defendant notified authorities of his intention to enter a plea of guilty in a timely manner, thereby permitting the Government to avoid preparing for trial, an additional level of reduction is warranted.  Thus, it would appear that an additional level of reduction under this subsection is applicable in this case.    <u>-1</u>

25.    **Total Offense Level:**    <u>23</u>

## PART B.  DEFENDANT'S CRIMINAL HISTORY

Juvenile Adjudication(s)

26.    None.

Adult Criminal Conviction(s)

27.    None.

Criminal History Computation

28. The total of the criminal history points is 0. According to the Sentencing Table at U.S.S.G., Chapter 5, Part A, 0 to 1 criminal history point establishes a criminal history category of I.

## PART C. OFFENDER CHARACTERISTICS

Personal and Family Data

29. Jose Martinez was born on May 15, 1953, in Rancho Las Norias, Nuevo Leon, Mexico, to the parental union of Serafin Martinez and Felicitas Martinez. The defendant is the youngest of two children born to this union. In 1958, the defendant's mother passed away due to cancer. The defendant's father remarried, and as a result of that marriage, the defendant has two half-siblings. In 1974, the defendant entered the United States as a temporary resident alien. In 1987, the defendant received his permanent resident alien status. In 1989, the defendant's father passed away as a result of an automobile accident. The defendant claims to have a distant relationship with his siblings.

30. In 1973, the defendant married Maria Elizabeth Hernandez in Diaz Ordaz, Tamaulipas, Mexico. As a result of this union, one child has been born, Jose Manuel, age 18. The defendant claims to have no contact with son. In 1984, this marriage ended in divorce in Hidalgo County, Texas.

31. On December 3, 1985, the defendant married Maria de Jesus Espinoza in Ojo de Agua, Hidalgo County, Texas. As a result of this union, two children have been born, Jose Esequiel Jr., age 6, and Manuel, age 3. The defendant claims to have a good relationship with his wife and children.

Physical Condition

32. Mr. Martinez is approximately five feet eleven inches in height, weighs 150 pounds, has green eyes and graying black hair. The defendant has a scar on his neck. The defendant has skin discoloration on his hands, legs, and chin. It should be noted that this is due to side effects of the medication that the defendant is currently taking.

33. In 1991, the defendant was involved in a work-related accident which resulted in his disability. The defendant underwent neck surgery as a result of a dislocated disc. In 1994, it was determined that another disc was pinching a nerve, which resulted in his limbs going numb. The defendant is currently taking Propoxyphen N-APAP twice daily

7

for this condition. It should be noted that the defendant is currently undergoing further treatment regarding his medical condition.

## Mental and Emotional Health

34.   The defendant denies any history of mental and/or emotional health problems. There is no documented evidence to suggest otherwise.

## Substance Abuse

35.   According to Mr. Martinez, and corroborated by his wife, he rarely drinks any type of alcoholic beverages. The defendant denies any illicit drug usage.

## Education and Vocational Skills

36.   Mr. Martinez has no formal education. The defendant reports saleable skills as a heavy equipment operator.

## Employment Record

37.   From 1991 to the present, the defendant has been unemployed as a result of his work-related accident which resulted in him being disabled.

38.   From 1990 to 1991, the defendant was employed with J & R Oil Rig in Mission, Texas, as a caterpillar operator.

39.   From 1983 to 1990, the defendant was employed with Paul Jones Oil Rig in Mission, Texas, as a caterpillar operator. Please note that this company has since declared bankruptcy, thus the defendant's employment could not be verified.

40.   From 1974 to 1982, the defendant was employed with Perez Ranch in Wesley, California, as a caterpillar operator. According to Mr. Martinez, he was employed seasonally from February through October of each year, and for the remainder of the year he collected unemployment compensation.

Financial Condition:  Ability to Pay

41.   According to the defendant's personal financial statement, the following is noted:

Assets

    Cash

| | | |
|---|---|---|
| Savings Account(s)<br>(First National Bank) | $ | 250 |
| Subtotal: | $ | 250 |

    Unencumbered Assets

| | | |
|---|---|---|
| 1982 Crown Victoria | $ | 3,000 |
| Subtotal: | $ | 3,000 |

    Equity in Other Assets

| | |
|---|---|
| Lot & Home | $17,000 |
| Subtotal: | $17,000 |
| Total Assets: | $20,250 |

Debts

| | | |
|---|---|---|
| Lot & Home | $ | 3,000 |
| Cash & Carry Furniture Store | | 1,270 |
| Total Debts: | $ | 4,270 |

| | |
|---|---|
| NET WORTH: | $15,980 |

### Monthly Cash Flow

#### Income

| | | |
|---|---|---|
| Defendant's Social Security | $ | 563 |
| Spouse's Social Security | | 94 |
| Children's Social Security | | 188 |
| Food Stamps | | 180 |
| Total Income: | $ | 1,025 |

#### Necessary Living Expenses

| | | |
|---|---|---|
| Property mortgage | $ | 193 |
| Food | | 300 |
| Electricity | | 60 |
| Gas | | 30 |
| Water | | 25 |
| Telephone | | 25 |
| Min. installment pymts. | | 110 |
| Medical expenses | | 60 |
| Clothing | | 25 |
| Total Expenses: | $ | 828 |
| Net Monthly Cash Flow: | $ | 197 |

## PART D.  SENTENCING OPTIONS

### Custody

42.  **Statutory Provisions:**  A minimum of five (5) years and a maximum of 40 years imprisonment is applicable in this case. 21 U.S.C. § 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2.

43.  **Guideline Provisions:**  Based on the total offense level of 23, and a criminal history category of I, the guideline imprisonment range is 46 to 57 months.  However, the statutory penalty calls for a mandatory minimum imprisonment sentence of five (5) years; therefore, the guideline imprisonment range is 60 months.

10

Impact of Plea Agreement

44.    Had the defendant been convicted on both counts of the Indictment, the counts would have been grouped pursuant to U.S.S.G. § 3D1.2(d), and a singular base offense level would have been used. In determining the base offense level in this case, the defendant's entire relevant conduct was taken into account; thus, the guideline imprisonment range would not be impacted.

Supervised Release

45.    **Statutory Provisions:** At least a four (4) year term of Supervised Release is prescribed by statute. 21 U.S.C. § 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2.

46.    **Guideline Provisions:** Since the statute of conviction in the instant offense requires a Supervised Release Term of at least four (4) years, the guideline term applicable in this case is four (4) to five (5) years. U.S.S.G. § 5D1.2(a).

Probation

47.    The defendant is ineligible for probation either by statute or guidelines in that the offense is a Class B felony. 18 U.S.C. § 3561(a)(1); U.S.S.G. § 5B1.1(b)(1).

Fines

48.    **Statutory Provisions:** The maximum fine is $2,000,000 pursuant to 21 U.S.C. § 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2. A special assessment of $50 is mandatory, pursuant to 18 U.S.C. § 3013.

49.    Pursuant to 18 U.S.C. § 3612(f)(1), a defendant shall pay interest on any fine of more than $2,500, unless the fine is paid in full before the 15th day after the date of judgement. If the Court determines that the defendant does not have the ability to pay interest, 18 U.S.C. § 3612(f)(3) authorizes the Court to waive the requirement for interest; limit the total interest payable to a specified dollar amount; or limit the length of the period during which interest accrues. If interest is not waived by the Court at the time of sentencing, the Attorney General may subsequently waive all or part of any interest that has accrued if, as determined by the Attorney General, reasonable efforts to collect the interest are not likely to be effective, pursuant to 18 U.S.C. § 3612(h).

50.    **Guideline Provisions:** The fine range for the instant offense is from $10,000 to $2,000,000, pursuant to U.S.S.G. § 5E1.2(c)(4).

11

Restitution

51.    Restitution is not an issue in this case.

Denial of Federal Benefits

52.    **Statutory Provisions:**    For convictions occurring after November 18, 1988, and sentenced after November 1, 1989, 21 U.S.C. § 862 of the Anti-Drug Abuse Act of 1988 provides that an individual convicted of any Federal or State offense consisting of distribution of controlled substances is subject to the denial of certain Federal benefits.

53.    **Guideline Provisions:**  U.S.S.G. § 5F1.6 also provides for the denial of the above-stated benefits.

54.    This presentence investigation has uncovered no information indicating that the defendant is presently receiving Federal benefits deniable pursuant to 21 U.S.C. § 862 and U.S.S.G. § 5F1.6.

# PART E.  FACTORS THAT MAY WARRANT DEPARTURE

55.    The probation officer has no information concerning the offense or the offender which would warrant a departure from the prescribed sentencing guidelines.

Respectfully submitted,

Louis G. Brewster
Chief U.S. Probation Officer

by  Minerva A. Munoz
Minerva A. Munoz
MAM:ago                                          Senior U.S. Probation Officer

Approved:

_____  8/25/95
Enrique J. Saldana Jr.          Date
Supervising U.S. Probation Officer

12

## ADDENDUM TO THE PRESENTENCE REPORT

### UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS
### McALLEN DIVISION
### UNITED STATES V. JOSE ESEQUIEL MARTINEZ, DKT. NO. M-95-102-01

## OBJECTIONS

### By the Government

The Government has filed no objections to the presentence report with the U.S. Probation Office.

### By the Defendant

Defense counsel has filed no objections to the presentence investigation report with the U.S. Probation Office.

Respectfully submitted,

Louis G. Brewster
Chief U.S. Probation Officer

by _Minerva A. Munoz_
Minerva A. Munoz
Senior U.S. Probation Officer

MAM/ago

Approved:

_Minerva A. Muñoz, 9/20/95_
Enrique J. Saldana Jr.    DATE
Supervising U.S. Probation Officer



# MOYER, STRAUS & PATEL, P.A.
### ATTORNEYS & COUNSELORS AT LAW

11

March 19,  2004

State Bar of Texas
P.O. Box 12487
Austin, Texas 78711

## Grievance Against Attorney Alberto Pullan
## Tax Bar Number: 24004440


This law firm now represents Jose Esequiel Martinez-Martinez, who wishes to file a grievance against Attorney Alberto Pullan of Brownville, Texas for failing in his ethical and legal obligations to properly and addequately represent Mr. Martinez in deportation proceedings instituted against Mr. Martinez by the US Immigration and naturalization Service on account of his conviction on November 22, 1995, in the United States District Court, of Southern District of Texas for the offense of possession with intent distribute  approximately 250 kilograms of  marijuana. Mr.  Martinez  participation  in the offence was knowingly  assisting  loading and unloading of marijuana for compensation of $2000.00.

Mr. Martinez alleges in brief, that Attorney Pullen failed to adequately prepare for the hearing, follow court procedures, and neglected to timely file appropriate pleadings and readily available evidence which would have established his eligibility for relief from deportation. Instead, Mr. Martinez was ordered to be deported and this law firm is now representing Mr. Martinez in attempting to obtain a stay of deportation and to re-open the deportation proceedings so that he can properly apply for relief from deportation. Further details of the evidence which Mr. pullan failed to file are contained in the attached copy of our Motion to Re-open the deportation proceedings.

By way of background,

-1-

815 Orienta Avenue, Suite 1060 • Post Office Box 151058 • Altamonte Springs, FL 32715-1058

Telephone: 407-331-5505 • Facsimile: 407-331-6308 • www.moyerstrauspatel.com

Pursuant to the decision of the United States Supreme Court in **INS v St Cyr** 533 S. Ct 2491 (U.S.2000). Mr. Martinez will be entitled to relief from deportation under Immigration and Naturalization Act.

The grounds which must be established by Mr. Martinez to obtain relief are stated in Immigration Board of Appeals case of **Matter of Marin**, 16 I&N Dec 581 (BIA1978). In this proceedings it was encumbent on Mr. Martinez to establish the extreme hardship which would result to him, his wife, his children and any U.S. Citizen who are intimately connected or related to Mr. Martinez, if he were deported.

According to **Matter of Marin**, Mr. Pullan to be successful in obtaining 212 (c) relief was required to file documents prior to the date the Merit Hearing as Follows:

1.  Employment related documents: Such as tax records, check stubs, social security records, disability payment records.

2.  Medical Records: such as vaccination, medical reports evidencing medical problem being experienced by him, his wife and children, medical bills, receipt of medical payments.

3.  Insurance Records: such as policies, claims, invoices.

4.  Car Records: such as licenses, title to car ownership.

5.  Vital Stastics: such as Birth Certificates of children, Marriage Certificate.

6.  Sworn Affidavits: from family members, friends, religious organizations, establishing grounds for relief, such hardship and rehabilitation.

7.  Property Ownership records: home ownership, mortgage and value of the home.

-2-

8.   <u>Children's school report and evidence how his children's
     education and career would be affected if Mr. Martinez was
     deported.</u>

9.   He was also required to present to the court evidence in
     obtaining 212 (c) relief the following evidence:

     <u>Positive Factors:</u>
     Family ties in the U.S., length of residence in the U.S.,
     service in the Armed Forces, property ties, employment
     history, service to the community.

     <u>Rehabilitation</u>:
     Successful completion of probation.

     Letter from local law enforcement authorities relating to
     any    record of arrest or conviction after termination of
     probation.

Letter from probation officer, evidencing general conduct and
behavior of Respondent while on probation.

Evidence of Respondent's conduct while serving his term of
imprisonment. Any positive conduct like completing vocational
courses, GED.

     Evidence of integrating in the community such as letter of
     recommendation.

     <u>Negative Factors:</u>
     The nature and underlying circumstance of deportation
     proceedings. Presence of additional significant violation of
     Immigration Laws.

     The existence of Criminal Record and if so, if negative,
     recency and seriousness of such offenses. Any evidence
     indicative of Alien's bad character.

Mr. Pullan  failed in conducting  Mr. Martinez  deportation  case to
follow  the  court  procedure,  he  neglected  to file  a  Pre-Hearing
Statement, filing therewith Affidavits of witnesses relating hardship to
Respondent  and  his family, filing  as exhibits,  Marriage  Certificate,

Birth Certificates and medical evidence, children's school reports and other documents supporting Respondent's grounds of extreme hardship. Mr. Pullan failed to subpoena the Probation Officer and file other document to establish Mr. Martinez rehabilitation. My motion to Re-open (attached hereto) describes in great detail the evidence which was available but not filed or led.

According to Mr. Martinez, Mr. Pullan met him and his family only half an hour before the scheduled time of the Merit Hearing.

Mr. Pullan has failed in his ethical and legal obligations to properly and adequately represent him. Mr. Martinez now faces a prospect of permanent deportation to Mexico and permanent separation from his wife and children.

We also enclose a copy of decision in **Matter of Marin.** By a copy of this letter we are also informing of this grievance filing to Mr. Pullan who will be responding to you directly. We will also be sending to you the copy of the Grievance Form duly completed by Mr. Martinez in about two days time.

Your Truly,
**Moyer Straus & Patel, P.A.**

Prabodh C. Patel
For the firm

-4-

Interim Decision (BIA) 2666, 1978 WL 36472 (BIA)

1. United States Department of Justice

Board of Immigration Appeals

MATTER OF MARIN

In Deportation Proceedings

A-13923847

Decided by Board August 4, 1978

*581 (1) An application for discretionary relief under section 212(c) of the Act necessitates a balancing of the adverse factors of record evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether the granting of relief is in the best interest of this country.

(2) A statutorily eligible applicant who has the right to apply for relief under section 212(c) must be given the reasonable opportunity to come forward with favorable considerations which may offset the adverse matters of record.

(3) The equities that an applicant for relief under section 212(c) must bring forward to establish that favorable discretionary action is warranted will depend in each case on the nature and circumstances of the ground of exclusion sought waived and on the presence of any additional adverse factors (factors previously deemed favorable and unfavorable set forth).

(4) An applicant for discretionary relief under section 212(c) who has been convicted of a serious drug offense must demonstrate "unusual" or "outstanding" countervailing equities before a favorable exercise of discretion will be considered.

(5) An applicant for relief under section 212(c) who has a criminal record will ordinarily be required to make a showing of rehabilitation before relief will be granted as a matter of discretion.

(6) There is no irrebuttable presumption that a confined or recently convicted alien can never establish either that rehabilitation has occurred or that relief under section 212(c) should otherwise be granted.

(7) The recency of a conviction and the fact of confinement are matters relevant to the consideration of whether an alien has demonstrated his rehabilitation and whether relief should be granted as a matter of discretion.

(8) A District Director is not required to withhold the issuance of an Order to Show Cause in the case of a confined or recently convicted alien who is statutorily eligible for relief under section

212(c) in order to provide the alien a better opportunity to demonstrate his rehabilitation.

(9) The decision to institute deportation proceedings is vested in the discretion of the District Director and the Board of Immigration Appeals is not the proper forum in which to seek a review of the rationale underlying a District Director's decision in this regard.

CHARGE:

Order: Act of 1952--Section 241(a)(11) [**8 U.S.C. 1251(a)(11)** ]--Conviction of narcotics charge

*582 ON BEHALF OF RESPONDENT:
Willard H. Myers, III, Esquire
Prisoners' Legal Services of New York
315 Lake Street
Elmira, New York 14901

ON BEHALF OF SERVICE:
George W. Masterton
Appellate Trial Attorney

BY: Milhollan, Chairman; Appleman, Maguire, and Farb, Board Members

In a decision dated August 23, 1977, the immigration judge found the respondent deportable as charged, denied his application for a waiver of inadmissibility under section 212(c) of the Immigration and Nationality Act, **8 U.S.C. 1182(c)**, and ordered his deportation to Colombia. The respondent has appealed. The appeal will be dismissed.

The respondent, a 46-year-old native and citizen of Colombia, was admitted to the United States for lawful permanent residence on February 3, 1965. In March 1976, he entered a guilty plea in a New York State criminal court to the felony charge of criminal sale of cocaine. On April 29, 1976, he was sentenced to the minimum mandatory sentence provided under New York law for that offense, an indeterminate sentence of one year to life. Including credited pretrial confinement, the respondent served some 30 months of this sentence (from November 1975 through May 1978) in New York State penal institutions.

On May 11, 1977, while still confined, an Order to Show Cause was issued charging the respondent with being deportable under section 241(a)(11) of the Act, **8 U.S.C. 1251(a)(11)**, as an alien convicted of a designated drug offense. At the hearing held on July 20, 1977, the respondent conceded deportability. The immigration judge accordingly found him deportable as charged and that finding is not in issue on appeal.

At the deportation hearing, the respondent applied for relief under section 212(c) of the Act. That section provides, in pertinent part, that aliens lawfully admitted for permanent residence who temporarily proceed abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to certain specified grounds for exclusion enumerated in section 212(a) of the Act. The grounds specified include an alien who has been convicted of a drug offense, as set forth in section 212(a)(23) of the Act, **8 U.S.C. 1182(a)(23)**.

In light of our decision in **Matter of Silva, Interim Decision 2532 (BIA 1976)**, the immigration judge properly concluded that the respondent was statutorily eligible for relief from deportation under section 212(c) even though he had not proceeded abroad subsequent to his entry for lawful permanent residence. See **Francis v. INS, 532 F.2d 268 (2 Cir.1976)**.

Section 212(c), however, does not provide an indiscriminate waiver *583 for all who demonstrate statutory eligibility for such relief. Instead, the Attorney General or his delegate is required to determine as a matter of discretion whether an applicant warrants the relief sought. The alien bears the burden of demonstrating that his application merits favorable consideration. In the case before us, the immigration judge concluded that the respondent had failed to establish that "a waiver of deportability [was] merited as a matter of discretion." [FN1] In this regard, he noted the nature of the respondent's criminal offense and subsequent confinement and concluded that a waiver should not be granted absent a showing of "unusual or outstanding equities." Other than his residence in the United States for 12 years, however, the respondent was "unable to advance any substantial equities." [FN2] He was single, childless, and had no relatives residing in this country. His closest relatives (a brother and sister) both lived in Colombia. The respondent's employment history was sporadic and he presented no evidence that he would have particular difficulty returning to Colombia other than stating that "life [was] too hard there."

Based on the "entire record," the immigration judge concluded that the respondent's conviction as a drug offender had not been sufficiently offset by his "twelve years of residence in the United States" and "his adjustment to prison life" to warrant the granting of discretionary relief under section 212(c). The application for relief was accordingly denied.

On appeal, the respondent, through counsel, states that the "decision of the immigration judge denying [his section 212(c) ] application ... in the exercise of discretion was neither founded upon standards which have been promulgated through regulation or adjudication, nor did the standards applied rest upon a permissible basis." The respondent submits that a wealth of precendential standards exist regarding the discretionary granting of section 212(c) relief, that the immigration judge made a "radical departure from the precedent decisions of this Board [by instead] employing the standards of Matter of Fernandez, supra, and Matter of Arai, supra," that he did so without citation or comment on the existing precedent decisions, that this departure "violated any standard for fair play, as well as due process," and that the factors actually relied upon by the immigration judge were impermissible.

*584 We find no merit to this basis of appeal. The Board has not adopted an inflexible test for an immigration judge to use to determine as a conclusory matter whether section 212(c) relief should be granted as a matter of discretion. The undesirability and "difficulty, if not impossibility, of defining any standard in discretionary matters of this character which may be applied in a stereotyped manner" has long been recognized. See **Matter of L--, 3 I. & N. Dec. 767 (BIA 1949; A.G.1949)** (involving the seventh proviso to section 3 of the Act of 1917). Instead, it has been held that each case must be judged on its own merits. The immigration judge must balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether the granting of section 212(c) relief appears in the best interests of this country.

In order to provide the framework for an equitable application of discretionary relief, the Board has enunciated factors relevant to the issue of whether section 212(c) relief should be granted as a matter of discretion. Among the factors deemed adverse to a respondent's application have been the nature and underlying circumstances of the exclusion ground at issue, the presence of

additional significant violations of this country's immigration laws, the existence of a criminal record and, if so, its nature, recency, and seriousness, and the presence of other evidence indicative of a respondent's bad character or undesirability as a permanent resident of this country. See, for example, **Matter of Carrasco, Interim Decision 2579 (BIA 1977)**, aff'd on other grounds, **Carrasco-Favela v. INS, 563 F.2d 1220 (5 Cir.1977)**; **Matter of Edwards, 10 I. & N. Dec. 506 (BIA 1963, 1964)**; **Matter of M--, 3 I. & N. Dec. 804 (BIA 1949)** (involving the seventh proviso to section 3 of the Immigration Act of 1917); **Matter of V--, 1 I. & N. Dec. 293 (BIA 1942)** (seventh proviso); **Matter of G--, 1 I. & N. Dec. 8 (BIA 1940; A.G.1940)** (seventh proviso). Although in an individual case, one or more of these adverse factors may ultimately be determinative of whether section 212(c) relief is in fact granted, their presence does not preclude a respondent from presenting evidence in support of a favorable exercise of discretion. See **Vissian v. INS, 548 F.2d 325, 330 (10 Cir.1977)**. [FN3] Favorable considerations have been found to include such factors as family ties within the United States, residence of long duration in this country (particularly *585 when the inception of residence occurred while the respondent was of young age), evidence of hardship to the respondent and family if deportation occurs, service in this country's Armed Forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of a genuine rehabilitation if a criminal record exists, and other evidence attesting to a respondent's good character (e.g., affidavits from family, friends, and responsible community representatives). See Matter of Edwards, supra; **Matter of G--A--, 7 I. & N. Dec. 274 (BIA 1956)**; **Matter of F--, 6 I. & N. Dec. 537 (BIA 1955)**; **Matter of S--, 6 I. & N. Dec. 392 (BIA 1954; A.G.1955)**; **Matter of M--, 5 I. & N. Dec. 598 (BIA 1954)**; **Matter of G--Y-- G--, 4 I. & N. Dec. 211 (BIA 1950; Act'g A.G.1951)** (seventh proviso); **Matter of M--, 3 I. & N. Dec. 804 (BIA 1949)** (seventh proviso); **Matter of V--I--, 3 I. & N. Dec. 571 (BIA 1949)** (seventh proviso); Matter of L--, supra; Matter of V--, supra; Matter of G--, supra.

Upon review of the record as a whole, the immigration judge is required to balance the positive and adverse matters to determine whether discretion should be favorably exercised. The basis for the immigration judge's decision must be enunciated in his opinion. In some cases, the minimum equities inherent in eligibility for section 212(c) relief (i.e., residence of at least seven years and status as a lawful permanent resident) may be sufficient in and of themselves to warrant favorable discretionary action. No general standard has been adopted that applications for such relief should ordinarily be granted in the absence of unfavorable factors, however, as an application for section 212(c) relief of necessity carries with it at least one adverse consideration (the ground of exclusion sought waived). Compare Matter of Arai, supra (involving standards for discretionary review of application for adjustment of status under section 245 of the Act). See also **Matter of Blas, Interim Decision 2485 (BIA 1974; A.G.1976)**.

The equities that an applicant for section 212(c) relief must bring forward to establish that favorable discretionary action is warranted will depend in each case on the nature and circumstances of the ground of exclusion sought waived and on the presence of any additional adverse matters. As the negative factors grow more serious, it becomes incumbent upon the applicant to introduce additional offsetting favorable evidence, which in some cases may have to involve unusual or outstanding equities. Such a showing at times may be required solely by virtue of the circumstances and nature of the exclusion ground sought waived.

The standards provided in this area have of necessity been general in nature. The framework for the desired equitable availability of discretionary relief under section 212(c), however, is

furnished by the enunciation of factors deemed relevant to the decision-making process, the *586 requirement that the immigration judge specify the basis for any discretionary decision reached, and the presence of this Board to review any such decision on appeal.

It is within this context that the respondent submits that the immigration judge when exercising his discretion made a "radical departure" from the precedent decisions of the Board. We find no such departure, "radical" or otherwise. The immigration judge reviewed the record as a whole after providing the respondent the complete opportunity to introduce offsetting equitable matters in his behalf. Based on the nature of the adverse matters of record, the immigration judge concluded that favorable discretionary action should be withheld absent a showing of "unusual" or "outstanding" equities. Matter of Arai, supra, was cited in this regard. We agree that such a requirement was proper in view of both the nature of the criminal offense at issue here [FN4], its recency, and the significant period (some 30 months) for which the respondent was confined.

The respondent objects to the immigration judge's citation to Matter of Arai, supra. As a general rule it is prudent to avoid cross-application, as between different types of relief from deportation, of particular principles or standards for the exercise of discretion. In the present case, however, the reference to Arai concerned only the general approach stated there (i.e., the balancing of favorable and unfavorable factors within the context of the relief sought). This may be applied to any case involving the exercise of discretion.

Appellate counsel states that the Arai standards require a showing of "unusual" or "outstanding" equities in every section 245 case in which adverse factors appear. An adverse matter will be present in every section 212(c) application. It is, therefore, submitted that if the Arai standards are adopted in section 212(c) cases, the existence of the single unfavorable matter inherent in such cases would improperly become the "trigger for a showing by the applicant of a higher order of equities ...." This requirement, it is argued, would be "inconsistent with the ameliorative purpose of the statute."

The problem with this analysis, however, lies in a mistaken reading of Matter of Arai, supra. The decision in Arai did not mandate a showing of extraordinary equities in every case in which adverse matters appear. It merely indicated that dependent upon the nature of the adverse *587 matters of record, such a showing might be required. This is equally true in the context of a section 212(c) application. The immigration judge was not mistaken in this regard as he clearly based his requirement for a showing of "unusual" or "outstanding" countervailing equities on the nature of the unfavorable matters in the record before him, rather than on the mere fact that adverse factors were present. We, therefore, find no error in the immigration judge's reference to Matter of Arai, supra.

We further agree that the equities presented by respondent did not sufficiently offset the adverse matters of record. The respondent states that the factors deemed relevant by the immigration judge were in large part impermissible. In this regard, it is submitted that the immigration judge improperly deemed the respondent's absence of close family ties to this country to be an "adverse" matter.

A respondent, however, bears the burden of demonstrating that discretionary relief should be exercised in his behalf. Thus, while the absence of a particular favorable matter (e.g., close family ties) is not an "adverse" factor, it will of necessity make it more difficult for a respondent to successfully establish that he warrants the relief sought. Here, it is clear from the immigration judge's decision that he did not treat the respondent's familial status as a negative factor requiring a showing of countervailing equities. He merely noted the absence of family ties in the context of

the respondent's failure to show sufficient equities to offset the specified adverse matters. We find no merit to the challenge to the other considerations cited by the immigration judge in reaching his decision on the exercise of discretion (e.g., the presence of a brother and sister in Colombia; the absence of a showing of unusual "hardships" if deported) for the same reasons noted above. Each factor cited was relevant to the issue of whether discretion should be favorably exercised, and each was considered by the immigration judge in the context of finding that the respondent had failed to come forward with sufficient equities to offset the significant unfavorable evidence.

As an additional, but related, basis of appeal, the respondent submits that new standards must be adopted with specific regard to the treatment of applications for section 212(c) relief filed by imprisoned aliens. It is stated that the Board has required applicants with a criminal record to demonstrate a "positive rehabilitation" before discretionary relief will be granted. The respondent submits that we have tied this showing of rehabilitation exclusively to time-based factors (i.e., the recency of the offense or fact of present confinement). The result, it is argued, is that a District Director by merely electing to issue an Order to Show Cause while an alien is confined can effectively preclude any successful application by that respondent for section 212(c) relief. This *588 leads the respondent to the "inescapable conclusion" that under the Board's present standards the prosecution of incarcerated aliens is "selective," "impermissible," and clearly at variance with the due process and equal protection clauses of the United States Constitution. It is urged that the remedy to this perceived constitutional defect is either for the Board to adopt revised standards which would permit an incarcerated alien to demonstrate his "entitlement to relief without regard to the fact that he is currently confined" and without use of a "time-based measure ... of reformation" or for the Board to "forbid the commencement of proceedings altogether [against incarcerated aliens] until [they have] been permitted a sufficient period [to demonstrate their] reformation."

We find no merit to this ground of appeal. It is true that applicants for section 212(c) relief who have criminal records will ordinarily be required to make a showing of rehabilitation. It is also true that this Board has found both the fact of confinement and the recency of the offense to be relevant to the question of whether rehabilitation has been established. However, although those factors may ultimately in given cases be determinative of the issue, we have never adopted a "conclusive" time-based standard of reformation that creates an irrebuttable presumption that a confined alien can never establish either that he is rehabilitated or that relief should otherwise be granted. [FN5]

Confined aliens and those who have recently committed criminal acts will have a more difficult task in showing that discretionary relief should be exercised in their behalf than aliens who have committed the same offenses in the more distant past. Dependent upon the nature of the offense and the circumstances of confinement, it may well be that a confined respondent will not be able to demonstrate rehabilitation. This does not mean, however, that different and constitutionally defective standards are applied to aliens, depending on whether they are recent criminals, in confinement, or released ex-offenders. The same test for the exercise of discretion is applied to each category of aliens. It is the factual circumstances that the alien finds himself in as a result of his own misconduct that results in the varying difficulty for successful application for discretionary relief. This fact does not mandate that standards be adopted which ignore considerations clearly relevant to the issue of *589 rehabilitation and the exercise of discretion. Nor does it compel a District Director to withhold instituting proceedings in cases where an alien

is either recently convicted or still confined in order to give the alien a better opportunity to demonstrate his rehabilitation. See section 242(h) of the Act, **8 U.S.C. 1252(h)**.

In any case involving discretionary relief, the timing of the issuance of the Order to Show Cause can have a significant effect on either statutory eligibility for the relief sought or on the circumstances relevant to the exercise of discretion. That fact alone, however, does not render a District Director's decision to institute proceedings suspect. The respondent cites **Lennon v. United States, 387 F.Supp. 561 (S.D.N.Y.1975)** (involving an allegation that deportation proceedings were instituted against an alien solely because of his lawful exercise of constitutional rights). We find no allegation or evidence, however, of an abuse of discretion of the nature at issue in Lennon. [FN6]

We finally note in this regard that the decision to institute deportation proceedings is vested in the discretion of the District Director. 8 C.F.R. 242.1(a). This Board is an administrative body of limited jurisdiction and is not the proper forum in which to seek review of the rationale underlying a District Director's decision to issue an Order to Show Cause. **Matter of Lennon, Interim Decision 2304 (BIA 1974)**, rev'd on other grounds, **Lennon v. INS, 527 F.2d 187 (2 Cir.1975)**; **Matter of Geronimo, 13 I. & N. Dec. 680 (BIA 1971)**.

Upon review of the record, we conclude that the immigration judge's decision is supported by both law and fact. We find no merit to the arguments advanced on appeal by the respondent. The appeal will accordingly be dismissed.

ORDER: The appeal is dismissed.

FN1 The immigration judge cited **Matter of Fernandez, 14 I. & N. Dec. 24 (BIA 1972)** (involving a section 212(h) waiver) as permitting him to refuse to entertain the section 212(c) application because the respondent was still in prison, but he in fact accepted the application and allowed the respondent the full opportunity to present evidence in support of a favorable exercise of discretion.

FN2 The immigration judge noted the factors deemed favorable in our decision in **Matter of Arai, 13 I. & N. Dec. 494 (BIA 1970)** (involving adjustment of status under section 245 of the Act) and examined the record for their presence.

FN3 Matter of Fernandez, supra, which involved an application for section 212(h) relief filed by an incarcerated applicant in exclusion proceedings, should not be read as permitting an immigration judge to decline to entertain an application for relief under section 212(c) by a statutorily eligible respondent merely because he is held in confinement. A respondent with the right to apply for such relief must be given the reasonable opportunity to meet his burden of establishing that relief should be granted as a matter of discretion. See **Matter of M--, 7 I. & N. Dec. 368 (BIA 1956)**.

FN4 Clear distinctions arise in the Act in the treatment of aliens convicted of drug offenses and those convicted of other crimes. Compare sections 241(a)(4) and 241(a)(11). Also see section 241(b); **Guan Chow Tok v. INS, 538 F.2d 36 (2 Cir.1976)**; **Oliver v. INS, 517 F.2d 426 (2 Cir.1975)**. In view of this disparate statutory treatment and the disfavor with which we view such offenses, we require a showing of unusual or outstanding countervailing equities by applicants for discretionary relief who have been convicted of serious drug offenses, particularly those

involving the trafficking or sale of drugs.

FN5 The cases cited by respondent in this regard, with one exception, merely found that the passage of time without further criminal activity was indicative of rehabilitation. See, for example, Matter of G--A--, supra; Matter of S--, supra. In Matter of Carrasco, supra, we found simply that on the facts there before us discretionary relief was appropriately denied the respondent in view of the recency of his conviction and the nature of his crime (importing 26 pounds of marihuana). None of the cases cited held that confined or recently convicted aliens could never establish that discretionary relief under section 212(c) was warranted.

FN6 The respondent notes that the New York and Buffalo districts of the Service and the New York State Department of Correctional Services (D.O.C.S.) have entered into an agreement by which each will cooperate to locate the expeditiously determine the immigration status of aliens incarcerated in the New York State Correctional System. Respondent concedes that the agreement not only is of benefit to the Service and the D.O.C.S., but also is of benefit in several ways to the alien. We find nothing arising from this agreement that either indicates or implies a District Director's abdication of discretion or abuse thereof.

16 I. & N. Dec. 581, Interim Decision (BIA) 2666, 1978 WL 36472 (BIA)

END OF DOCUMENT