United States District Court
Southern District of Texas
FILED

AUG 0 2 2004

Michael N. Milby
Clerk of Court

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

JOSE EZEQUIEL MARTINEZ-MARTINEZ )

v.                                )        C.A.   04-106

MARC MOORE, et al.                )

**PETITIONER'S STATEMENT REGARDING RIGHT TO COUNSEL
TABLE OF CONTENTS**

I.    BACKGROUND ........................................... 1

II. EVEN IF THE COURT HAD JURISDICTION IN *ASSAAD*, ITS
REASONING WITH RESPECT TO LIBERTY INTERESTS WOULD NOT RESOLVE
THE CASE AT BAR ........................................... 4

    A.  THE DISCUSSION OF "LIBERTY INTERESTS" IN *ASSAAD* WAS
ACTUALLY *DICTA*, AND DOES NOT CONTROL THE CASE AT BAR ... 4

    B.  BECAUSE THE INSTANT CASE IS PRESENTED IN HABEAS,
THE PETITIONER HAS LIBERTY INTERESTS NOT INVOLVED IN
*ASSAAD* ................................................. 6

        1.  PERMANENT RESIDENTS ARE ENTITLED TO DUE PROCESS
IN DEPORTATION PROCEEDINGS, INCLUDING DETERMINATIONS
OF ELIGIBILITY FOR DISCRETIONARY RELIEF ............. 6

            a.  MR. MARTINEZ HAS A LIBERTY INTEREST IN RELIEF
FROM THE UNLAWFUL CUSTODY WHICH PROVIDES HABEAS
JURISDICTION .................................... 7

            b.  MR. MARTINEZ' DUE PROCESS RIGHT TO A FAIR
HEARING INCLUDES ISSUES RELATING TO DISCRETIONARY
RELIEF .......................................... 8

            c.  THE SUPREMACY CLAUSE REQUIRES HABEAS REVIEW
OF DENIAL OF DISCRETIONARY RELIEF ON THE BASIS OF
DUE PROCESS VIOLATIONS ......................... 11

            i.  In *St. Cyr,* the Court Reaffirmed That Habeas
Review Of Deportation Orders Is Mandated By the
Constitution .................................. 14

            ii.  The Scope of Habeas Review Is Again That
Which Was Available During the Heikkila Period,
Encompassing Errors of Law, and a Broad Swath of
Issues Which Implicate the Due Process Right to
a Fair Hearing ................................ 16

        2.  MR. MARTINEZ IS ENTITLED TO HABEAS RELIEF ....... 19

## TABLE OF AUTHORITIES

### CASES

*Adel v. Shaughnessy,*
    183 F.2d 371 (2nd Cir. 1950) . . . . . . . . . . . . . . 18

*Assaad v. Ashcroft,*
    2004 U.S. App LEXIS 14861 (5th Cir. 2004) . . . . . 1-7, 9

*Balogun v. Ashcroft,*
    270 F.3d 274 (5th Cir. 2001) . . . . . . . . . . . . . . 3

*Bravo v. Ashcroft,*
    341 F.3d 590 (5th Cir. 2003) . . . . . . . . . . . . . . 18

*Bridges v. Wixon,*
    326 U.S. 135 (1945) . . . . . . . . . . . . . . . . . . 13

*Calcano v. INS,*
    533 U.S. 348 (2001) . . . . . . . . . . . . . . . . . . 3

*Collins v. Harker Heights,*
    503 U.S. 115 (1992) . . . . . . . . . . . . . . . . . . 13

*Colonna v. Tillinghast,*
    32 F.2d 447 (1st Cir. 1929) . . . . . . . . . . . . . . 17

*Cruzan v. Director, Mo. Dept. of Health,*
    497 U.S. 261 (1990) . . . . . . . . . . . . . . . . . . 14

*Dakane v. U.S.A.G.,*
    371 F.3d 771 (11th Cir. 2004) . . . . . . . . . . . . 1, 2

*Daniels v. Williams,*
    474 U.S. 327 (1986) . . . . . . . . . . . . . . . . . . 13

*Domenici v. Johnson,*
    10 F.2d 433 (1st Cir. 1926) . . . . . . . . . . . . . . 17

*Eisenstadt v. Baird,*
    405 U.S. 438 (1972) . . . . . . . . . . . . . . . . . . 14

*Finlay v. INS,*
    210 F.3d 556 (5th Cir. 2000) . . . . . . . . . . . . . . 18

*Flores v. Reno,*
    507 U.S. 292 (1993) . . . . . . . . . . . . . . . . . . 1, 2

*Flores-Garza v. Ashcroft,*
    328 F.3d 797 (5th Cir. 2003) . . . . . . . . . . . . . . 2, 3

*Gabriel v. Johnson,*
    29 F.2d 347 (1st Cir. 1928) . . . . . . . . . . . . . . 17

*Gonzalez-Martinez v. Landon,*
    203 F.2d 196 (9th Cir.),
    *cert. denied,* 345 U.S. 998 (1953) . . . . . . . . . . 17

*Griswold v. Connecticut,*
    381 U.S. 479 (1965) . . . . . . . . . . . . . . . . . . 13

*Harvey v. Blake,*
    913 F.2d 226 (5th Cir. 1990) . . . . . . . . . . . . . . 4

*Hee Fuk Yuen v. White,*
    273 F. 10 (9th Cir. 1921) . . . . . . . . . . . . . . . 10

*Hee Fuk Yuen v. White,*
    273 F. 10 (9th Cir.);
    *cert. denied,* 257 U.S. 639 (1921) . . . . . . . . . . 17

*Heikkila v. Barber,*
    345 U.S. 229 (1953) . . . . . . . . . . 9-11, 14, 16, 19

*INS v. St. Cyr,*
    533 U.S. 289 (2001) . . . . . . . . . . . . 3, 9, 10, 14

*INS v. Yang,*
    519 U.S. 26 (1996) . . . . . . . . . . . . . . . . 16, 19

*Jones v. Cunningham,*
    371 U.S. 236 (1963) . . . . . . . . . . . . . . . . . . 8

*Kielema v. Crossman,*
    103 F.2d 292 (5th Cir. 1939) . . . . . . . . . . . . . . 16

*Koetting v. Thompson,*
    995 F.2d 37 (5th Cir. 1993) . . . . . . . . . . . . . . 8

*Kwock Jan Fat v. White,*
    253 U.S. 454 (1920) . . . . . . . . . . . . . . . 16, 17

*Landon v. Plasencia,*
    459 U.S. 21 (1982) . . . . . . . . . . . . . . . . . 13

*Lassiter v. Dept. Soc. Servs. of Durham Cty.,*
    452 U.S. 18 (1981) . . . . . . . . . . . . . . . . . 14

*Lisotta v. U.S.,*
    3 F.2d 108 (5th Cir. 1924) . . . . . . . . . . . . . 16

*Loving v. Virginia,*
    388 U.S. 1 (1967) . . . . . . . . . . . . . . . . . 13

*Low Wah Suey v. Backus,*
    225 U.S. 460 (1912) . . . . . . . . . . . . . . . . 17

*M.L.B. v. S.L.J.,*
    519 U.S. 102 (1996) . . . . . . . . . . . . . . . . 14

*Mastrapasqua v. Shaughnessy,*
    180 F.2d 999 (2d Cir. 1950) . . . . . . . . . . . 11, 17

*Max-George v. Reno,*
    205 F.3d 194 (5th Cir. 2000) . . . . . . . . . . . 3, 18

*Mejia-Rodriguez v. Reno,*
    178 F.3d 1139 (11th Cir. 1999) . . . . . . . . . . . 2, 9

*Meyer v. Nebraska,*
    262 U.S. 390 (1923) . . . . . . . . . . . . . . . 8, 13

*Moore v. City of East Cleveland,*
    431 U.S. 494 (1977) . . . . . . . . . . . . . . . . 13

*Partible v. INS,*
    600 F.2d 1094 (5th Cir. 1979) . . . . . . . . . . . 6, 7

*Paul v. INS,*
    521 F.2d 194 (5th Cir. 1975) . . . . . . . . . . . . . 7

*Planned Parenthood of Southeastern Pa. v. Casey,*
        505 U.S. 833 (1992) . . . . . . . . . . . . . . . 14

*Reno v. Flores,*
        507 U.S. 292 (1993) . . . . . . . . . . . . . . . 13

*Requena-Rodriguez v. Pasquarell,*
        190 F.3d 299 (5th Cir. 1999) . . . . . . . . . . . 18

*Rivera v. INS,*
        810 F.2d 540 (5th Cir. 1987) . . . . . . . . . . . 8

*Rochin v. California,*
        342 U.S. 165 (1952) . . . . . . . . . . . . . . . 14

*Santosky v. Kramer,*
        455 U.S. 745 (1981) . . . . . . . . . . . . . . . 14

*Shaughnessy v. U.S. ex rel Mezei,*
        345 U.S. 206 (1953) . . . . . . . . . . . . . . 8, 10

*Skinner v. Oklahoma ex rel. Williamson,*
        316 U.S. 535 (1942) . . . . . . . . . . . . . . . 13

*Sol v. INS,*
        274 F.3d 648 (2nd Cir. 2001) . . . . . . . . . . . 18

*Swain v. Pressley,*
        430 U.S. 372 (1977) . . . . . . . . . . . . . . . 14

*Tefel v. Reno,*
        180 F.3d  1286 (11th Cir.1999) . . . . . . . . . . 18

*Toscano-Gil v. Trominski,*
        210 F.3d 470 (5th Cir. 2000) . . . . . . . . . . 18, 19

*Toscano-Gil v. Trominski,*
        CA B-02-084, (S.D.Tx. Hon. Filemon B. Vela, Presiding) . 19

*Troxel v. Granville,*
        530 U.S. 57 (2000) . . . . . . . . . . . . . . . 14

*U.S. ex rel. Accardi v. Shaughnessy,*
        347 U.S. 260 (1954) . . . . . . . . . . 9, 11, 12, 14-16

*U.S. ex rel. Berman v. Curran*,
  13 F.2d 96 (3rd Cir. 1926) . . . . . . . . . . . . . . . . 11

*U.S. ex rel. Exarchou v. Murff*,
  265 F.2d 504 (2d Cir. 1959) . . . . . . . . . . . . . . . 17

*U.S. ex rel. Hintopoulos v. Shaughnessy*,
  353 U.S. 72 (1957) . . . . . . . . . . . . . . . . 15, 16

*U.S. ex rel. Kaloudis v. Shaughnessy*,
  180 F.2d 489 (2nd Cir.1950) . . . . . . . . . . . . . 10

*U.S. ex rel. McKenzie v. Savoretti*,
  200 F.2d 546 (5th Cir. 1952) . . . . . . . . . . . . . 17

*U.S. ex rel. Patti v. Curran*,
  22 F.2d 314 (S.D.N.Y. 1926) . . . . . . . . . . . 10, 17

*U.S. ex rel. Tisi v. Tod*,
  264 U.S. 131 (1924) . . . . . . . . . . . . . 16, 17, 19

*U.S. v. Calderon-Pena*,
  339 F.3d 320 (5th Cir. 2003), rehearing en banc granted,
  2004 U.S. App. LEXIS 4265 . . . . . . . . . . . . . . 12

*U.S. v. Encarnacion-Galvez*,
  964 F.2d 402, (5th Cir. 1992) . . . . . . . . . . . . . 6

*U.S. v. Lipscomb*,
  299 F.3d 303 (5th Cir. 2002) . . . . . . . . . . . . . 4

*Vajtauer v. Commissioner of Immigration*,
  273 U.S. 103 (1927) . . . . . . . . . . . . . . . . . 19

*Washington v. Glucksberg*,
  521 U.S. 702 (1997) . . . . . . . . . . . . . . . 8, 13

*Zadvydas v. Davis*,
  533 U.S. 678 (2001) . . . . . . . . . . . . . . 7, 8, 10

*Zalawadia v. Ashcroft*,
  371 F.3d 292 (5th Cir. 2004) . . . . . . . . . . . . 7, 8

## ADMINISTRATIVE DECISIONS

*Matter of Arreguin,*
    21 I&N Dec. 38 (BIA 1995) . . . . . . . . . . . . . . 10

*Matter of Assaad,*
    23 I&N Dec. 553 (BIA 2003) . . . . . . . . . . . . 1-7, 9

*Matter of A-P-,*
    22 I&N Dec. 468 (BIA 1999) . . . . . . . . . . . . . . 3

*Matter of Lozada,*
    19 I&N Dec. 637 (BIA 1988) . . . . . . . . . . . . . 18

*Matter of Salazar-Regino,*
    23 I&N Dec. 223 (BIA 2002) . . . . . . . . . . . . . 13

## STATUTES

8 U.S.C. §1252  . . . . . . . . . . . . . . . . . . . . 3

8 U.S.C. §1252(a)(2)(B) . . . . . . . . . . . . . . . . 13

8 U.S.C. §1252(a)(2)(C) . . . . . . . . . . . . . . . . 17

8 U.S.C. §1252(b)(4)(B) . . . . . . . . . . . . . . . . 14

## REGULATIONS

8 C.F.R. §1240.11(a)(2) . . . . . . . . . . . . . . . 1, 2

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JOSE EZEQUIEL MARTINEZ-MARTINEZ      )
                                     )
v.                                   )      C.A.  04-106
                                     )
MARC MOORE, et al.                   )
_____  )

### PETITIONER'S STATEMENT REGARDING RIGHT TO COUNSEL

Jose Ezequiel Martinez-Martinez, ("Mr. Martinez"), by and through the undersigned, files the instant Memorandum, with respect to his entitlement to counsel in removal proceedings.  Mr. Martinez claims that the performance of his first counsel was so deficient as to render his removal proceedings fundamentally unfair, to his substantial prejudice, and that he is entitled to habeas relief.

The scope of the right of non-citizens in deportation or removal proceedings to effective counsel is one with which the Fifth Circuit has struggled, but has not yet resolved.  Its most recent pronouncement on the subject, *Assaad v. Ashcroft,* 2004 U.S. App LEXIS 14861 (5th Cir. 2004), discussed *infra,* raises more questions than it resolves.  When the legal dust finally settles, however, Petitioner considers that the majority rule will prevail, which is that Due Process is violated where counsel's performance is so deficient as to affect the fundamental fairness of the proceedings. *See, e.g., Dakane v. U.S.A.G.*, 371 F.3d 771,774-75 (11th Cir. 2004). The scope of this right, particularly for lawful permanent residents, ("LPRs"), and most particularly, with respect to relief from deportation, has yet to be definitively settled.

### I.  BACKGROUND

It is beyond question that non-citizens, even those who are not LPRs, are entitled to Due Process in deportation proceedings. *See, e.g., Flores v. Reno,* 507 U.S. 292,306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process

of law in deportation proceedings."). While *Assaad* left open the question of the scope of the right to counsel, the Eleventh recently reiterated the majority view in *Dakane, supra*:

> It is well established in this Circuit that an alien in civil deportation proceedings, while not entitled to a Sixth Amendment right to counsel, has the constitutional right under the Fifth Amendment Due Process Clause to a fundamentally fair hearing to effective assistance of counsel where counsel has been obtained. Gbaya, 342 F.3d at 1221. n6 In order "to establish the ineffective assistance of counsel in the context of a deportation hearing, an alien must establish that his or her counsel's performance was deficient to the point that it impinged upon the fundamental fairness of the hearing such that the alien was unable to reasonably present his or her case." Id. (quoting Mejia Rodriguez v. Reno, 178 F.3d 1139, 1146 (11th Cir. 1999) (internal quotes omitted)). See also Rojas-Garcia v. Ashcroft, 339 F.3d 814, 824 (9th Cir. 2003)

The more troubling aspect of *Assaad*, one which apparently negatively controls the instant case, relates to its discussion of whether an immigrant has a sufficient "liberty interest" in discretionary relief to raise Due Process objections. Ironically, that discussion also derived from *Mejia-Rodriguez v. Reno, supra*.

On the question of jurisdiction, Petitioner submits that *Assaad* conflicts with *Flores-Garza v. Ashcroft,* 328 F.3d 797 (5th Cir. 2003), holding that where applicable, 8 U.S.C. §1252(a)(2)(C) is absolute, and deprives the Court of jurisdiction even over constitutional questions. *Assaad* concludes, without analysis, that the Court of Appeals had jurisdiction under 8 U.S.C. §1252, over any "substantial constitutional questions," even after finding that jurisdiction was barred by 8 U.S.C. §1252(a)(2)(B).

Clearly, the Court always has jurisdiction to determine its jurisdiction. *Flores-Garza, supra.* In *Assaad,* however, even

2

favorable resolution of the constitutional issues would not have eliminated the jurisdictional bar. Such issues are conceptually distinct from constitutional issues affecting deportability. The question of whether a given conviction renders an immigrant deportable, if answered in favor of the immigrant, removes the case from the scope of 8 U.S.C. §1252(a)(2)(C), because the person is not, in fact, removable for having committed the specific offense. Therefore, this eliminates the jurisdictional bar. By contrast, a constitutional question affecting the denial of discretionary relief covered by 8 U.S.C. §1252(a)(2)(B), even if resolved in favor of the immigrant, would not eliminate the jurisdictional bar: it would still be a "judgment regarding the granting of relief," even if the Court were to find that the immigrant's constitutional rights had been violated in the process of denying relief!

Notably, *Assaad* does not mention *Flores-Garza.* Rather, it relies on *Balogun v. Ashcroft,* 270 F.3d 274,278 n.11 (5th Cir. 2001). As noted in *Flores-Garza,* 328 F.3d at 803,n.5, the comment in *Balogun* that the Court could still hear substantial constitutional questions was *dicta,* derived from *Max-George v. Reno,* 205 F.3d 194 (5th Cir. 2000), which was overruled by *INS v. St. Cyr,* 533 U.S. 289,323-24 (2001); and *Calcano v. INS,* 533 U.S. 348 (2001). The cases on which *Balogun* relies are therefore no longer good law, and particularly absent any analysis, including an analysis of *Flores-Garza, Assaad* is also not good law.

To the extent *Flores-Garza* left open the issue of addressing "substantial constitutional questions," its holding makes it clear that this was only where no jurisdictional bar applied, or where the constitutional question, if answered in favor of the immigrant, would nullify the jurisdictional bar. This cannot occur where the questions relate only to relief. *Assaad* involved a petition for

3

review, governed by 8 U.S.C. §1252. As the Court correctly concluded, the jurisdictional bar of 8 U.S.C. §1252(a)(2)(B) applied. Thus, under *Flores-Garza,* the Court of Appeals lacked jurisdiction in *Assaad* to address constitutional issues relating to discretionary relief. As noted in *U.S. v. Lipscomb,* 299 F.3d 303,378 (5th Cir. 2002) (Jerry E. Smith, Circuit Judge, dissenting):

> The majority's venue ruling plainly contradicts *Alvarado,* and it is well established that "when two panel opinions appear in conflict, it is the earlier which controls." *Harvey v. Blake,* 913 F.2d 226, 228 (5th Cir. 1990). But, the fact that today's holding will not be binding does not make it any less in error.

## II. EVEN IF THE COURT HAD JURISDICTION IN *ASSAAD,* ITS REASONING WITH RESPECT TO LIBERTY INTERESTS WOULD NOT RESOLVE THE CASE AT BAR

### A. THE DISCUSSION OF "LIBERTY INTERESTS" IN *ASSAAD* WAS ACTUALLY *DICTA,* AND DOES NOT CONTROL THE CASE AT BAR.

The effect of substantive pronouncements in a case where the Court erroneously found that it had jurisdiction, because it conflicts with a prior panel decision, is itself a thorny jurisprudential issue, but one which need not be resolved herein, as there are other reasons why *Assaad* is not controlling. Mr. Assaad had the opportunity to apply for discretionary relief, *with competent counsel,* but failed to show that he merited it. [1] In fact, he had *two* such opportunities: with INS, and before the Immigration Judge. Both times, relief was denied on the merits. Mr. Assaad hired a second attorney to pursue an appeal to the BIA. The appeal was not

---

[1]    In *Assaad,* the Judge denied the waiver, "finding that limited evidence was submitted to assess the qualifying marriage and that the respondent knew little about his wife." 23 I&N Dec. 553, at *5. Notably, the BIA specifically found that Mr. Assaad "was competently represented by counsel at the hearing before the Immigration Judge," *id.* at n.2.

timely filed, and was therefore dismissed.    His third attorney filed an untimely motion to reopen with the Judge, who denied it. That denial was appealed to the BIA.    The BIA denied the appeal, not because the motion had been untimely, but for failure to show prejudice.    *Assaad,* at *4 (emphasis added):

> Ultimately, the BIA dismissed [the appeal from the denial of] Assaad's motion to reopen after concluding that, even though Assaad met the BIA's procedural requirements for an ineffective-assistance-of-counsel claim, see In re Lozada, 19 I&N Dec. 637, 639 (BIA 1988), he was not entitled to relief *because he had provided no evidence in his motion to reopen showing that he was prejudiced by his attorney's failure* to file the initial BIA appeal in a timely manner.

In other words, the BIA concluded that, after three tries, he had still produced no evidence to show that he deserved a waiver. There was no challenge to the BIA's finding that the attorney who assisted him in presenting the case did so competently.    The issue before the Court was whether the evidence mandated a finding that, notwithstanding the unsuccessful hearing with competent counsel, he actually deserved the waiver.    Although the case arose in the context of a motion to reopen, it thus involved direct review of a finding of fact, under 8 U.S.C. §1252(b)(4)(B), *not* a Due Process issue.    Given that initial counsel had been competent, logically, there could be no issue as to whether counsel was so ineffective as to render the proceedings fundamentally unfair, to the point that the immigrant was deprived of Due Process.    He had his hearing, *with competent counsel*, and lost.    Period.

Thus, there are two flaws in *Assaad*: the Fifth Circuit erroneously found that it had jurisdiction over constitutional questions, notwithstanding the jurisdictional bar of 8 U.S.C. §1252(a)(2)(B), notwithstanding that those questions, even if resolved in favor of

5

the immigrant, would not negate the jurisdictional bar, and the
Court formulated the issue as whether Mr. Assaad had the required
"liberty interest" in relief to claim a Due Process violation from
ineffective assistance of counsel, when he was not complaining of
a Due Process violation, but the issue was whether, under 8 U.S.C.
§1252(b)(4)(B), the record compelled the conclusion that he had
shown prejudice, *i.e.,* that he merited the waiver. [2] Since Due
Process was not the issue, *Assaad's* discussion of whether he had a
liberty interest in discretionary relief was therefore *dicta*.

In the instant habeas proceedings, Mr. Martinez claims that trial
counsel was ineffective to the point of rendering the proceedings
fundamentally unfair, and that, he was prejudiced by this failure.
The BIA concluded that counsel had **not** been ineffective, while
recognizing that Mr. Martinez had fulfilled the requirements of
*Matter of Lozada*.    In contrast to *Assaad,* therefore the issue
before this Court is whether counsel was indeed ineffective, to the
point of denying Mr. Martinez a fair hearing.

### B.    BECAUSE THE INSTANT CASE IS PRESENTED IN HABEAS, THE PETITIONER HAS LIBERTY INTERESTS NOT INVOLVED IN *ASSAAD*.

### 1.    LPRs ARE ENTITLED TO DUE PROCESS IN DEPORTATION PROCEEDINGS, INCLUDING DETERMINATIONS OF ELIGIBILITY FOR DISCRETIONARY RELIEF.

The threshold question presented herein is whether trial counsel
can be so deficient as to deprive an immigrant of Due Process. Mr.
Martinez submits that this issue will ultimately be resolved in his
favor.  *See, e.g., Partible v. INS,* 600 F.2d 1094 (5th Cir. 1979)
(alien's waiver of counsel was not competently and understandingly
made, and thus, because outcome of proceeding might have been

---

[2]    *See, U.S. v. Encarnacion-Galvez*, 964 F.2d 402,407 (5th Cir.
1992) (Defining prejudice as a "reasonable likelihood that but for
the errors complained of" the person would not have been deported.)

different if counsel had been present, alien was entitled to a new hearing), and *Paul v. INS,* 521 F.2d 194 (5th Cir. 1975) (counsel representing aliens was not ineffective and that the aliens were not deprived of their due process right to fair hearing). Although *Assaad* indicated that the issue was not settled in this circuit, Mr. Martinez considers that it is controlled by *Partible,* and that even if not, it will ultimately be decided in his favor.

Thus the primary issue presented herein is whether he has a constitutionally protected interest [3] in the fair adjudication, *i.e.,* with reasonably competent counsel, of his application for §212(c) relief, such that he can contest the denial of Due Process.

### a.   MR. MARTINEZ HAS A LIBERTY INTEREST IN RELIEF FROM THE UNLAWFUL CUSTODY WHICH PROVIDES HABEAS JURISDICTION.

First, Mr. Martinez has a liberty interest inherent in the unlawful custody which provided habeas jurisdiction in the first place. *Zadvydas v. Davis,* 533 U.S. 678,693-5 (2001), contains an extensive discussion of the Due Process rights of immigrants, even those who entered illegally.  It does not turn on finding a liberty interest in eligibility for parole, the discretionary relief sought. Their liberty interest was obvious: release from INS' custody. [4]

Mr. Martinez also asserted unlawful custody.  When his petition was filed, he was also under an Order to report for removal on June 28, 2004, which demand was canceled after the instant petition was filed. (Petitioner's Exhibit D).  *See, Zalawadia v. Ashcroft*, 371

---

[3]  In addition to the "liberty interest" discussed below, Mr. Martinez, who had filed a fee-paid application for §212(c) relief, also had a "property interest" in said application.

[4]  Even if one reads *Zadvydas* as involving only a *Substantive* Due Process claim, and that such a claim does not require a "liberty interest," Mr. Martinez has also alleged a Substantive Due Process violation, so he would be covered by *Zadvydas.*

F.3d 292,297,n.1 (5th Cir. 2004) (The "in custody" determination is made when a habeas petition is filed).   Said order placed significant restrictions on his liberty not shared by the populace at large. *See, Jones v. Cunningham,* 371 U.S. 236,243 (1963):

> While petitioner's parole releases him from immediate physical imprisonment, it imposes conditions which significantly confine and restrain his freedom; this is enough to keep him in the "custody" of the members of the Virginia Parole Board within the meaning of the habeas corpus statute.

Such restrictions constitute custody for habeas purposes, and give Mr. Martinez a liberty interest in having those conditions, (*i.e.,* that custody), removed.  The relief requested, vacating the removal orders, and/or ordering a new hearing on his request relief from removal, would restore his status as an LPR, [5] and free him from custody. [6]   As in *Zadvydas, supra,* no additional liberty interest is required to trigger Due Process protections.

### b.   MR. MARTINEZ' DUE PROCESS RIGHT TO A FAIR HEARING INCLUDES DETERMINATIONS RELATING TO DISCRETIONARY RELIEF.

Second, it is hornbook law that, as discussed in *Zadvydas,* immigrants in deportation proceedings are entitled to Due Process. *Shaughnessy v. U.S. ex rel Mezei,* 345 U.S. 206,212 (1953):

> [A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.

---

[5]   *See, Rivera v. INS,* 810 F.2d 540 (5th Cir. 1987)

[6]   *See also, Koetting v. Thompson,* 995 F.2d 37 (5th Cir. 1993) (Although a "detainer" issued for a parole violation is not custody for habeas purposes where no liberty interest is impinged, custody does exist where the detainer implicates such an interest by interfering with the ability to defend against parole revocation).

Applications for relief are part and parcel of those proceedings. Just as a criminal case continues after a finding of guilt, deportation proceedings do not terminate with a finding of deportability. Relief *must* be addressed before a deportation order issues. *See,* 8 C.F.R. §1240.11(a)(2):

> The immigration judge shall inform the alien of his or her apparent eligibility to apply for any of the benefits enumerated in this chapter and shall afford the alien an opportunity to make application during the hearing.

*See also, Matter of A-P-,* 22 I&N Dec. 468 (BIA 1999):

> [T]he regulations pertaining to removal proceedings as provid[e] for the use of a summary decision format only in cases where, ... it can be determined without further inquiry or analysis that he or she is ineligible for any form of relief; or, after the Immigration Judge has advised the alien regarding any forms of relief for which he or she appears to be eligible, the alien does not seek to apply for relief from removal; or the alien has sought and has been granted only the relief of voluntary departure.

The *Assaad* Court concluded, quoting *Mejia-Rodriguez, supra,* that:

> Assaad's motion to reopen does not allege a violation of his Fifth Amendment right to due process because "the failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest."

In reaching this conclusion, the *Assaad* Court relied on some cases which predated *St. Cyr*, [7] and others which did not involve discretionary relief in the context presented herein, a habeas action challenging "custody." These cases are not on point. Notably, there was no discussion of *U.S. ex rel Accardi v. Shaughnessey,* 347 U.S. 260 (1954) (considering claim that denial of discretionary relief violated Due Process); *Heikkila v. Barber*, 345

---

[7]  *E.g., Mejia-Rodriguez v. Reno, supra.*

9

U.S. 229 (1953) (finding that prior to 1952, Congress preserved only such review of deportation orders as "required by the Constitution"); *Shaughnessy v. U.S. ex rel Mezei*, 345 U.S. 206,212 (1953), *Zadvydas, supra,* or *St. Cyr*, which stands for the proposition that both legal and constitutional errors in determining eligibility for discretionary relief render an order vulnerable to attack in habeas corpus. *St. Cyr,* supra at 308,n.30:

> [U]nder the pre-1952 regime which provided only what *Heikkila* termed the constitutional minimum of review, on habeas lower federal courts routinely reviewed decisions under the Seventh Proviso, the statutory predecessor to § 212(c), to ensure the lawful exercise of discretion.

Among the cases cited were *Hee Fuk Yuen v. White*, 273 F. 10 (9th Cir. 1921) (rejecting a claim that the alien had not received a "fair hearing" on his application for discretionary relief); *U.S. ex rel. Patti v. Curran*, 22 F.2d 314, 316 (SDNY 1926) (remanding for a hearing on discretionary relief, on a finding that the regulations had been applied in a way which "exalts form above substance, and gives to regulations intended to effectuate the intention of the statute an effect which defeats its purpose."); *Adel v. Shaughnessy*, 183 F.2d 371 (2nd Cir. 1950) (holding that in habeas, the courts "cannot review the exercise of such discretion; they can interfere only when there has been a clear abuse of discretion or a clear failure to exercise discretion."); *U.S. ex rel. Kaloudis v. Shaughnessy*, 180 F.2d 489,490 (2nd Cir.1950) (conceding that there could be limits regarding the relevancy of factors used to deny discretionary relief, such as that "the alien

10

had become too addicted to attending baseball games, or had bad
table manners," but that membership in a proscribed organization
was not such an irrelevant factor); *Mastrapasqua* v. *Shaughnessy*,
180 F.2d 999 (2nd Cir. 1950) (finding irrational and capricious the
Attorney General's policy of denying discretionary relief to all
those whose presence in the United States was due solely to the
war); *U.S. ex rel. Berman* v. *Curran*, 13 F.2d 96 (3rd Cir. 1926)
(finding discretionary denial unlawful because there was no
evidence to support the factual finding upon which it rested).

None of these cases could have been heard if the immigrants were
not entitled to Due Process with respect to applications for
discretionary relief. Thus these cases further demonstrate that
relief has always been viewed as an inherent aspect of deportation
proceedings, and/or that a liberty interest is inherent in the
jurisdictional prerequisite of "custody" in habeas proceedings.

### c. THE SUPREMACY CLAUSE REQUIRES HABEAS REVIEW OF THE DENIAL OF DISCRETIONARY RELIEF FOR DUE PROCESS VIOLATIONS

One can search the *Heikkila*-era decisions in vain for a discussion
of "liberty interests" in discretionary relief. The closest one
finds is the *dissent* in *Accardi, supra* at 269:

> Congress vested in the Attorney General, and in him
> alone, discretion as to whether to suspend deportation
> under certain circumstances. We think a refusal to
> exercise that discretion is not reviewable on habeas
> corpus, first, because the nature of the power and
> discretion vested in the Attorney General is analogous to
> the power of pardon or commutation of a sentence, which

11

> we trust no one thinks is subject to judicial control;
> and second, because no legal right exists in petitioner
> by virtue of constitution, statute or common law to have
> a lawful order of deportation suspended.

By definition, the *Accardi* majority rejected this argument.

Finally, there are major differences between Sentencing Guidelines cases, which challenge the proceedings leading to a prior removal, and habeas cases, attacking un-executed removal orders. *See, U.S. v. Calderon-Pena,* 339 F.3d 320, 325 (5th Cir. 2003):

> Calderon-Pena does not cite, nor have we located, any
> cases applying *Accardi* in the criminal context; all
> examples of relief granted came either via direct appeal
> of an administrative ruling or by writ of habeas corpus.
> ... In civil proceedings, *Accardi* is applied by ordering
> a new administrative hearing, and therefore courts do not
> require a showing of prejudice. [8] Here, we are not
> empowered to order, nor has Calderon-Pena requested, a
> new deportation hearing; rather, we may only dismiss the
> indictment for his subsequent illegal reentry.

Mr. Martinez falls squarely within the mandate of *Accardi*, and *St. Cyr.* He seeks a new hearing, at which to apply for discretionary relief*, with competent counsel*, and in accordance with Due Process.

Further, should habeas relief be denied, he will be deported, and permanently separated from his family in the United States. This would deprive him of the fundamental rights between parent and

---

[8]  Mr. Martinez also demonstrated prejudice, by showing that he was equally or more deserving of relief than the alien in *Matter of Arreguin,* 21 I&N Dec. 38 (BIA 1995) (granting relief to an immigrant still serving time for smuggling drugs into the U.S.).

child. For example, it would cause separation from his children, who would remain in the U.S if he were deported.     It would also deprive him of the opportunity to live and work in this country. *See, Landon v. Plasencia,* 459 U.S. 21,34 (1982), citing *Bridges v. Wixon,* 326 U.S. 135,154 (1945); and *Moore v. City of East Cleveland*, 431 U.S. 494,499 (1977): [9]

> Plasencia's interest here is, without question, a weighty one. She stands to lose the right "to stay and live and work in this land of freedom," ... Further, she may lose the right to rejoin her immediate family, a right that ranks high among the interests of the individual. ...

The breadth of protected liberty interests was summarized in *Washington v. Glucksberg,* 521 U.S. 702,720 (1997):

> The Due Process Clause guarantees more than fair process, and the "liberty" it protects includes more than the absence of physical restraint. *Collins* v. *Harker Heights*, 503 U.S. 115, 125 (1992) (Due Process Clause "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them'") (quoting *Daniels* v. *Williams*, 474 U.S. 327, 331 (1986)). The Clause also provides heightened protection against government interference with certain fundamental rights and liberty interests. *Reno* v. *Flores*, 507 U.S. 292, 301-302 (1993); *Casey*, 505 U.S. at 851. In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the "liberty" specially protected by the Due Process Clause includes the rights to marry, *Loving* v. *Virginia*, 388 U.S. 1 (1967); to have children, *Skinner* v. *Oklahoma ex rel. Williamson*, 316 U.S. 535 (1942); to direct the education and upbringing of one's children, *Meyer* v. *Nebraska*, 262 U.S. 390 (1923); *Pierce* v. *Society of Sisters*, 268 U.S. 510 (1925); to marital privacy, *Griswold* v.

------

[9] *Moore* was also a fundamental rights case, involving the State's attempt to define an "acceptable" family, *id.* at 499.

*Connecticut*, 381 U.S. 479 (1965); to use contraception, *ibid*; *Eisenstadt* v. *Baird*, 405 U.S. 438 (1972); to bodily integrity, *Rochin* v. *California*, 342 U.S. 165 (1952), and to abortion, *Casey*, *supra*. We have also assumed, and strongly suggested, that the Due Process Clause protects the traditional right to refuse unwanted lifesaving medical treatment. *Cruzan*, 497 U.S. at 278-279.

As explained in *M.L.B.* v. *S.L.J.*, 117 S.Ct. 555,119 (1996):

> Although both *Lassiter* and *Santosky* yielded divided opinions, the Court was unanimously of the view that "the interest of parents in their relationship with their children is sufficiently fundamental to come within the finite class of liberty interests protected by the Fourteenth Amendment." ...

*See also, Troxel v. Granville,* 530 U.S. 57 (2000), and the Dissent

of Board Member Lory Rosenberg in *Matter of Salazar-Regino,* 23 I&N

Dec. 223, 238 (BIA 2002).

### i. In *St. Cyr,* the Court Reaffirmed That Habeas Review Of Deportation Orders Is Constitutionally Mandated

It is indisputable that Congress cannot eliminate habeas review of

deportation orders, absent an adequate alternative.    *Swain v.*

*Pressley,* 430 U.S. 372,373 (1977).

From 1891 through passage of the 1952 Immigration Act, the law

permitted only such review of deportation orders as was

constitutionally mandated.    *Heikkila, supra*, at 235. Yet during

that period, the courts regularly adjudicated habeas petitions by

immigrants challenging deportation orders, including cases

involving only the denial of discretionary relief.    During this

period, two such cases reached the Supreme Court; *Accardi, supra*,

14

and *Hintopoulos v. Shaughnessy*, 353 U.S. 72 (1957).  These cases illustrate that the Suspension Clause requires review of the denial of discretionary relief for Due Process violations.

In *Accardi*, the Court vacated a decision denying discretionary relief, because the agency had allegedly exercised its discretion in a manner inconsistent with "existing valid regulations." *Id.* at 268. Specifically, it was alleged that the BIA violated Due Process by considering the fact that the petitioner was on a list of "undesirables" secretly circulated by the Attorney General.  In *Hintopoulos*, the Court rejected the petitioner's contention that he was improperly denied discretionary relief, but did so on the merits, after concluding that the agency had "applied the correct legal standards in deciding whether... the statutory prerequisites for [discretionary] suspension of deportation [had been met]." *Id.* at 77.  The issue presented was whether the BIA had "abused its discretion in denying [the petitioners'] application for suspension of deportation."  The Court concluded that it had not. *Id.* at 77:

> Nor can we say that it was abuse of discretion to withhold relief in this case.  The reasons relied on by the Hearing Officer and the Board -- mainly the fact that petitioners had established no roots or ties in this country -- were neither capricious nor arbitrary.

Thus, far from holding that deportation resulting from the denial of discretionary relief is immune from review because such relief represents an "act of grace," or because the immigrant had no

15

liberty or property interest in such relief, the Court held that the Attorney General reasonably considered later Congressional expressions of policy, and thus did not abuse his discretion. [10]

### ii. The Scope of Habeas Review Is Again That Which Was Available During the Heikkila Period, Encompassing Errors of Law, and a Broad Swath of Issues Which Implicate the Due Process Right to a Fair Hearing.

Habeas review looks for errors involving the Constitution or laws of the United States, such as the use of improper criteria, (*Hintopoulos*), Due Process violations, (*Accardi*), or anything implicating the right to a "fair hearing," (*U.S. ex rel. Tisi v. Tod*, 264 U.S. 131 (1924)). In *Kwock Jan Fat v. White*, 253 U.S. 454,457-458 (1920), the Court summarized the parameters of such review. *Id.,* (internal citations omitted) (emphasis added): [11]

_____

[10] In this regard, *Hintopoulos* is almost indistinguishable from *INS v. Yang,* 519 U.S. 26,30 (1996), where the Court examined the pertinent statute to determine what factors could be considered in adjudicating an application for discretionary relief, and concluded that because discretionary relief was an "act of grace," the Attorney General had "unfettered discretion" *in deciding what factors to consider*. But the fact that the exercise of discretion was not immune to scrutiny for errors of law is shown by the very issue under consideration therein! And while *Yang* involved statutory review, *Hintopoulos* was habeas case, decided under the legal regime of the Heikkila period. So the degree of review granted therein is, by definition, constitutionally mandated.

[11] *See also, Kielema v. Crossman*, 103 F.2d 292, 293 (5th Cir. 1939) (Exercising habeas jurisdiction to ensure that alien received a "fair hearing," and that the findings of fact were "supported by substantial evidence"); *Lisotta v. U.S.*, 3 F.2d 108, 110 (5th Cir. 1924) (reviewing deportation order in habeas corpus for substantial evidence, and to determine whether "administrative officers have manifestly abused the power and discretion conferred upon them.")

16

It is fully settled that the decision by the Secretary of Labor, of such a question as we have here, is final, and conclusive upon the courts, unless it be shown that the proceedings were 'manifestly unfair,' were 'such as to prevent a fair investigation,' **or show 'manifest abuse' of the discretion committed to the executive officers by the statute,... or that 'their authority was not fairly exercised, that is, consistently with the fundamental principles of justice embraced within the conception of due process of law,' .... The decision must be after a hearing in good faith, however summary, ... and it must find adequate support in the evidence, ...,**

*See also, Low Wah Suey v. Backus,* 225 U.S. 460,468 (1912):

In order to successfully attack by judicial proceedings the conclusions and orders made upon such hearings it must be shown that the proceedings were manifestly unfair, that the action of the executive officers was such as to prevent a fair investigation or that there was a manifest abuse of the discretion committed to them by the statute. In other cases the order of the executive officers within the authority of the statute is final.

Decisions from the courts of appeals during the Heikkila period

also confirm that constitutionally-mandated habeas review included

review for such errors in the denial of discretionary relief. [12]

---

[12]    *See, Patti v. Curran, supra; Colonna v. Tillinghast,* 32 F.2d 447 (1st Cir. 1929) (affirming denial of discretionary relief, because alien failed to request it or provide evidence showing that it was merited); *Gabriel v. Johnson,* 29 F.2d 347 (1st Cir. 1928) (reviewing sufficiency of evidence for discretionary relief); *Domenici v. Johnson,* 10 F.2d 433 (1st Cir. 1926) (reviewing sufficiency of evidence and affirming denial of discretionary relief); *Mastrapasqua v. Shaughnessy, supra,* (overturning denial of discretionary relief which the Court found to be arbitrary); *U.S. ex rel. Exarchou v. Murff,* 265 F.2d 504 (2d Cir. 1959) (overturning denial of discretionary relief based on insufficient evidence); *Gonzalez-Martinez v. Landon,* 203 F.2d 196 (9th Cir.) (rejecting claim that discretionary relief was improperly denied), *cert. denied,* 345 U.S. 998 (1953); *U.S. ex rel. McKenzie v. Savoretti,* 200 F.2d 546 (5th Cir. 1952) (reviewing agency's construction of statute and affirming denial of discretionary relief); *Hee Fuk Yuen, supra,* (finding agency rule reasonable).

In this context, it is worth distinguishing between *Toscano-Gil v. Trominski,* 210 F.3d 470 (5th Cir. 2000), and *Finlay v. INS,* 210 F.3d 556 (5th Cir. 2000), cited in *Sol v. INS,* 274 F.3d 648 (2nd Cir. 2001), and *Bravo v. Ashcroft,* 341 F.3d 590 (5th Cir. 2003). *Finlay* involved the permanent rules, and was controlled by *Max-George v. Reno,* 205 F.3d 194 (5th Cir. 2000) (holding that IIRIRA repealed habeas review of removal orders under 28 U.S.C. §2241; but that constitutional questions would be reviewed by the Fifth Circuit, notwithstanding the jurisdictional bar of §1252(a)(2)(C)). Since the petitioner in *Finlay* had not sought direct review, this Court concluded that the District Court lacked habeas jurisdiction. In *dicta,* however, the Court stated, *id.* at 557-58:

> Moreover, the denial of discretionary relief does not rise to the level of a constitutional violation, even if Finlay had been eligible for it. *See, e.g., Tefel v. Reno,* 180 F.3d 1286, at 1300 (11th Cir.1999).

By contrast, *Toscano-Gil* was a transitional case, wherein the Fifth Circuit had previously held that §2241 habeas review was available to immigrants whose criminal convictions precluded direct review. *Requena-Rodriguez v. Pasquarell*, 190 F.3d 299,302-03 (5th Cir. 1999). The District Court found that Mr. Toscano was denied Due Process in the denial of discretionary relief, to his substantial prejudice, [13] but the Fifth Circuit concluded that the errors did

---

[13] After considering the District Court decision, the BIA found that Toscano merited relief. After changing its mind twice, for procedural reasons, and with a little prodding from the Court,

18

not rise to that level. In *Toscano-Gil*, the Court acknowledged the Heikkila period as determinative, but found that the case did not fit within the parameters established during that period. The Court summarized the Government's position, which cited many of the cases discussed above, as follows, *id* at 473:

> [Mr. Toscano's claims], according to the Government, are the type properly reviewed for abuse of discretion, not for denial of due process. In support, it cites several Supreme Court cases. E.g., Immigration & Naturalization Serv. v. Yang, 519 U.S. 26, 32 ... (1996) ("irrational departure" from "general policy" governing exercise of administrative discretion "could constitute ... an abuse of discretion"); [14] United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. 103, 106 ... (1927) (alien may establish due process violation by showing he was deported "without a fair hearing or on charges unsupported by any evidence .... not ... by showing merely that the decision is erroneous" (emphasis added)); United States ex rel. Tisi v. Tod, 264 U.S. 131, 132 ... (1924) ("mere error, even ... finding an essential fact without adequate supporting evidence, is not a denial of due process" (emphasis added)).

## 2.  MR. MARTINEZ IS ENTITLED TO HABEAS RELIEF

For all the foregoing reasons, Mr. Martinez urges that he is entitled to Due Process in the adjudication of his application for §212(c) relief, and that his claim that his attorney was so deficient in presenting his case for relief under §212(c) of the Act that he was denied Due Process is cognizable in habeas corpus.

---

the BIA ultimately granted §212(c) relief. *See, Toscano-Gil v. Trominski,* B-02-084, of which the Court can take judicial notice.

[14] Under *Hintopolous,* such review is constitutionally mandated.

19

Respectfully Submitted,



Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226
(956) 421-3423 (fax)
Fed. ID.  1178
Texas Bar 03052800

### CERTIFICATE OF SERVICE

I, Lisa Brodyaga, certify that a copy of the foregoing was mailed,
first-class postage prepaid, to Steven Schammel, AUSA, 1701 W. Bus
83, #600, McAllen, Texas, 78501, this 2nd day of August, 2004.

20