United States District Court
Southern District of Texas
FILED

NOV 0 2 2004

Michael N. Milby
Clerk of Court

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

JOSE EZEQUIEL MARTINEZ-MARTINEZ  )

v.            )  C.A. 04-106

MARC MOORE, et al.      )

              )

## PETITIONER'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Jose Ezequiel Martinez-Martinez, ("Mr. Martinez"), by and through the undersigned, files the instant Objections to the Report and Recommendation of the United States Magistrate Judge, (hereinafter referenced as the "R&R," and cited, by page, as (R&R:___).

## I. THE MAGISTRATE JUDGE ERRED IN CONSTRUING MR. MARTINEZ-MARTINEZ' PETITION AS RELATING SOLELY TO THE DENIAL OF HIS MOTION TO REOPEN.

In the R&R, the Magistrate Judge erroneously construed Mr. Martinez' claims as relating solely to the BIA's denial of his motion to reopen. (R&R:2) (This habeas petition is based on the BIA's refusal to grant his Motion to Reopen"). *See also, id.,* (Mr. Martinez "claims the BIA erred in denying his Motion to Reopen").

In his First Amended Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief, filed June 28, 2004, at page 6, Mr. Martinez asserted, "on information and belief," that the BIA had affirmed the IJ without opinion. As a result, he urged, *id.* at 11:

### B. REVIEW OF THE DECISION OF THE IMMIGRATION JUDGE

Where a single Board Member affirms, without opinion, "the results of the decision below," pursuant to 8 C.F.R. §1003.1(e)(4), the decision of the Immigration Judge becomes the final agency action. *Soadjede v. Ashcroft*, 324 F.3d 830,832 (5th Cir. 2003). Although Petitioner does not yet have a copy of the BIA's initial decision, on information and belief, he asserts that this is what occurred herein. He also asserts that the Judge erred, as a matter of law, in rejecting the credible testimony

> of the witnesses that Mr. Martinez' children were born in
> the United States, and that they were therefore citizens
> of the United States, and that this error of law is
> cognizable in habeas corpus. *See, INS v. St. Cyr, supra.*

Here, the motion to reopen was a jurisdictional prerequisite to
raising the issue of ineffective assistance of counsel in habeas
review of the initial agency decision, (be it that of the IJ, or
the BIA). *Goonsuwan v. Ashcroft,* 252 F.3d 383 (5th Cir. 2001). The
filing of such a motion does not mean that it is only the denial of
the motion which can be reviewed. In his Petition, Mr. Martinez
specifically stated that he was seeking review of the initial
agency decision as well. This aspect of his claim was overlooked.

Further, the Magistrate Judge issued his R&R prematurely: before
Respondents filed the customary Certified Administrative Record.
This deprived Mr. Martinez of the opportunity to ascertain whether
it was, in fact, the decision of the Immigration Judge which was to
be reviewed, or the initial dismissal of his appeal by the BIA.
Depending on which decision was to be reviewed, (Mr. Martinez still
does not have a copy of the initial decision of the BIA), he would,
if appropriate, have sought leave to further amend his petition, to
show that it was the initial decision of the BIA which was subject
to review, and would have filed argument supporting his claim.

By departing from what has been standard procedure for years, and
upon which Mr. Martinez had the right to rely, the Magistrate Judge
made it impossible for Mr. Martinez to meaningfully present his
case. This departure is exacerbated by the fact that the
Magistrate also denied the unopposed motion filed by *Respondents* to
hold the instant case in abeyance, pending full and final
resolution of the issues presented in the *Salazar-Regino* series,
currently before the Fifth Circuit, including the extent to which
lawful permanent residents can complain of the denial of Due

Process in matters affecting relief under §212(c) of the Act, or its successor, cancellation of removal under 8 U.S.C. §1229b(a).[1]

## II.  AS THE BIA IMPLICITLY FOUND, MR. MARTINEZ ADEQUATELY COMPLIED WITH THE PROCEDURAL PREREQUISITES OF *MATTER OF LOZADA*.

The Magistrate Judge also opined that Mr. Martinez had not complied with the requirements of *Matter of Lozada,* 19 I&N Dec. 637 (BIA 1987). This, however, conflicts with the BIA decision, (Exhibit A), which was based on the merits of the motion, with no complaint that the procedural prerequisites had not been fulfilled. This constitutes an implicit finding that Mr. Martinez adequately complied with *Lozada.* It is hornbook law that an agency decision may be affirmed, if at all, only for the reasons given therein. As noted in *Newton v. Apfel*, 209 F.3d 448,455 (5th Cir. 2002):

> The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council. *See Knipe v. Heckler*, 755 F.2d 141, 149 n.16 (10th Cir. 1985) (citing *Dong Sik Kwon v. INS*, 646 F.2d 909, 916 (5th Cir.1981) (*en banc*)).

Furthermore, the BIA's implicit finding is supported by what little portions of the record Mr. Martinez was able to obtain, and present.[2] The primary requirement of *Lozada* is the filing of a grievance against the offending attorney. This was accomplished. The grievance itself ensures that the attorney will receive notice of the charges against him, and have an opportunity to respond. *See,* Rules 2.09 and 2.11, Texas Rules of Disciplinary Procedure. And the inclusion of an affidavit setting forth the agreement with counsel, is, in cases such as the one at bar, irrelevant. Such affidavits are important to determining the scope of the agreed-

---

[1]    *See,* discussion, *infra* at Paragraph V.

[2]    Again, by issuing his R&R before the Certified Administrative Record had been filed, the Magistrate Judge deprived Mr. Martinez of the opportunity to determine whether the record contains further evidence of compliance.

upon representation in cases where, as in *Lozada,* the complaint turned on the failure of counsel to file a brief in support of an appeal. Absent such a declaration, the BIA could not ascertain whether the attorney was hired only to file the notice of appeal, or whether the preparation of a brief was also contemplated.

By contrast, once an attorney enters an appearance as attorney of record before the Immigration Judge, he or she is bound to represent the client to the completion of those proceedings, unless and until permission to withdraw is requested, and granted. 8 C.F.R. §1003.17(b) ("Withdrawal or substitution of an attorney or representative may be permitted by an Immigration Judge during proceedings only upon oral or written motion submitted without fee"). It is clear in the case at bar, even without access to the Administrative Record, that no such motion was made, or granted, as initial counsel continued to represent Mr. Martinez through the proceedings before the Immigration Judge, including the issuance of his oral decision, and beyond. (Exhibit C).

Therefore, in this case, the presentation of a declaration as to the scope of initial counsel's representation would have been a meaningless act, of the type which, (assuming that it was not done), the law will not require. *See,* Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 420 (6th Cir. 1998):

> The law does not require parties to engage in meaningless acts or to needlessly squander resources as a prerequisite to commencing litigation." Corsini, 965 F. Supp. at 269. [3]

Consequently, even apart from the fact that, under cases such as *Newton v. Apfel, supra,* this Court cannot second-guess the BIA's implicit finding that Petitioner adequately complied with *Matter of*

---

[3]    *Corsini v. United Healthcare Corp.,* 965 F.Supp. 265 (D.R.I. 1997).

4

*Lozada,* and even without access to the complete Administrative Record, it is clear that there was, at the least, substantial compliance with the procedural requirements of *Matter of Lozada.*

### III.  THE MAGISTRATE'S DISCUSSION OF THE FACT THAT THE IMMIGRATION JUDGE DETERMINES CREDIBILITY SIMPLY UNDERSCORES MR. MARTINEZ' CLAIM THAT HE WAS PREJUDICED BY THE FAILURES OF HIS INITIAL ATTORNEY.

The Magistrate Judge, in his R&R, opined as follows, (R&R:4-5):

> As previously outlined, Martinez-Martinez argues that his former counsel rendered ineffective assistance by failing to produce evidence of his family ties to United States citizens and evidence of marriage to an LPR wife at the deportation proceeding. ...

> The IJ's denial of discretionary relief, based on the complete absence of corroborative evidence establishing favorable equities is final. ...   Martinez-Martinez children's testimony that they were U.S. citizens was rejected by the IJ.

> ...   It is the Immigration Judge's duty to determine credibility in deportation cases. ... Additionally, the court gives great deference to an IJ's decision concerning an alien's credibility. ... Given Martinez-Martinez's lack of credible evidence, he failed to establish that he has "unusual or outstanding equities" in the United States.

> The IJ found no indication of hardship to Martinez-Martinez or his family if deportation were to occur. Martinez-Martinez' testimony and the testimony of his children falls squarely within the IJ's assessment of credibility.

Far from undermining Mr. Martinez' claim, the foregoing underscores the substantial prejudice he suffered from the failings of his attorney, including, but not limited to, the failure to present corroborating, documentary evidence of the status of his family. [4]

---

[4]    It also goes virtually without saying that a competent attorney would have been able to establish hardship to Mr. Martinez and his family if he were deported.  *See,* the affidavits submitted in support of the motion to reopen, Petitioner's Exhibit C.

**IV.  THE CONCLUSION THAT "INEFFECTIVE ASSISTANCE OF COUNSEL MERELY RESTRICTS §212(c) RELIEF" DOES NOT ACCURATELY REFLECT THE CURRENT STATE OF THE LAW.**

The Magistrate Judge also concluded as follows, (R&R:6):

> Martinez-Martinez' contention that his counsel's deficient performance prevented him from receiving §212(c) discretionary relief is foreclosed by the Fifth Circuit in *Assaad v. Ashcroft,* 378 F.3d 471,475 (5th Cir. 2004). *Assaad* reiterates what the Fifth Circuit has repeatedly held, that there is a right to counsel, yet there is no right to "effective assistance of counsel" in deportation proceedings. *Id.* at 475. FN. In *Assaad*, the court held that an attorney's allegedly deficient performance merely restricts an alien's chances of receiving a discretionary waiver of removability. *Id.* In accordance with *Assaad,* Martinez-Martinez's ineffective assistance of counsel claim merely restricted his chances of receiving §212(c) relief.
>
> ─────────────
> FN *Miranda-Lores v. INS,* 17 F.3d 84,85 (5th Cir. 1994) (holding alien has no right to effective counsel); *Paul v. INS*, 521 F.2d 194,197 (5th Cir. 1975) (holding 6th amendment right to effective counsel is limited to criminal prosecutions and has no application to deportation proceedings); *Mantell v. United States Department of Justice, Immigration and Naturalization Service,* 798 F.2d 124, 127 (5th Cir. 1986) (holding alien has right to counsel but no right to "effective assistance of counsel").

This is misleading.  It is undisputed that immigrants have no Sixth Amendment right to counsel in deportation cases.  However, it is equally undisputed that they *do* have a right to Due Process in such proceedings.  *Zadvydas v. Davis,* 533 U.S. 678,693-5 (2001).  This has led the BIA to conclude, and recently reaffirm its conclusion, that it is a violation of Due Process where the performance of counsel is so deficient as to potentially affect the outcome of the proceedings, (*i.e.,* where, as even the Magistrate appears to acknowledge, the ineffective assistance substantially *prejudiced*

the client). *Matter of Assaad,* 23 I&N Dec. 553 (BIA 2003). In *Matter of Assaad,* the BIA concluded that there had been no such prejudice. On petition for review of that decision, the Fifth Circuit declined to reach the issue of whether counsel's performance can be so deficient as to implicate Due Process, on the basis that, *in that case,* the type of relief sought was statutorily vested in the unfettered discretion of the Attorney General, and therefore gave rise to no constitutionally protected interests. As discussed *infra*, this is not the case with §212(c) relief.

**V.  NOTWITHSTANDING CASES SUCH AS *U.S.* v. *LOPEZ-ORTIZ*, LAWFUL PERMANENT RESIDENTS HAVE CONSTITUTIONALLY PROTECTED INTERESTS IN RELIEF UNDER §212(c) OF THE ACT, AND ARE THEREFORE ENTITLED TO DUE PROCESS IN THE ADJUDICATION OF SUCH APPLICATIONS.**

The primary issue presented herein is also involved in the *Salazar-Regino* series, to wit, the claim that LPRs are entitled to Due Process in the adjudication of applications for relief under prior §212(c) of the Act, and its successor, 8 U.S.C. §1229b(a), cancellation of removal for lawful permanent residents. It was this fact which underlay the unopposed motion of *Respondents* herein to hold the instant case in abeyance pending full and final resolution of the *Salazar-Regino* series. *U.S. v. Lopez-Ortiz*, 313 F.3d 225 (5th Cir. 2002) was a Sentencing Guidelines case, and therefore, by definition, not *stare decisis* of the issue when presented in habeas cases. And there are other reasons why that and similar cases are simply not good law, which issues are being litigated, *inter alia,* in the *Salazar-Regino* series.

**A. MR. MARTINEZ' DUE PROCESS RIGHT TO A FAIR HEARING INCLUDES DETERMINATIONS RELATING TO DISCRETIONARY RELIEF.**

As discussed in *Zadvydas*, *supra,* immigrants in removal proceedings are entitled to Due Process. *See also, Shaughnessy v. U.S. ex rel Mezei*, 345 U.S. 206,212 (1953). Relief applications are part and

7

parcel of the proceedings. Just as a criminal case continues after a finding of guilt, relief *must* be addressed before a deportation order issues.  8 C.F.R. §1240.49(a):

> The immigration judge shall inform the respondent of his or her apparent eligibility to apply for any of the benefits enumerated in this chapter and shall afford the respondent an opportunity to make application therefor during the hearing.

*See also, Matter of A-P-,* 22 I&N Dec. 468,472 (BIA 1999).

Under *Accardi v. Shaughnessy,* 347 U.S. 260 (1954) and *St. Cyr, supra,* both legal and constitutional errors in determining eligibility for discretionary relief render an order vulnerable to attack in habeas corpus.  *See also, St. Cyr,* 533 U.S. at 308,n.30:

> [U]nder the pre-1952 regime which provided only what *Heikkila* [5] termed the constitutional minimum of review, on habeas lower federal courts routinely reviewed decisions under the Seventh Proviso, the statutory predecessor to § 212(c), to ensure the lawful exercise of discretion.

Among the cases cited were *Hee Fuk Yuen v. White,* 273 F. 10 (9th Cir. 1921) (rejecting a claim that the alien had not received a "fair hearing" on his application for discretionary relief); *U.S. ex rel. Patti v. Curran,* 22 F.2d 314, 316 (SDNY 1926) (remanding for a hearing on discretionary relief, on a finding that the regulations had been applied in a way which "exalts form above substance, and gives to regulations intended to effectuate the intention of the statute an effect which defeats its purpose."); *Adel v. Shaughnessy,* 183 F.2d 371 (2nd Cir. 1950) (holding that in habeas, the courts "cannot review the exercise of such discretion; they can interfere only when there has been a clear abuse of discretion or a clear failure to exercise discretion."); *U.S. ex*

---

[5]   *Heikkila v. Barber,* 345 U.S. 229 (1953).

rel. *Kaloudis* v. *Shaughnessy*, 180 F.2d 489,490 (2nd Cir.1950) (conceding that there could be limits regarding the relevancy of factors used to deny discretionary relief, but that membership in a proscribed organization was not such an irrelevant factor); *Mastrapasqua* v. *Shaughnessy*, 180 F.2d 999 (2nd Cir. 1950) (finding irrational and capricious the Attorney General's policy of denying discretionary relief to all those whose presence in the United States was due solely to the war); *U.S. ex rel. Berman* v. *Curran*, 13 F.2d 96 (3rd Cir. 1926) (finding discretionary denial unlawful for lack of evidence to support the underlying factual finding).

Habeas jurisdiction over these cases would *not* have existed, if immigrants were not entitled to Due Process in applying for discretionary relief. One searches the *Heikkila*-era decisions in vain for a discussion of "liberty interests" in discretionary relief. The closest is the *dissent* in *Accardi, supra* at 269:

> Congress vested in the Attorney General, and in him alone, discretion as to whether to suspend deportation under certain circumstances. We think a refusal to exercise that discretion is not reviewable on habeas corpus, first, because the nature of the power and discretion vested in the Attorney General is analogous to the power of pardon or commutation of a sentence, which we trust no one thinks is subject to judicial control; and second, because no legal right exists in petitioner by virtue of constitution, statute or common law to have a lawful order of deportation suspended.

By definition, the *Accardi* majority rejected this argument. Habeas review of denials of discretionary relief for due process issues is required by the Supremacy Clause. It would therefore waste judicial resources to decline to hear these claims on petition for review.

**B.    *LOPEZ-ORTIZ* IS NEITHER GOOD LAW, NOR *STARE DECISIS*.**

**1.    *LOPEZ-ORTIZ* IS NOT GOOD LAW.**

As noted in *Landon v. Plasencia*, 459 U.S. 21, 32 (1982):

> [O]nce an alien gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes accordingly. Our cases have frequently suggested that a continuously present resident alien is entitled to a fair hearing when threatened with deportation ...

Deportation is a civil penalty, resulting in the loss of liberty. *See, Bridges v. Wixon,* 326 U.S. 135,154 (1945) (emphasis added):

> Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom. **That deportation is a penalty -- at times a most serious one -- cannot be doubted.** Meticulous care must be exercised lest the procedure by which he is **deprived of that liberty** not meet the essential standards of fairness. [6]

Justice Ginsberg quoted this passage in her concurring opinion in *Reno v. American-Arab Anti-Discrimination Com.,* 525 U.S. 471,497 (1999) ("AADC"). Similar comments are found in *Plyler v. Doe,* 547 U.S. 202, 246 (1987) (Chief Justice Burger, with whom Justices White, Rehnquist, and O'Connor joined, dissenting). *See also, Boutilier v. INS,* 387 U.S. 118,127 (1967) (Justice Douglas, dissenting) ("[Psychopathic personality] is much too treacherously vague a term to allow the high penalty of deportation to turn on it"); *Klapprott v. U.S.,* 335 U.S. 601,619 (1949) (Justice Rutledge, concurring) ("Regardless of the name given it, the denaturalization proceeding when it is successful has all the consequences and effects of a penal or criminal conviction, except that the ensuing liability to deportation is a greater penalty than is generally inflicted for crime."); *Fong Haw Tan v. Phelan,* 333 U.S. 6,10 (1948) ("[Deportation] is the forfeiture for misconduct of a residence in this country. Such a forfeiture is a penalty.").

---

[6] The "loss of liberty" caused by deportation underscores the Due Process rights in proceedings relating to discretionary relief.

Further, in concluding that §212(c) relief was *not* a protected interest, the *Lopez-Ortiz* Court did not consider the criteria of *Board of Regents v. Roth,* 408 U.S. 564,577 (1972), but rested its decision on prior cases, *e.g.,* *Alfarache v. Cravener*, 203 F.3d 381 (2000), which in turn relied on *Cadby v. Savoretti*, 256 F.2d 439, 443 (5th Cir. 1956), decided long before *Roth* established that constitutionally protected interests in discretionary relief were created where there were limitations on the exercise of discretion, and before *St. Cyr* confirmed that the Attorney General's discretion to grant or deny §212(c) relief had been circumscribed by the equivalent of "common-law rules." *See,* *INS v. St. Cyr,* 533 U.S. 289, 296 (2001) (emphasis added) (describing BIA's standards as "*comparable to common-law rules* for deciding when deportation is appropriate"). *See also, INS v. Yang,* 519 U.S. 26,32 (1996) (previously "unfettered" discretion may be restricted by settled course of adjudication); and *Diaz-Resendez v. INS,* 960 F.2d 493 (5th Cir. 1992) (emphasis added) (BIA's discretionary denial of §212(c) relief was "arbitrary and *beyond the pale of its discretion...*").

*Lopez-Ortiz* also cited *Gonzalez-Torres v. INS*, 213 F.3d 899,903 (5th Cir.1999), holding that there is "no constitutional right to discretionary relief over which the Attorney General exercises '*unfettered discretion.*'" (emphasis added). Mr. Martinez does not challenge this premise, but strenuously disagrees that former §212(c) waivers are such relief.

To the contrary, the Attorney General has established criteria, through a "settled course of adjudication," [7] by which discretion must be exercised, and therefore this discretion is no longer "unfettered" within the meaning of cases such as *Gonzalez-Torres,*

---

[7]     *INS v. Yang,* 519 U.S. 26, 32 (1996).

11

and *Assaad v. Ashcroft,* 378 F.3d 471 (5th Cir. 2004) (immigrant cannot complain of Due Process violations relating to application for discretionary relief under 8 U.S.C. §1186a(c)(4) for lack of a "liberty interest" in said application, the determination of which by statute is vested in the "sole discretion of the Attorney General"). Under *Roth,* this fact has constitutional significance.

### 2. BECAUSE OF THE PROCEDURAL DIFFERENCES, *LOPEZ-ORTIZ* IS NOT *STARE DECISIS* OF THE ISSUES AT BAR.

There are also important procedural differences between *Lopez-Ortiz* and the instant case, which prevent the former from being binding. The doctrine of *stare decisis* has been defined as "to abide by or adhere to decided cases." *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 54 (1992) (Rehnquist, C.J., concurring in part and dissenting in part). The doctrine compels lower courts to follow the decisions of higher courts regarding questions of law. 18 Moore's Federal Practice (3d Ed.) §134.01[1]. However, for a decision to be given stare decisis effect, the issue must have been actually decided by the court. 18 Moore's Federal Practice (3d Ed.) §134.04[5]; *Thomas v. Tex. Dep't of Criminal Justice*, 297 F.3d 361, 370 n.11 (5th Cir. 2002). This principle yields the inevitable result that "like cases may not receive like treatment, if issues raised in a subsequent case were not actually decided in a case that would otherwise be 'on all fours.'" 18 Moore's Federal Practice (3d Ed.) §134.04[5]; *see e.g. U.S. v. Shelton*, 325 F.3d 553,558 (5th Cir. 2003) (prior case involving interpretation of "bodily injury" for Texas intoxication assault in the context of Sentencing Guidelines as opposed to interpretation of "bodily injury" for Texas misdemeanor assault under 18 U.S.C. §922(g)(9) is not binding because it is not a case on "all fours" and merely informs the discussion). As explained in *U.S. v. R.J. Saunders & Co., Inc.*, 42 C.C.P.A. 128,136 (1955):

> The doctrine of *stare decisis* rests on the underlying
> philosophy that any judicial statement, however broad,
> must be understood in its context, and as applying to the
> facts of the case. It is not to be expanded to embrace,
> as well, a factual situation other than, different from,
> and contrary to, the facts of the case to which the
> language applies and is used.

*See also, Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264,399 (1821):

> It is a maxim not to be disregarded, that general
> expressions, in every opinion, are to be taken in
> connection with the case in which those expressions are
> used. If they go beyond the case, they may be respected,
> but ought not to control the judgment in a subsequent
> suit when the very point is presented for decision. The
> reason of this maxim is obvious. The question actually
> before the court is investigated with care and considered
> in its full extent. Other principles which may serve to
> illustrate it, are considered in their relation to the
> case decided, but their possible bearing on all other
> cases is seldom completely investigated.

Unlike the instant case, involving habeas review of an unexecuted
deportation order, *Lopez-Ortiz* was a reentry case. The defendant
argued that his prior removal proceeding was fundamentally unfair.
*Id.* at 230.  The challenge rested on the "Judge's error in not
explaining his eligibility for § 212(c) relief," which, as the
Court observed, "*presupposes* that eligibility for discretionary
relief under §212(c) is an interest warranting constitutional due
process protection." *Id.* at 231 (emphasis added).  In other words,
the crucial point was *assumed*, not *argued*.

### 3. THE EXISTENCE OF SUBSTANTIVE CRITERIA CIRCUMSCRIBING THE EXERCISE OF THE ATTORNEY GENERAL'S DISCRETION CREATES A PROTECTED INTEREST IN THE RELIEF SOUGHT

In *Roth,* the Court found a constitutionally protected interest in
discretionary benefits, because the existence of governing rules
and standards mandated that discretion be exercised in conformity
with those rules and standards, *id.* at 577,n.15 (emphasis added):

13

*Goldsmith* v. *Board of Tax Appeals*, 270 U.S. 117, is a related case. There, the petitioner was a lawyer who had been refused admission to practice before the Board of Tax Appeals.  The Board had "published rules for admission of persons entitled to practice before it, by which attorneys at law admitted to courts of the United States and the States, and the District of Columbia, as well as certified public accountants duly qualified under the law of any State or the District, are made eligible. . . . The rules further provide that the Board may in its discretion deny admission to any applicant, or suspend or disbar any person after admission." *Id.*, at 119. The Board denied admission to the petitioner under its discretionary power, without a prior hearing and a statement of the reasons for the denial. Although this Court disposed of the case on other grounds, it stated, in an opinion by Mr. Chief Justice Taft, *that the existence of the Board's eligibility rules gave the petitioner an interest and claim to practice before the Board to which procedural due process requirements applied. It said that the Board's discretionary power* "must be construed to mean the exercise of a discretion to be exercised after fair investigation, with such a notice, hearing and opportunity to answer for the applicant as would constitute due process." *Id.*, at 123.

In *Olim v. Wakinekona*, 461 U.S. 238 (U.S. 1983), the Court defined the test for the existence of a Constitutionally protected interest in discretionary relief as follows, *id.* at 249 (emphasis added):

[A] State creates a protected liberty interest by placing substantive limitations on official discretion. An inmate must show "that particularized standards or criteria guide the State's decisionmakers." Connecticut Board of Pardons v. Dumschat, 452 U.S. 458, 467 (1981) (BRENNAN, J., concurring). If the decisionmaker is not "required to base its decisions on objective and defined criteria," but instead "can deny the requested relief for any constitutionally permissible reason or for no reason at all," ibid., the State has not created a constitutionally protected liberty interest.

Nor is *Assaad* to the contrary.  It involved a "hardship" waiver, where conditional residency was obtained by a marriage to a U.S.C.

14

which fell apart in less than two years.  There are no substantive restraints on the exercise of discretion in such applications.  To the contrary, 8 U.S.C. §1186a(b)(4) provides, (emphasis added):

> In acting on applications under this paragraph, the Attorney General shall consider any credible evidence relevant to the application.  *The determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Attorney General.*

Neither the regulations, nor any administrative decision, restricts the exercise of discretion under §1186a(b)(4).  Such relief is thus truly in the "unfettered" discretion of the Attorney General.  By contrast, §212(c) relief, and its successor, cancellation of removal, are the subject of a long line of decisions defining the conditions for, and specifying the manner in which, discretion is exercised.  *See, Matter of C-V-T-,* 22 I&N Dec. 7, 11 (BIA 1998):

> The Board has long noted both the undesirability and "the difficulty, if not impossibility, of defining any standard in discretionary matters . . . which may be applied in a stereotyped manner." Matter of L-, 3 I&N Dec. 767, 770 (BIA, A.G. 1949). Accordingly, there is not inflexible standard for determining who should be granted discretionary relief, and each case must be judged on its own merits. Id. *Within this context, the Board ruled in Matter of Marin, 16 I&N Dec. 581, 584-85 (BIA 1978), that in exercising discretion under section 212(c) of the Act, an Immigration Judge, upon review of the record as a whole, "must balance the adverse factors evidencing the alien's undesirability as a permanent resident with the social and humane considerations presented in his [or her] behalf to determine whether the granting of . . . relief appears in the best interest of this country." We find this general standard equally appropriate in considering requests for cancellation of removal under section 240A(a) of the Act.*
>
> *We also find that the factors we have enunciated as pertinent to the exercise of discretion under section 212(c) are equally relevant to the exercise of discretion under section 240A(a) of the Act.* For example, favorable considerations include such factors as family ties within

15

the United States, residence of long duration in this
country (particularly when the inception of residence
occurred at a young age), evidence of hardship to the
respondent and his family if deportation occurs, service
in this country's armed forces, a history of employment,
and existence of property or business ties, evidence of
value and service to the community, proof of genuine
rehabilitation if a criminal record exists, and other
evidence attesting to a respondent's good character.
Matter of Marin, supra. Among the factors deemed adverse
to an alien are the nature and underlying circumstances
of the grounds of exclusion or deportation (now removal)
that are at issue, the presence of additional significant
violations of this country's immigration laws, the
existence of a criminal record and, if so, its nature,
recency, and seriousness, and the presence of other
evidence indicative of a respondent's bad character or
undesirability as a permanent resident of this country.

In *INS v. St. Cyr, supra,* 533 U.S. at 296, the Court described the
result of this process as follows, (emphasis added):

[T]he *Board developed criteria, comparable to common-law
rules, for deciding when deportation is appropriate.* Those
criteria, which have been set forth in several Board
opinions, see, *e.g.,* In re Marin, 16 I. & N. Dec. 581
(1978), include the seriousness of the offense, evidence of
either rehabilitation or recidivism, the duration of the
alien's residence, the impact of deportation on the family,
the number of citizens in the family, and the character of
any service in the Armed Forces.

Once such a list, albeit non-exclusive, of factors to be
considered, and more importantly, *the procedure by which they are
to be evaluated,* are established, it can no longer be said that the
Attorney General has "unfettered" discretion in adjudicating such
an application. *See, INS v. Yang*, *supra*, 519 U.S. at 32:

Though the agency's discretion is unfettered at the
outset, if it announces and follows--by rule or by
settled course of adjudication--a general policy by which
its exercise of discretion will be governed, an
irrational departure from that policy (as opposed to an
avowed alteration of it) could constitute action that

16

must be overturned as "arbitrary, capricious, [or] an abuse of discretion" within the meaning of the Administrative Procedure Act.

Under *Yang,* where the Attorney General has established criteria for the exercise of such discretion, here, *"by settled course of adjudication,"* (emphasis added), he is no longer free to "deny the requested relief for any constitutionally permissible reason or for no reason at all." *See, Diaz-Resendez v. INS,* 960 F.2d 493 (5th Cir. 1992) ("Concluding that the Board's decision is arbitrary and *beyond the pale of its discretion* we grant review, vacate and remand.") (emphasis added). Thus, in contrast to the immigrant in *Assaad,* Mr. Martinez has a constitutionally protected interest in his application for relief under prior §212(c) of the Act.

Petitioner also considers that the Magistrate's discussion of his liberty interest in remaining in the United States is unduly limited, and relies on his prior briefing in that regard.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226                Fed. ID.  1178
(956) 421-3423 (fax)          Texas Bar 03052800

## CERTIFICATE OF SERVICE

I, Lisa Brodyaga, certify that a copy of the foregoing was mailed, first-class postage prepaid, to Steven Schammel, AUSA, 1701 W. Bus 83, #600, McAllen, Texas, 78501, this 1st day of November, 2004.

17